**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

**CASE NO.: 18-CV-61047**

---

**UNITED STATES OF AMERICA,**

           **Plaintiff,**

    **v.**

**US STEM CELL CLINIC, LLC, a Florida**
**limited liability company,**
**US STEM CELL, INC., a Florida profit**
**corporation, and**
**KRISTIN C. COMELLA and**
**THEODORE GRADEL, individuals,**

           **Defendants.**

---

**DEFENDANTS US STEM CELL, INC., US STEM CELL CLINIC, LLC,**
**AND KRISTIN C. COMELLA'S MEMORANDUM IN SUPPORT**
<u>**OF THEIR MOTION FOR SUMMARY JUDGMENT**</u>

## <u>TABLE OF CONTENTS</u>

I.      Introduction ............................................................................................................1

II.     The FDA's Limited Regulatory Authority ........................................................2

        A.      Congress Has Not Granted the FDA Authority to Regulate the
                Practice of Medicine ..............................................................................2

        B.      The FDA's Authority to Regulate Human Cells and Tissue
                Products...................................................................................................3

III.    The Defendants' SVF Surgical Procedure is Performed in One Surgical
        Procedure Using a Patient's Own HCT/Ps ........................................................5

IV.     The Defendants' Interactions with the FDA......................................................6

V.      Defendants' SVF Surgical Procedure is Not Subject to Regulation by the
        FDA........................................................................................................................8

        A.      Standard of Review.................................................................................8

        B.      Plaintiff Cannot Meet its Burden to Demonstrate that Defendants
                Are Subject to FDA Regulation..............................................................9

                1.      Defendants' SVF Surgical Procedure (a) Involves HCT/Ps,
                        (b) Is An Autologous Use, and (c) Occurs in a Single
                        Sitting, Thus Satisfying the First Three Elements of the
                        SSP Exemption .........................................................................9

                2.      Defendants' SVF Surgical Procedure Involves
                        Transplantation of Unaltered HCT/Ps, Thus Satisfying the
                        Final Element of the SSP Exemption.......................................11

        C.      The FDA's 2017 Guidance, Which Broadened the FDA's Reach
                by Significantly Narrowing the Same Surgical Procedural
                Exemption, is Procedurally Improper and Not Entitled to
                Deference ..............................................................................................14

                1.      Enforcement based on the 2017 Guidance violates the APA
                        because the 2017 Guidance is a substantive rule that
                        requires notice and comment, which the FDA circumvented...................15

i

a.      After nearly two decades of regulation, the FDA
        disrupted the status quo by expanding the scope of
        procedures subject to regulatory oversight ....................................16

b.      The FDA relies on the 2017 Guidance as its basis
        for bringing this enforcement action, indicating that
        the 2017 Guidance is binding .........................................................18

c.      The grammatical structure of the 2017 Guidance
        indicates it is meant to be binding rather than
        discretionary...................................................................................19

2.      The 2017 Guidance is not entitled to deference because its
        plain language is unambiguous and conflicts with the
        FDA's prior position ...............................................................................20

VI.   Conclusion ........................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Alboniga v. Sch. Bd.*,
    87 F. Supp. 3d 1319 (S.D. Fla. 2015) ............................................................11

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)......................................................................................8

*Appalachian Power Co. v. EPA*,
    208 F.3d 1015 (D.C. Cir. 2000) ...................................................................18

*Auer v. Robbins*,
    519 U.S. 452 (1997).....................................................................................20

*Betancur v. Fla. Dep't of Health*,
    296 F. App'x 761 (11th Cir. 2008) ...............................................................3

*Bowen v. Georgetown Univ. Hosp.*,
    488 U.S. 204 (1988)......................................................................................2

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).....................................................................................8

*Christiansen v. Harris Cnty.*,
    529 U.S. 576 (2000)......................................................................20, 21, 23

*Christopher v. Smithkline Beecham Corp.*,
    132 S. Ct. 2156 (2012).............................................................................20, 21

*Cmty. Nutrition Inst. v. Young*,
    818 F.2d 943 (D.C. Cir. 1987) ...............................................................18, 19

*Cremeens v. City of Montgomery*,
    602 F.3d 1224 (11th Cir. 2008) ...................................................................11

*Drisin v. Fla. Int'l Univ. Bd. of Trustees*,
    No. 16-24939-CIV-WILLIAMS, 2019 WL 289581 (S.D. Fla. Jan. 17,
    2019) ..........................................................................................................8

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*,
    653 F.3d 1 (D.C. Cir. 2011)........................................................................16

*Gen. Elec. Co. v. EPA*,
　290 F.3d 377 (D.C. Cir. 2002) .......................................................................................16

*Kisor v. Shulkin*,
　869 F.3d 1360 (Fed. Cir. 2017), *cert. granted sub nom. Kisor v. Wilkie*,
　No. 18–15 (U.S. Dec. 10, 2018) .....................................................................................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
　475 U.S. 574 (1986).......................................................................................................8, 9

*McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*,
　851 F.3d 1076 (11th Cir. 2017) ......................................................................................12

*Miami Heart Inst. v. Sullivan*,
　868 F.2d 410 (11th Cir. 1989) ........................................................................................11

*Miccosukee Tribe of Indians of Fla. v. United States*,
　No. 04-21448, 2008 U.S. Dist. LEXIS 57809 (S.D. Fla. July 29, 2008).........................21

*Miccosukee Tribe of Indians v. United States*,
　420 F. Supp. 2d 1324 (S.D. Fla. 2006) ..........................................................................8, 9

*New Hope Power Co. v. U.S. Army Corps of Eng'rs*,
　746 F. Supp. 2d 1272 (S.D. Fla. 2010) ......................................................................17, 18

*Perez v. Mortg. Bankers Ass'n*,
　135 S. Ct. 1199 (2015)....................................................................................................21

*Schwarz v. City of Treasure Island*,
　544 F.3d 1201 (11th Cir. 2008) ......................................................................................11

*Sumpter v. Sec'y of Labor*,
　763 F.3d 1292 (11th Cir. 2014) ..................................................................................11, 17

*Swindle v. Jefferson Cnty. Comm'n*,
　No. 13-14050, 2014 WL 6678411 (11th Cir. Nov. 26, 2014) ...........................................8

*Twiss v. Kury*,
　25 F.3d 1551 (11th Cir. 1994) ..........................................................................................8

*Villaman v. UPS Inc.*,
　No. 18-21377-CIV-ALTONAGA/Goodman, 2019 WL 922704 (S.D. Fla.
　Feb. 8, 2019) ....................................................................................................................8

*Watson v. Maryland*,
    218 U.S. 173 (1910)...........................................................................................3

## STATUTES AND RULES

21 C.F.R. Part 1271.............................................................................. *passim*

21 U.S.C. § 321(g)(1) ..............................................................................2

21 U.S.C. § 360(g)(2) ..............................................................................3

5 U.S.C. § 551(4) ..................................................................................15

5 U.S.C. § 553.................................................................................15, 16

Fed. R. Civ. P. 56..................................................................................8

## MISCELLANEOUS

FDA's Same Surgical Procedure Exception under 21 CFR 1271.15(b): Questions
and Answers Regarding the Scope of the Exception Draft Guidance (Oct. 2014)...............5, 6, 22

*FDA Form 483 Frequently Asked Questions*,
https://www.fda.gov/iceci/inspections/ucm256377.htm (last visited Mar. 8, 2019) ......................7

FDA Guidance For Industry: Same Surgical Procedure Exception under 21 CFR
1271.15(b): Questions and Answers Regarding the Scope of the Exception ....................... *passim*

Proposed Approach to Regulation of Cellular and Tissue-Based Products
(Feb. 1997), *available at*
http://www.fda.gov/downloads/biologicsbloodvaccines/guidancecomplianceregul
atoryinformation/guidances/tissue/ucm062601.pdf............................................................3, 4, 22

*Such*, *Merriam-Webster Dictionary*, https://www.merriam-
webster.com/dictionary/such (last visited Mar. 3, 2019).......................................................12, 17

*Such*, *Dictionary.com*, https://www.dictionary.com/browse/such (last visited Mar.
3, 2019) ..........................................................................................................................12, 17

*Such*, Webster's New International Dictionary ....................................................................12, 17

Robert A. Anthony, *Interpretive Rules, Policy Statements, Guidances, Manuals,
and the Like—Should Federal Agencies Use Them to Bind the Public?*, 41 DUKE
L.J. 1311, 1355 (1992)..................................................................................................................16

Alison Frankel, *Trump DOJ Faces Conundrum in SCOTUS Review of Auer Deference*, Reuters, https://www.reuters.com/article/legal-us-otc-auer/trump-doj-faces-conundrum-in-scotus-review-of-auer-deference-idUSKBN1OA2BD (last visited Mar. 8, 2019)......................................................................................................20

Patrick Gregory, *Kavanaugh: 3 Scalia Dissents Will Become Law of Land*, Bloomberg BNA, https://www.bna.com/kavanaugh-scalia-dissents-n57982073854/ (last visited Mar. 8, 2019).......................................................................20

52 Fed. Reg. 8798 (Mar. 19, 1987).................................................................................3

63 Fed. Reg. 26744 (May 14, 1998) ...........................................................................4, 22

I.      **Introduction**

The defendants take cells from one part of a patient's body and relocate them to another part.  That's it.  They are hardly manufacturing anything, let alone a drug.  Yet, that is exactly what the FDA claims the defendants are doing.  The defendants in this action, US Stem Cell Clinic, LLC, US Stem Cell, Inc., and Dr. Kristin Comella (collectively, the "Defendants") and others pioneered a surgical procedure (the "SVF Surgical Procedure") using a person's own stem cells.  The cells at issue—called stromal vascular fraction ("SVF")—are naturally occurring in a person's fat tissue and have known regenerative properties.  Defendants' procedure harnesses the potential therapeutic value of a person's own stem cells.

The procedure itself is simple:  a licensed healthcare professional removes the naturally-occurring cells from one part of a patient's body, uses standard medical instruments to isolate those cells, and relocates them to another part of the patient's body during a single office visit. Incredulously, the FDA has tried to assert regulatory authority over this medical procedure, positing that the procedure is drug manufacturing.  This position, however, defies logic.  Cells that are naturally-occurring in a person's body, which are then reinserted into that person's body, are simply not a drug.

In bringing this enforcement action, the FDA is trying to extend its regulatory reach. For over a century, the FDA claimed no authority over the kind of procedure at issue here. That changed when the FDA decided, on its own, to assert its power.  It did so based not on a change in the relevant statutes, nor on a change in the relevant regulations. Instead, it simply issued a "guidance document" to greatly expand its regulatory authority.  Now, the FDA wants this Court to simply go along, and to do so in the face of plain language limiting this very power grab.

If the FDA is allowed unfettered discretion to expand its regulatory authority to encompass medical procedures, such as the Defendants' SVF Surgical Procedure, these enforcement actions will have no real stopping point.  The SVF Surgical Procedure at issue in this enforcement action is indisputably exempt from regulation by the FDA.  Accordingly, this Court should pump the brakes on the FDA's improper expansion of authority and grant judgment to Defendants.

## II.     The FDA's Limited Regulatory Authority

The FDA's authority is limited. It may exercise regulatory oversight over products only to the extent that Congress granted it the power, by way of statute, to do so. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). At issue here is whether the surgical services the Defendants provide fall within the legal definition of a product that the FDA has the authority to regulate. In statutory terms, the question is whether these surgical services—really, whether a person's own cells—are a "drug" under the Federal Food, Drug, and Cosmetic Act ("FDCA" or the "Act") or a "biologic" under the Public Health Service Act ("PHS Act").  That is, the FDA here is claiming the authority to regulate a person's very own cells as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease . . . ."  21 U.S.C. § 321(g)(1) (defining "drugs" under the FDCA).

### A.     Congress Has Not Granted the FDA Authority to Regulate the Practice of Medicine

To address the question at issue here, it is important to remember what the FDA does not regulate. The FDA, by the very terms of the FDCA, does not regulate the practice of medicine. Indeed, Congress has long recognized the special relationship between a patient and a physician and has never authorized the FDA to regulate the practice of medicine—instead, the practice of

medicine is regulated at the state level by boards of medicine.[1] *See, e.g., Betancur v. Fla. Dep't of Health*, 296 F. App'x 761, 763 (11th Cir. 2008) ("[s]tates retain the police power to regulate professions, such as the practice of medicine" (citing *Watson v. Maryland*, 218 U.S. 173, 176 (1910)). The FDA itself has recognized the limits Congress placed on the FDA's authority to regulate the practice of medicine when it declared in 1987 that "[i]t was clearly the intent of Congress in passing the [FDCA] that FDA not regulate the practice of medicine . . . [c]ontrol of the practice of medicine in these cases is primarily exercised through State laws affecting medical licensing and practice and through products liability law." 52 Fed. Reg. 8798, 8803 (Mar. 19, 1987).

### B.     The FDA's Authority to Regulate Human Cells and Tissue Products

To address the question at issue here, it is also important to recognize that the FDA has long declined to exercise broad regulatory authority over a person's own cells. Prior to the late 1990s, the FDA—which has existed since 1906—exerted little or no regulatory control over human cellular and tissue-based products, even those that might constitute "drugs" or "biologic products." Then, in 1997, for the first time, through a guidance document, the FDA proposed to expand its authority to reach human cells, tissues, cellular- and tissue-based products ("HCT/Ps"). Proposed Approach to Regulation of Cellular and Tissue-Based Products (Feb. 1997), *available at* http://www.fda.gov/downloads/biologicsbloodvaccines/guidancecomplianceregulatory information/guidances/tissue/ucm062601.pdf (the "1997 Proposal").

---

[1] For example, the FDCA specifically exempts "practitioners licensed by law to prescribe or administer drugs or devices and who manufacture, prepare, propagate, compound, or process drugs or devices solely for use in the course of their professional practice" from drug manufacturer registration requirements. 21 U.S.C. § 360(g)(2).

Perhaps recognizing that it was venturing into new territory, the FDA made clear that its newly-claimed authority would be limited:

> the agency would ***not assert any regulatory control*** over cells or tissues that are removed from a patient and transplanted back into that patient during a single surgical procedure. The communicable disease risks, as well as the safety and effectiveness risks, would generally be no different than those typically associated with surgery. *Id.* at 12 (emphasis added);

and

> [a]utologous[2] use of cells and tissues harvested and transplanted in a single surgical procedure would be subject to ***no FDA oversight.*** *Id.* at 15 (emphasis added).

The FDA followed its 1997 guidance statement with a proposed regulation. Again, the FDA limited its reach when it reaffirmed its intent to exempt from FDA oversight HCT/Ps obtained from an individual for use in that individual (*i.e.*, autologous use) in a 1998 proposed rule establishing registration and listing requirements for HCT/Ps. 63 Fed. Reg. 26744, 26748 (May 14, 1998) (the "1998 Proposal").

Ultimately, in 2001, the FDA codified its limited regulatory authority at 21 C.F.R. Part 1271. The rule, which is the key rule in this case, exempts from any FDA regulation:

> [A]n establishment that removes HCT/P's from an individual and implants such HCT/P's into the same individual during the same surgical procedure.

21 C.F.R. § 1271.15(b) (hereinafter, the "SSP Exemption"). Somehow, more than ten years after this new rule allowing for limited FDA oversight of a person's own cells was promulgated, the FDA changed its mind and decided that it wished to expand its regulatory reach. It did so not by

---

[2] Autologous use means "the implantation, transplantation, infusion, or transfer of human cells or tissue back into the individual from whom the cells or tissue were recovered." 21 C.F.R. § 1271.3(a).

way of new statutory language, nor by way of a new regulation. It did so through a guidance document in which it unilaterally decided how to interpret the key regulation.  In 2014, the FDA released a draft guidance document, which proposed to interpret the SSP Exemption to exclude surgical procedures that would otherwise qualify for exemption from regulation on the grounds that the patient's transplanted HCT/P is not "such HCT/P" because it is altered from its "original form."  FDA's Same Surgical Procedure Exception under 21 CFR 1271.15(b): Questions and Answers Regarding the Scope of the Exception Draft Guidance (Oct. 2014) (the "2014 Draft Guidance").  The Guidance was finalized in 2017.  *FDA Guidance For Industry: Same Surgical Procedure Exception under 21 CFR 1271.15(b): Questions and Answers Regarding the Scope of the Exception* (the "2017 Guidance").

The FDA's interpretation, a result of a creeping expansion of its regulatory reach, means that the FDA is now seeking to exert its regulatory authority over the practice of medicine, including surgical procedures, such as Defendants' SVF Surgical Procedure, which involve nothing more than the relocation of a patient's very own cells.

## III.   The Defendants' SVF Surgical Procedure is Performed in One Surgical Procedure Using a Patient's Own HCT/Ps

In 2010, certain of Defendants' employees and independent contractors—all licensed healthcare professionals—begin offering the SVF Surgical Procedure to patients in the United States.  Defendants' Statement of Undisputed Material Facts ("Statement") filed herewith at ¶ 2. These licensed healthcare professionals perform the SVF Surgical Procedure during a single outpatient procedure at a US Stem Cell Clinic, LLC Florida-based surgical clinic.  *Id.*  The Defendants' SVF Surgical Procedure involves collecting a patient's cell population naturally contained in a patient's own adipose tissue and relocating that cell population back into the same patient (an "autologous use").  *Id.* at ¶ 3.  The patient's collected cell population is known as

"stromal vascular fraction" ("SVF") and is comprised—both before and after isolation—of stromal and vascular cells, including adipose stem cells (mesenchymal stem cells), hematopoietic stem cells, pericytes, endothelial/progenitor cells, white blood cells, and fibroblasts, among other cells—with only the adipocyte (fat) cells removed. *Id.* at ¶¶ 3, 9, 10; *see also* Dr. Carolyn Yong's Expert Report (Dec. 21, 2018) ("Yong Expert Report") at 4, 11, attached hereto as Exhibit 1 to the Declaration of Todd H. Halpern in Support of Defendants' Motion for Summary Judgment ("Halpern Decl."); Dr. Elliot Lander's Rebuttal Expert Report (Jan. 22, 2019) ("Lander Rebuttal Report") at 5, 10–11, attached hereto as Exhibit 2 to Halpern Decl.

During the SVF Surgical Procedure, the healthcare professional collects the patient's SVF cells, using a technique called "tumescent liposuction"—which permits the liposuction of the SVF, along with the fat issue that contains it, through use of local, rather than general, anesthesia. Statement at ¶ 4. The healthcare professional then uses surgical tools—namely, collagenase enzymes and a centrifuge device—to isolate the SVF cell population by removing the adipocyte (fat) cells. *Id.* at ¶ 5. The healthcare professional then suspends the SVF in a sterile saline solution, after which it is relocated back into the patient's body. *Id.* at ¶ 8. In short, the SVF Surgical Procedure is an autologous use surgery that involves the collection and relocation of SVF cells that previously existed in the patient's body.

## IV.    The Defendants' Interactions with the FDA

As stated previously, Defendants began offering the SVF Surgical Procedure to patients in the United States in 2010. *Id.* at ¶ 2. From 2010 to 2015, the FDA did not interfere with Defendants' offering of the SVF Surgical Procedure. *Id.* at ¶ 12. Then, in 2015—less than a year after the FDA promulgated the 2014 Draft Guidance, the FDA abruptly changed course. Over the course of six different visits throughout 2015, the FDA conducted an inspection of US Stem Cell

Clinic, LLC.  *Id.* at ¶ 13.  This aggressive and unanticipated inspection culminated on December 7, 2015,[3] when the FDA issued Dr. Comella an FDA Form 483,[4] which detailed the results of the FDA's inspection.  *Id.* at ¶ 14.  Dr. Comella responded on December 28, 2015.  *Id.* at ¶ 15.

The FDA's aggressive enforcement attempts did not stop there.  In 2017, the FDA again inspected US Stem Cell Clinic, LLC over the course of seven different visits.  *Id.* at ¶ 16.  The FDA issued Dr. Comella another FDA Form 483 on May 11, 2017, to which Dr. Comella personally responded on May 16, 2017.  *Id.* at ¶¶ 17, 18.  Defendants did not hear from the FDA again until approximately three months later, on August 24, 2017, when the FDA issued Dr. Comella a Warning Letter to which Dr. Comella personally responded on August 29, 2017.  *Id.* at ¶¶ 19, 20.  Defendants sent a follow-up response to the Warning Letter through their attorneys on September 29, 2017.  *Id.* at ¶ 21.  Throughout these interactions with the FDA, Defendants steadfastly maintained that the SVF Surgical Procedure was not subject to FDA regulation.

After serious, substantive discussions between the parties explaining the basis of Defendants' legal position, the United States Department of Justice, acting on behalf of the FDA, filed this action against Defendants and Theodore Gradel on May 9, 2018.  *Id.* at ¶ 23; Dkt. No. 1. On August 3, 2018, Defendants filed their Answer and Affirmative Defenses in response to Plaintiff's Complaint.  Dkt. No. 26.  The parties exchanged discovery requests and responses, and Defendants deposed one of Plaintiff's experts, Dr. Carolyn Yong.  Discovery is now closed.

---

[3] The FDA's stated rationale for the inspection was two alleged adverse surgical procedures.

[4] An FDA Form 483 is a report that FDA investigators issue to a company's management at the conclusion of an inspection.   FDA, *FDA Form 483 Frequently Asked Questions*, https://www.fda.gov/iceci/inspections/ucm256377.htm (last visited Mar. 8, 2019).

**V.      Defendants' SVF Surgical Procedure is Not Subject to Regulation by the FDA**

**A.      Standard of Review**

Summary judgment under Federal Rule of Civil Procedure 56 is proper when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   Accordingly, the moving party must demonstrate, through reference to the pleadings, affidavits, depositions, and admissions, that "there is no genuine dispute as to any material fact . . . ." *Swindle v. Jefferson Cnty. Comm'n*, No. 13-14050, 2014 WL 6678411, at *2 (11th Cir. Nov. 26, 2014); *see also Drisin v. Fla. Int'l Univ. Bd. of Trustees*, No. 16-24939-CIV-WILLIAMS, 2019 WL 289581, at *1 (S.D. Fla. Jan. 17, 2019); *Miccosukee Tribe of Indians v. United States*, 420 F. Supp. 2d 1324, 1331 (S.D. Fla. 2006) (citing *Twiss v. Kury*, 25 F.3d 1551, 1554 (11th Cir. 1994)).   Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

When the moving party has satisfied its burden, the burden then shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   The burden on the non-moving party is substantial; a mere scintilla of evidence is insufficient. *Miccosukee*, 420 F. Supp. 2d at 1331 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).   Further, the party opposing summary judgment may not simply rest upon mere allegations and denials. *Celotex Corp.*, 477 U.S. at 323–24; *see also Villaman v. UPS Inc.*, No. 18-21377-CIV-ALTONAGA/Goodman, 2019 WL 922704, at *1 (S.D. Fla. Feb. 8, 2019).   Rather,

the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Miccosukee*, 420 F. Supp. 2d at 1331.

> **B.** **Plaintiff Cannot Meet its Burden to Demonstrate that Defendants Are Subject to FDA Regulation**

Plaintiff has not, and cannot, satisfy its burden to demonstrate that the SVF Surgical Procedure is subject to FDA regulation pursuant to the relevant rule. Indeed, the plain language of the rule is unambiguous and clearly applies to exempt the Defendants' autologous SVF Surgical Procedure from FDA regulation and oversight.

As discussed above, in 2001, the FDA promulgated its final rules establishing its authority to regulate certain procedures involving HCT/Ps. 21 C.F.R. Part 1271. The FDA, however, included an exemption from regulation within the regulatory scheme for certain procedures—the SSP Exemption—which excluded from any FDA regulatory authority an "establishment that removes HCT/Ps from an individual and implants such HCT/P's into the same individual during the same surgical procedure." 21 C.F.R. § 1271.15(b). A plain reading of the SSP Exemption establishes that a procedure must satisfy four basic criteria to qualify for exemption from FDA regulation. Defendants' SVF Surgical Procedure plainly satisfies all four criteria, and thus falls within the scope of the SSP Exemption.

> **1.** **Defendants' SVF Surgical Procedure (a) Involves HCT/Ps, (b) Is An Autologous Use, and (c) Occurs in a Single Sitting, Thus Satisfying the First Three Elements of the SSP Exemption**

First, the procedure must involve HCT/Ps, which the regulation defines as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." 21 C.F.R. § 1271.3(d). Here, the parties do not dispute that the SVF cells are HCT/Ps. *See* Statement at ¶ 11; *see also* Halpern Decl., Exh. 1 (Yong Expert Report) at 6 ("Adipose derived stromal vascular fraction (SVF), such

as the [US Stem Cell Clinic, LLC] SVF Product, is an HCT/P. . . ."); *id.*, Exh. 2 (Lander Rebuttal Expert Report) at 2.[5]

Second, the procedure must involve an autologous use—*i.e.*, the procedure must involve transplanting HCT/Ps into the same patient from whom the HCT/Ps were removed.  Again, there is no dispute that the Defendants' SVF Surgical Procedure is an autologous procedure as it involves transplanting the SVF cell population back into the same individual from whom the SVF cells originated.  *See* Statement at ¶ 3; *see also* Halpern Decl., Exh. 1 (Yong Expert Report) at 10 ("The [US Stem Cell Clinic, LLC] SVF Product is for autologous use."); *id.*, Exh. 2 (Lander Rebuttal Expert Report) at 2 ("[US Stem Cell Clinic, LLC's] SVF Procedure is a medical service that involves the relocation of a patient's own SVF during a single outpatient surgical procedure.").

Third, the entire surgical procedure must occur during a single sitting.  Here, the Defendants' entire SVF Surgical Procedure takes place within a single surgical procedure in a single facility on a single day.  Again, neither of the parties disputes this fact.  *See* Statement at ¶ 2; *see also* Halpern Decl., Exh. 2 (Lander Rebuttal Expert Report) at 2 ([US Stem Cell Clinic, LLC's] SVF Procedure is a medical service that involves the relocation of a patient's own SVF during a single outpatient surgical procedure"); Excerpts from the Feb. 21, 2019 Deposition of Dr. Carolyn Yong ("Yong Dep. Tr.") at 195:12–16, attached hereto as Exhibit 3 to Halpern Decl.

---

[5] The FDA has previously attempted to inject a disputed fact into this criterion by arguing that a different HCT/P—adipose tissue—is the appropriate unit for comparison.  This argument, however, is unavailing because the regulation does not require that the broadest unit of HCT/P (*i.e.*, the tissue), rather than a smaller unit of HCT/P (*i.e.*, a cell), be used as the comparative starting point.  The undisputed fact remains unchanged—the SVF is an HCT/P.  To support its position, the FDA is forced to rely on yet another guidance document, which as discussed in Section V.C below, is invalid and improper.  Accordingly, this Court should disregard the FDA's positions, such as this, which are rooted in purportedly non-binding guidance documents.

### 2. Defendants' SVF Surgical Procedure Involves Transplantation of Unaltered HCT/Ps, Thus Satisfying the Final Element of the SSP Exemption

Finally, the HCT/Ps that are removed from the patient must remain "such" HCT/Ps when transplanted back into the patient.  That is exactly what happens here. Plaintiff has erroneously asserted that the HCT/Ps transplanted back into the patient during the SVF Surgical Procedure are not "such" HCT/Ps because they are not identical to the HCT/Ps removed from the patient. Essentially, Plaintiff asserts that "such" should be interpreted to mean "same" or "identical."  This position, however, is explicitly contradicted by the plain, unambiguous language of the SSP Exemption.  Moreover, it violates established canons of interpretation and is plainly contradicted by the Plaintiff's own expert.

It is a well-established canon of interpretation that, where a term is not defined in a regulation, a court should look to its plain meaning.[6]  *Sumpter v. Sec'y of Labor*, 763 F.3d 1292, 1296 (11th Cir. 2014) ("When a term has no statutory or administrative definition, we look to its ordinary or natural meaning."); *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1214 (11th Cir. 2008) ("Because there is no statutory or administrative definition of 'residence,' we look to its ordinary, everyday meaning.").  Here, "such" is not a defined term in the FDA's regulatory scheme.  Therefore, the court should look to the common dictionary definition of "such" to interpret its meaning.

---

[6] Canons of construction applicable to statutes apply with equal force to regulations.  *Cremeens v. City of Montgomery*, 602 F.3d 1224, 1227 (11th Cir. 2008) ("We apply the canons of construction to regulations as well as to statutes."); *Alboniga v. Sch. Bd.*, 87 F. Supp. 3d 1319, 1339 (S.D. Fla. 2015) ("Courts must employ the same canons of construction when construing regulatory language as apply to statutory construction."); *see also Miami Heart Inst. v. Sullivan*, 868 F.2d 410, 413 (11th Cir. 1989) (applying canons of statutory construction to regulations promulgated under the Medicare Act).

A review of dictionary definitions of "such" reveals that "such" does not mean "identical" or "same." Instead, the standard definition of "such" indicates relatedness. Specifically, "such" is defined as "of a kind or character of that or those indicated or implied," "of the same class, type or sort," and "like or similar." *See Such,* Webster's New International Dictionary; *see also Such*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/such (last visited Mar. 3, 2019); *Such*, *Dictionary.com*, https://www.dictionary.com/browse/such (last visited Mar. 3, 2019). Accordingly, the plain language of the regulation clearly indicates that the implanted SVF cells (*i.e.*, the HCT/Ps) are not required to be identical to the removed SVF cells, only related.

Moreover, pursuant to another established canon of interpretation, where a regulation uses two different terms in the same provision, those terms must have different meanings. *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1089 (11th Cir. 2017). Here, the FDA used the terms "such" and "same" in the one sentence that defines the SSP Exemption. Indeed, the FDA used the term "same" *twice* after using the term "such." 21 C.F.R. § 1271.15(b) (". . . that removes HCT/P's from an individual and implants *such* HCT/P's into the *same* individual during the *same* surgical procedure." (emphasis added)). Thus, contrary to Plaintiff's position, "such" necessarily cannot mean "same" here.

Here, the evidence is undisputed that the implanted SVF cells are related to the SVF cells that are initially removed from the patient; accordingly, the Defendants' SVF Surgical Procedure satisfies the fourth criterion of the SSP Exemption. Indeed, as the Plaintiff's expert acknowledges, the SVF cells are simply isolated and removed from the patient's body. Halpern Decl., Exh. 1 (Yong Expert Report) at 6. In fact, the parties further agree that the SVF cells—both before and after they are isolated from the adipose tissue as part of the SVF Surgical Procedure—are composed of different cell types, including stem and progenitor cells, granulocytes, monocytes,

lymphocytes, endothelial cells, pericytes, and stromal cells. *See* Statement at ¶¶ 9, 10; *see also* Halpern Decl., Exh. 1 (Yong Expert Report) at 4, 11; *id.*, Exh. 2 (Lander Rebuttal Expert Report) at 5, 10–11. Thus, there is no dispute that the SVF cells exist in the human body prior to removal and are composed of the same cellular types both before removal from the individual and after transplant during the SVF Surgical Procedure.

Significantly, the parties also do not dispute that, after the primary activities that comprise Defendants' SVF Surgical Procedure, *i.e.*, the collagenase enzyme and the centrifuge, are undertaken, the transplanted SVF cells are still related or similar to the pre-removal SVF cells.[7] During the SVF Surgical Procedure, a party performing the SVF Surgical Procedure uses a collagenase enzyme to cleanse and separate the SVF cells from the unwanted portions of the adipose tissue. Statement at ¶ 5. Here, there is no dispute that the collagenase enzyme does not create a new or entirely unrelated cell. *See id.* at ¶¶ 5, 6; *see also* Halpern Decl., Exh. 3 (Yong Dep. Tr.) at 153:3–22 (agreeing that the collagenase is used to break down the cellular matrix of the adipose tissue and stating that she does not possess information to suggest that the collagenase does anything to the SVF cells beyond breaking down the collagen matrix); *see also id.*, Exh. 2 (Lander Rebuttal Expert Report) at 4 ("the collagenase enzyme effects only the collagen matrix of

---

[7] In Dr. Carolyn Yong's Rebuttal Expert Report, she now claims—for the first time—that the SVF cells are changed during the SVF Surgical Procedure. Dr. Carolyn Yong's Rebuttal Expert Report (Feb. 21, 2019) ("Yong Rebuttal Expert Report") at 9–11, attached hereto as Exhibit 4 to Halpern Decl. This Court should give this opinion no weight because Dr. Yong never raised this position in her opening report and, significantly, her deposition testimony—given mere hours before Defendants were served a copy of her rebuttal report—contradicts her newly-formed opinion. *Id.*, Exh. 3 (Yong Dep. Tr.) at 153:19–22 ("I have not seen what is the result of enzymatic digestion of adipose tissue per Defendants' processing, so I can't say whether or not it disrupts the cells."). Moreover, Plaintiff improperly served this Rebuttal Report well past the close of discovery and mere hours after Defendants deposed Dr. Yong, thus depriving Defendants of the opportunity to examine Dr. Yong regarding her newly-formed opinions.

the adipose tissue that holds the three cell fractions of adipose (stromal, vascular, and adipocyte (fat) cells) together . . . critically, the collagenase does not present any residual toxicity or damage to the SVF cells and is removed prior to subsequent relocation of the SVF back into the patient").

Likewise, the parties agree that the centrifuge device used in the SVF Surgical Procedure is used simply to separate the SVF cellular components from the extracellular structural matrix of the adipose tissue, and does not change or alter the individual SVF cells. *See* Statement at ¶¶ 5, 7; *see also* Halpern Decl., Exh. 3 (Yong Dep. Tr.) at 167:6–9 (centrifuge is used to "separate . . . select cellular components of the adipose tissue and the structural components of the adipose"); *see also id.*, Exh. 2 (Lander Rebuttal Expert Report) at 5 ("the centrifuge tool helps ensure that the small part of the organ (*i.e.*, the SVF) is available for relocation back into the patient's body during the SVF Procedure. The centrifugation process does not result in anything being added back into the patient that was not already existing in the patient's body."). Thus, the SVF Surgical Procedure does not change the SVF cells and, thus, does not convert the SVF cells into a new substance that would disqualify the SVF from constituting "such HCT/Ps."

Accordingly, the SVF cells naturally existing in an individual's body at the time of removal constitute "such HCT/Ps" when implanted into the same individual's body as part of the SVF Surgical Procedure. In short, the Defendants' SVF Surgical Procedure plainly falls within the SSP Exemption, and, thus, is exempt from regulatory oversight by the FDA.

### C.   The FDA's 2017 Guidance, Which Broadened the FDA's Reach by Significantly Narrowing the Same Surgical Procedural Exemption, is Procedurally Improper and Not Entitled to Deference

The SSP Exemption, on its face, applies to exclude Defendants' SVF Surgical Procedure from regulation by the FDA. In a flawed attempt to overcome this straightforward application of the plain language of the SSP Exemption, the FDA improperly promulgated the 2017 Guidance.

Through the 2017 Guidance, the FDA sought to expand its regulatory power by limiting the applicability of the SSP Exemption, thus regulating previously unregulated parties. This Court, however, should disregard the 2017 Guidance when considering whether Defendants' SVF Surgical Procedure is regulated by the FDA because it was promulgated in violation of the Administrative Procedure Act ("APA") and is not entitled to deference under Supreme Court precedent.

### 1. Enforcement based on the 2017 Guidance violates the APA because the 2017 Guidance is a substantive rule that requires notice and comment, which the FDA circumvented

The language of the SSP Exemption is unambiguous. Even if this Court determines it is ambiguous, the 2017 Guidance is procedurally defective because it constitutes a binding new rule that requires notice-and-comment under the APA. The 2017 Guidance dramatically expands the scope of the regulation to sweep in previously-exempted procedures by purporting to define the term "such HCT/Ps" to exclude the SVF isolated during the SVF Surgical Procedure from qualifying for exemption from regulation under the SSP Exemption. But, instead of providing for notice and comment, the FDA chose to ignore the APA—depriving any interested parties, such as the Defendants, the opportunity to comment on the expansion. This failure significantly undermines the APA and renders the Guidance invalid.

The APA broadly defines "rule" to mean "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4). The APA further requires an agency to publish notice of certain categories of proposed new rules in the Federal Register and "give interested persons an opportunity to participate in the rulemaking through submission of written data, views, or arguments with or without opportunity for oral presentation." 5 U.S.C. § 553(b) & (c).

Rules that are substantive in nature and have a binding effect on parties are subject to the APA's notice-and-comment requirements; whereas "interpretative rules, general statements of policy, or rules of agency organization [and] procedure" are exempt from formal rulemaking. 5 U.S.C. § 553(b)(3)(A). Courts generally consider an agency's documented position to be substantive and binding—and thus subject to notice and comment—if "a document expresses a change in substantive law or policy (that is not an interpretation) which the agency intends to make binding, or administers with binding effect[;] the agency may not rely upon the statutory exemption for policy statements, but must observe the APA's legislative rulemaking procedures." *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 382–83 (D.C. Cir. 2002) (quoting Robert A. Anthony, *Interpretive Rules, Policy Statements, Guidances, Manuals, and the Like—Should Federal Agencies Use Them to Bind the Public?*, 41 DUKE L.J. 1311, 1355 (1992)).

The 2017 Guidance is a substantive rule that requires notice and comment as it represents a change in substantive law that has a binding effect on parties because: (1) it dramatically changes two decades of pronouncements; (2) the FDA relies on the 2017 Guidance in this enforcement action; and (3) the language of the 2017 Guidance reads like a binding rule. Thus, the FDA's failure to submit the 2017 Guidance to the formal rulemaking process set forth in the APA renders the Guidance invalid on its face.

> a. **After nearly two decades of regulation, the FDA disrupted the status quo by expanding the scope of procedures subject to regulatory oversight**

First, the Guidance constitutes a substantive change in the law because, almost two decades after the FDA first promulgated the relevant regulatory scheme, the FDA has curiously, and without explanation, used the 2017 Guidance to radically expand the scope of procedures that are subject to regulatory oversight and correspondingly expand the number of parties that must comply with the regulations. *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 6

16

(D.C. Cir. 2011) (explaining that the scope and effect of a rule on those who must follow it can distinguish a procedural rule from a substantive rule).

The 2017 Guidance achieves this far-reaching change by effectively amending the existing regulation to redefine a critical term.  Specifically, the 2017 Guidance defines "such HCT/Ps" as those HCT/Ps that: (i) remain in their "original form" and (ii) undergo no handling beyond simply "rinsing, cleansing, sizing, or shaping."  2017 Guidance at 4–5.  Prior to the Guidance, the term "such" was undefined in the pertinent regulation and, therefore, the plain meaning of the term controlled.  *Sumpter*, 763 F.3d at 1296 ("When a term has no statutory or administrative definition, we look to its ordinary or natural meaning.").  The word "such" is typically defined as "of a kind or character of that or those indicated or implied," "of the same class, type, or sort," and "like or similar."  *See Such,* Webster's New International Dictionary; *see also Such*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/such (last visited Mar. 3, 2019); *Such*, *Dictionary.com*, https://www.dictionary.com/browse/such (last visited Mar. 3, 2019).

The FDA's new definition of "such HCT/Ps" in the 2017 Guidance is far narrower than the dictionary definition in that the implanted HCT/Ps now must be virtually identical to and unchanged from the removed HCT/Ps, not "like or similar" or "of the same class, type, or sort." Indeed, the new definition is contrary to the plain meaning of the term.  Thus, the 2017 Guidance creates its own arbitrary definition that significantly broadens the scope of the original rule and imposes new obligations on the Defendants, as well as other parties in the industry that perform similar autologous SVF surgical procedures. These procedures, which were previously exempt under the plain language of the SSP Exemption, are now abruptly subject to regulation, thus effecting a substantive change in the law.  *New Hope Power Co. v. U.S. Army Corps of Eng'rs*, 746 F. Supp. 2d 1272, 1283 (S.D. Fla. 2010) (finding that an agency created a new substantive

rule because the new rule removed a prior exemption and "also breaks from the plain language of [previous binding rules]").

> **b.**  **The FDA relies on the 2017 Guidance as its basis for bringing this enforcement action, indicating that the 2017 Guidance is binding**

Second, the 2017 Guidance is undoubtedly binding because the Plaintiff relies on it to bring this enforcement action, indicating that the Plaintiff believes the Guidance is binding. *Id.* (finding that a purported policy was a binding rule because, among other factors, the agency had been enforcing the rules); *see also Cmty. Nutrition Inst. v. Young*, 818 F.2d 943, 947 (D.C. Cir. 1987) (explaining that the FDA's reliance on a rule in making determinations indicated the rule was binding).  Similarly, as the D.C. Circuit held in *Appalachian Power Co. v. EPA*:

> If an agency acts as if a document issued at headquarters is controlling in the field, if it treats the document in the same manner as it treats a legislative rule, if it bases enforcement actions on the policies or interpretations formulated in the document, if it leads private parties or State permitting authorities to believe that it will declare permits invalid unless they comply with the terms of the document, then the agency's document is for all practical purposes "binding."

208 F.3d 1015, 1021 (D.C. Cir. 2000).  In bringing this action, Plaintiff has alleged that the Defendant is not exempt from FDA regulation pursuant to 21 C.F.R. Part 1271 because "the adipose tissue recovered from individuals is subjected to processing rendering Defendants' SVF product no longer 'such HCT/Ps.'"  Dkt. No. 1 at ¶ 40.  Plaintiff's expert has expounded on those allegations by relying on the 2017 Guidance's new definition of "such HCT/Ps."  *See, e.g.*, Halpern Decl., Exh. 1 (Yong Expert Report) at 9 (citing the 2017 Guidance's requirement that, for a procedure to qualify for the SSP Exemption, the HCT/Ps must not be subjected to processing prior to implantation beyond "rinsing, cleansing, sizing, or shaping"); *id.*, Exh. 4 (Yong Rebuttal Expert Report) at 2–3 (asserting that to qualify for the SSP Exemption, the implanted cells must be in their "original form"); *id.*, Exh. 3 (Yong. Dep. Tr.) at 223:23–229:8 (testifying that she is unaware

of FDA documents prior to the 2017 Guidance limiting processing of HCT/Ps to "rinsing, cleansing, or sizing"). In sum, absent reliance on the 2017 Guidance, Plaintiff cannot show Defendants' SVF Surgical Procedure is not exempt from regulation by the FDA. Thus, by bringing this action, Plaintiff has evinced that the 2017 Guidance is binding.

### c.   The grammatical structure of the 2017 Guidance indicates it is meant to be binding rather than discretionary

Finally, that the 2017 Guidance is a binding rule is further buttressed by the language of the 2017 Guidance, which is bereft of conditional, advisory, or prospective terms. *Compare* 2017 Guidance at 5 ("An HCT/P remains 'such HCT/P' when it is in its original form. Generally, the only processing steps that will allow an HCT/P to remain 'such HCT/P' are rinsing, cleansing, sizing, and shaping."); *with Cmty. Nutrition Inst.*, 818 F.2d at 946–47 (explaining that an agency's use of language indicates whether a statement is a binding norm or general statement of policy, including whether the verbs are present tense or imply discretion). The present-tense words "remains" and "is" and the lack of advisory words like "should" or "may" all indicate that the 2017 Guidance is prescribing a binding rule.

The 2017 Guidance has thus created a new "binding norm" that significantly differs from the prior regulation. As such, the FDA was required to engage in notice-and-comment rulemaking prior to promulgating the 2017 Guidance. *Cmty. Nutrition Inst.*, 818 F.2d at 948 ("FDA by virtue of its own course of conduct has chosen to limit its discretion and promulgated [standards] which it gives a present, binding effect. Having accorded such substantive significance to [the standards], FDA is compelled by the APA to utilize notice-and-comment procedures in promulgating them."). Because the FDA did not do so, the new definition of "such HCT/P's" on which the FDA relies is invalid, and the 2017 Guidance itself is invalid. Accordingly, this Court should disregard the

19

Plaintiff's attempted reliance on the 2017 Guidance to improperly regulate Defendants' SVF Surgical Procedure.

> ### 2. The 2017 Guidance is not entitled to deference because its plain language is unambiguous and conflicts with the FDA's prior position

Even if the Court determines that the plain language of the 2017 Guidance is ambiguous, it should nevertheless refuse to defer to the FDA's changed position regarding the SSP Exemption as set forth in its 2017 Guidance. The FDA seeks to limit the application of the SSP Exemption through its 2017 Guidance, which would arbitrarily expand the FDA's regulatory authority to include previously unregulated parties and procedures. This improper exercise of regulatory authority should not be permitted to stand and certainly does not warrant deference.

Courts, under *Auer v. Robbins*, 519 U.S. 452 (1997), generally defer to an agency's interpretation of its own regulations;[8] however, such deference is unwarranted and improper under certain circumstances, including (1) where the regulation in question is plainly unambiguous, and (2) where the agency's new position conflicts with its prior position. *Christopher v. Smithkline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012); *Christiansen v. Harris Cnty.*, 529 U.S. 576, 588 (2000). Here, because both circumstances are present, this Court should disregard the FDA's

---

[8] This month, the Supreme Court will hear oral argument on the question of whether it should overturn *Auer* and its predecessor case, *Seminole Rock*. *Kisor v. Shulkin*, 869 F.3d 1360 (Fed. Cir. 2017), *cert. granted sub nom. Kisor v. Wilkie*, No. 18–15 (U.S. Dec. 10, 2018). Pointing to past dissenting opinions by several Supreme Court Justices, many believe the Court will indeed overturn *Auer*. *See, e.g.,* Alison Frankel, *Trump DOJ Faces Conundrum in SCOTUS Review of Auer Deference*, Reuters, https://www.reuters.com/article/legal-us-otc-auer/trump-doj-faces-conundrum-in-scotus-review-of-auer-deference-idUSKBN1OA2BD (last visited Mar. 8, 2019) ("At least four current Supreme Court justices are among *Auer*'s skeptics."); *and* Patrick Gregory, *Kavanaugh: 3 Scalia Dissents Will Become Law of Land*, Bloomberg BNA, https://www.bna.com/kavanaugh-scalia-dissents-n57982073854/ (last visited Mar. 8, 2019) (describing then-D.C. Circuit Judge Kavanaugh's prediction that *Auer* will be overturned in accordance with Justice Scalia's prior dissenting opinions).

improper attempt to expand its regulatory authority and instead apply the plain language of the SSP Exemption.

First, the plain language of the SSP Exemption is unambiguous. *See* Section V.B, *supra*. *Auer* stands for the proposition that deference to an agency's interpretation of its own regulation is warranted only when the language of the regulation is ambiguous. *Christiansen*, 529 U.S. at 588 ("The regulation in this case, however, is not ambiguous . . . . To defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation."). And, because the plain language of the SSP Exemption is unambiguous, this Court should decline to defer to the FDA's position with respect to the 2017 Guidance. *See id.* ("Because the regulation is not ambiguous on the issue of compelled compensatory time, *Auer* deference is unwarranted."); *see also Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1207 (2015). Instead, the Court should simply apply the plain language of the SSP Exemption to the SVF Surgical Procedure and, accordingly, exclude it from FDA regulation.

Moreover, the 2017 Guidance should not be afforded *Auer* deference because it pronounces an entirely new position regarding the applicability of the SSP Exemption—a position that directly contradicts twenty years of FDA pronouncements on the issue. Where an agency pronounces conflicting positions regarding its own regulation, the agency's prior and more longstanding position is entitled to greater deference than is a newer stance. *Christopher*, 132 S. Ct. at 2166; *see also Miccosukee Tribe of Indians of Fla. v. United States*, No. 04-21448, 2008 U.S. Dist. LEXIS 57809, *113 (S.D. Fla. July 29, 2008) (explaining that later positions are "entitled to considerably less deference" than earlier positions (internal citations omitted)).

Here, the 2017 Guidance undoubtedly conflicts with the FDA's longstanding position regarding the applicability of the SSP Exemption. Prior to 1997, the FDA did not have a regulatory

framework under which to regulate HCT/Ps.  Accordingly, in 1997, the FDA pronounced that it would implement a new regulatory regime to exercise authority over certain activity involving HCT/Ps.  The FDA, however, explicitly excluded certain procedures and parties from this regulatory scheme:

> the agency would **not assert any regulatory control** over cells or tissues that are removed from a patient and transplanted back into that patient during a single surgical procedure.  The communicable disease risks, as well as the safety and effectiveness risks, would generally be no different than those typically associated with surgery.

1997 Proposal at 12 (emphasis added).  Significantly, the FDA's pronouncement did not express an intent to only exempt from regulation those procedures wherein the cells or tissue transplanted into the patient were the "same" or maintained their "original form."

In 1998, the FDA promulgated its Proposed Rule, reiterating its intent to regulate certain procedures involving HCT/Ps and to exempt from this regulatory scheme those procedures involving the removal of HCT/Ps from an individual where those HCT/Ps were then implanted, transplanted, infused, or transferred into the same individual.  63 Fed. Reg. 26744, 26748 (May 14, 1998).  Once more, the FDA did not state that it would limit its exemption from regulation to only those procedures involving HCT/Ps in which the HCT/Ps transplanted into the patient were the "same" or maintained their "original form."

In 2001, the FDA codified its new regulatory regime, finalizing its formal intent to exempt certain procedures from FDA regulation:

> [A]n establishment that removes HCT/P's from an individual and implants such HCT/P's into the same individual during the same surgical procedure.

21 C.F.R. § 1271.15(b).  More than ten years later, the FDA released the 2014 Draft Guidance, which—for the first time—declared that the SSP Exemption only exempted from regulation

procedures in which the SVF transplanted back into a patient remained in its "original form" as the SVF initially removed from that patient. Accordingly, parties and procedures that had previously not been subject to FDA regulation were to be newly subject to stringent FDA regulations. In 2017, the FDA finalized the Guidance.

The FDA's newly-contemplated pronouncement is a significant departure from the FDA's prior statements regarding its authority to regulate procedures involving HCT/Ps. This change has had a large, and negative, impact on previously unregulated parties who reasonably relied on the FDA's prior position and are now grappling with shuttering their businesses in the wake of strenuous and complex regulatory requirements. Granting deference to the FDA's substantively improper 2017 Guidance would be akin to allowing the FDA to create a *de facto* new regulation under the guise of interpreting an existing regulation, thus allowing the FDA to impermissibly expand its regulatory empire, decimating physicians' livelihoods and medical practices. *Christiansen*, 529 U.S. at 588. Accordingly, this Court should deny deference to the FDA's 2017 Guidance, disregard the 2017 Guidance's improper and overreaching expansion of the FDA's regulatory authority, and apply the plain language of the SSP Exemption to exclude the Defendants' SVF Surgical Procedure from regulation by the FDA.

**VI.    Conclusion**

For the foregoing reasons, this Court should grant Defendants' Motion for Summary Judgment.

Dated: March 11, 2019                              Respectfully submitted,

                                                  /s/ Isaac J. Mitrani
                                                  Isaac J. Mitrani
                                                  Florida Bar No. 348538
                                                  Loren H. Cohen
                                                  Florida Bar No. 303879
                                                  MITRANI, RYNOR,

23

ADAMSKY & TOLAND, P.A.
301 Arthur Godfrey Road, Penthouse
Miami Beach, FL 33140
Tel.:   305-358-0050
Fax:    305-358-0050
imitrani@mitrani.com
lcohen@mitrani.com
dbitran@mitrani.com
ctenn@mitrani.com
miamidocketing@mitrani.com

Todd A. Harrison (admitted pro hac vice)
Todd H. Halpern (admitted pro hac vice)
Stephen R. Freeland (admitted pro hac vice)
Mary M. Gardner (admitted pro hac vice)
Venable LLP
600 Massachusetts Avenue NW
Washington, DC 20001

*Attorneys for Defendants US Stem Cell Clinic, LLC,
US Stem Cell, Inc., Kristin C. Comella and Theodore
Gradel*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 11, 2019, a true and correct copy of the foregoing Defendants' Memorandum in Support of their Motion for Summary Judgment was filed with the Clerk of the Court via CM/ECF and the CM/ECF system will send a notice of electronic filing to all counsel and parties of record listed on the Service List Below.

*/s/ Isaac J. Mitrani*
Isaac J. Mitrani
Florida Bar No. 348538
MITRANI, RYNOR,
ADAMSKY & TOLAND, P.A.
301 Arthur Godfrey Road, Penthouse
Miami Beach, FL  33140
Tel.:    305-/358-0050
Fax:     305/358-0050
imitrani@mitrani.com
dbitran@mitrani.com
ctenn@mitrani.com
miamidocketing@mitrani.com

*Attorneys for Defendants US Stem Cell Clinic, LLC, US Stem Cell, Inc., Kristin C. Comella and Theodore Gradel*

## <u>SERVICE LIST</u>

Roger J. Gural
Trial Attorney
Consumer Protection Branch
United States Department of Justice
P.O. Box 386
Washington, DC  20044
*Roger.gural@usdoj.gov*

*Counsel for United States of America*

*Of Counsel:*

Rebecca K. Wood
Chief Counsel
Food and Drug Administration

Perham Gorji
Deputy Chief Counsel for Litigation

Michael D. Helbing
Associate Chief Counsel for Enforcement
United States Dept. of Health and Human Services
Office of the General Counsel
White Oak 31, Room 4426A
10903 New Hampshire Avenue
Silver Spring, MD  20993-0002

James A. Weinkle
Assistant United States Attorney
Office of the United States Attorney
99 N.E. 4th Street, Suite 300
Miami, FL  33132
*james.weinkle@usdoj.gov*

*Counsel for United States of America*