**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

**CASE NO.: 18-61047-CIV-UNGARO/O'SULLIVAN**

UNITED STATES OF AMERICA,

   Plaintiff,

v.

US STEM CELL CLINIC, LLC, a Florida limited liability company,
US STEM CELL, INC., a Florida profit corporation, and
KRISTIN C. COMELLA and
THEODORE GRADEL, individuals,

   Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

   The Government brought this action to enjoin US Stem Cell Clinic, LLC ("USSCC"), US Stem Cell, Inc., and Kristin C. Comella (collectively, "Defendants")[1] from violating the law and endangering patients. In its Motion for Summary Judgment, the Government established that Defendants violate the Federal Food, Drug, and Cosmetic Act ("FDCA") by manufacturing an adulterated and misbranded drug that is neither approved nor licensed by the Food and Drug Administration ("FDA") and has never been shown to be safe or effective for any indication. Pl.'s Mot. for Summ. J. and Supp. Mem. of Law (D.E. 42) ("Pl.'s MSJ") at 11-20. Defendants' Opposition (D.E. 51) makes clear they do not dispute the evidence establishing their violations. Instead, Defendants argue they are largely exempt from FDCA regulation based on an incorrect and unsupportable reading of two provisions in 21 C.F.R. Part 1271.

---

[1] The Government's Motion for Summary Judgment also sought relief against individual Theodore Gradel. Mr. Gradel and the Government have agreed to terms of a consent decree that, if entered by this Court, would resolve the allegations against Mr. Gradel. *See* D.E. 47.

Defendants' opposition confirms that the parties' disagreements on summary judgment center on "two fundamental *legal* issues." Defs.' Opp'n. to Pl.'s Mot. for Summ. J. (D.E. 51) (hereinafter "Defs.' Opp'n.") at 1 (emphasis added). Specifically, Defendants claim: (1) that their stromal vascular fraction ("SVF") product qualifies for reduced regulation as a "361 HCT/P" under 21 C.F.R. § 1271.10(a); and (2) that the phrase "such HCT/P's" in the same surgical procedure ("SSP") exception codified at 21 C.F.R. § 1271.15(b) should be interpreted to apply in this case. Although Defendants incorrectly characterize certain aspects of the manufacture of their SVF product, the parties agree on all facts material to resolving the legal questions at issue and thus deciding summary judgment. The undisputed facts show Defendants remove adipose tissue from a patient and transform it through enzymatic digestion and other manufacturing processes into something substantially different than the adipose tissue they remove. Defendants' establishment thus does not qualify for the SSP exception. Similarly, the undisputed facts demonstrate that Defendants' SVF product is more than minimally manipulated and not intended for homologous use, and thus does not qualify for regulation as a "361 HCT/P."

Because the material facts are not in dispute and Defendants persist in violating the FDCA, the Government is entitled to summary judgment.

## ARGUMENT

### A. Defendants Are Responsible for Violating the FDCA

As explained in the Government's Motion for Summary Judgment (D.E. 42) ("Government's motion"), Defendants openly violate the FDCA, which makes it illegal to manufacture and sell drugs that are produced without adhering to current good manufacturing practice ("CGMP") and further forbids the manufacture and sale of drugs that do not have labeling that bears adequate directions for use. *See* Pl.'s MSJ at 11-20; 21 U.S.C. §§ 331(k), 351(a)(2)(B), 352(f)(1). Drugs, such as Defendants' SVF product, that fail to meet these requirements are "adulterated" and "misbranded." *See* 21 U.S.C. §§ 351(a)(2)(B), 352(f)(1); Pl.'s MSJ at 11-20.

Although Defendants claim they need not follow these provisions of law, they do not dispute the underlying facts necessary to establish these violations. Defendants admit their employees or contractors use their SVF product to address patients' symptoms of various serious diseases and medical conditions. Pl.'s Stmt. of Material Undisputed Facts in Supp. of Pl.'s Mot.

for Summ. J. (D.E. 42-1) ("Pl.'s SMUF") ¶ 7. This renders the SVF product a drug[2] that is "held for sale" under the FDCA. *See* 21 U.S.C. § 321(g)(1)(B); Pl.'s MSJ at 11-13. Defendants do not dispute that the saline they use in their SVF product has traveled in interstate commerce, Pl.'s SMUF ¶¶ 18-19 & 39, nor do they argue that the presumption of interstate commerce established by 21 U.S.C. § 379a has been overcome. Pl.'s MSJ at 13-14. Further, Defendants do not dispute the fact that they fail to comply with CGMP for drugs, Pl.'s SMUF ¶ 31, which renders their SVF product adulterated by law. *See* 21 U.S.C. § 351(a)(2)(B); 21 C.F.R. Parts 210-211 (drugs); 21 C.F.R. Parts 600-680 (additional standards for biological products); *see* Pl.'s MSJ at 14-16. Finally, Defendants admit that they do not label their SVF product with indications for use, dosages, or routes of administration. Pl.'s SMUF ¶ 20. As a result, Defendants' SVF product is misbranded. *See* 21 U.S.C. § 352(f)(1); 21 C.F.R. § 201.5; Pl.'s MSJ at 16-17. Nor do Defendants argue that they lack the authority to prevent or promptly correct the legal violations documented by FDA inspections. *See* Pl.'s MSJ at 25-28. Thus, although Defendants mistakenly claim they need not comply with the FDCA, they do not dispute the facts that show they adulterate and misbrand their SVF product while it is held for sale after shipment of one of its components in interstate commerce. 21 U.S.C. § 331(k); *see* Pl.'s MSJ at 11-16.

   **B. Defendants' SVF Product Does Not Qualify as a "361 HCT/P", and the "Same Surgical Procedure Exception" Does Not Apply**

Defendants fail to satisfy their burden of demonstrating that any provisions in 21 C.F.R. Part 1271 shield their illegal behavior. *See United States v. Regenerative Scis.*, 741 F.3d 1314, 1322 (D.C. Cir. 2014) (holding that defendants "ultimately bear the burden of establishing that [21 C.F.R. § 1271.10(a)] applies").

   1. <u>Defendants' SVF Product Fails to Meet All of the Criteria in 21 C.F.R. § 1271.10(a) for Regulation Solely under Section 361 of the PHSA and 21 C.F.R. Part 1271</u>

---

[2] Defendants' unsupported assertion that "[c]ells that are naturally occurring in a person's body, which are then reinserted into that person's body, are simply not a drug," Defs.' Opp'n. at 2, is wrong as a matter of law if, as here, those cells are part of a product intended to cure, mitigate, or treat disease. *See* 21 U.S.C. § 321(g)(1)(B); *United States v. Regenerative Scis., LLC*, 741 F.3d 1314, 1319 (D.C. Cir. 2014) (recognizing the FDCA's "wide-ranging definitions" of drug and biological product and rejecting the defendants' assertion that they were merely performing a "procedure"); *United States v. Loran Med. Sys.*, 25 F. Supp. 2d 1082, 1086 (C.D. Cal. 1997); *see also* 21 C.F.R. § 1271.20.

To be regulated only under Section 361 of the PHSA and 21 C.F.R. Part 1271 (known as a "361 HCT/P") instead of the FDCA, an HCT/P must satisfy four criteria in 21 C.F.R. § 1271.10(a). Failure to satisfy any one of these criteria renders an HCT/P ineligible for the Section 361 regulatory scheme. Here, Defendants' SVF product is not a 361 HCT/P because it is not intended for homologous use and it is more than minimally manipulated. Pl.'s MSJ at 22-25.

      a. <u>Defendants' SVF Product is Not Intended for Homologous Use</u>

Defendants make no attempt to refute the Government's argument that their SVF product fails to satisfy the homologous use criterion in 21 C.F.R. § 1271.10(a)(2). As set out in the Government's motion, the HCT/P that Defendants inject into patients—their SVF product—is not intended to perform the "same basic function or functions" as the adipose tissue they take from patients, "as reflected by the labeling, advertising, or other indications of [Defendants'] objective intent." Pl.'s MSJ at 23-24; *see* 21 C.F.R. §§ 1271.3(c), 1271.10(a)(2).

Defendants attempt to skew this analysis by disregarding the adipose tissue they remove from patients and focusing exclusively on particular cells isolated from that adipose tissue during their multi-step manufacturing process. Defs.' Opp'n. at 14. This reading defies logic. As explained in the Government's motion, assessing homologous use requires starting with the HCT/P—*i.e.*, the adipose tissue—that Defendants remove from patients, not the subset of cells that later become SVF. Pl.'s MSJ at 23-24. Only by comparing the SVF product injected into a patient to the adipose tissue recovered from the patient can one determine whether the HCT/P performs the "same basic function or functions in the recipient as in the donor." *Id.*; *see* 21 C.F.R. §§ 1271.3(c), 1271.10(a)(2). The facts show here that it does not. Pl.'s MSJ at 23-24.

Moreover, even accepting Defendants' starting point and ignoring the adipose tissue actually removed from patients, the *SVF cells* do not perform the same basic function in the donor as Defendants purport them to perform in the recipient. Under 21 C.F.R. § 1271.10(a)(2), determination of whether an HCT/P is intended for homologous use depends on "labeling, advertising, or other indications of the manufacturer's objective intent." 21 C.F.R. § 1271.10(a)(2). Here, Defendants market their product to treat a variety of serious diseases or conditions, including, but not limited to, amyotrophic lateral sclerosis ("ALS"), Parkinson's disease, spinal cord injuries, stroke, traumatic brain injury, lung disease, and diabetes. Pl.'s SMUF ¶ 7. Despite their vague references to the "regenerative functions" of SVF, Defendants have not—and cannot—demonstrate that treating the serious diseases listed above is a "basic

4

function" of SVF cells as they exist in adipose tissue. Thus, even under Defendants' strained reading of the regulations, Defendants' SVF product is not intended for homologous use, and it fails to satisfy 21 C.F.R. § 1271.10(a) on that basis alone.

b. <u>Defendants' SVF Product is More than Minimally Manipulated</u>

Although further analysis of 21 C.F.R. § 1271.10(a) is unnecessary in light of Defendants' failure to satisfy the homologous use criterion, Defendants also fail to meet their burden to show that the SVF product is minimally manipulated. *See* Pl.'s MSJ at 22-23. Minimal manipulation is defined by regulation in two different ways, depending on whether it is being applied to structural tissue or cells or nonstructural tissues. As applied to structural tissue, such as adipose tissue, minimal manipulation is "processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement"; for cells or nonstructural tissues, minimal manipulation is "processing that does not alter the relevant biological characteristics of cells or tissues." 21 C.F.R. § 1271.3(f).[3]

To determine whether an HCT/P is more than "minimally manipulated," the regulation requires that the relevant characteristics of the HCT/P removed from the patient be compared before and after processing. 21 C.F.R. § 1271.3(f)(1) (discussing whether the original relevant characteristics of structural tissue has been altered as a result of processing). Defendants focus again on the SVF cells that are later isolated through their manufacturing process, but the only logical starting point for the minimal manipulation analysis must be the adipose tissue removed from the patient. Comparing the characteristics of the end result of the Defendants' processing to the purported characteristics of cells that are not accessible *absent* that processing would undermine the purpose of the minimal manipulation criterion. HCT/P's whose original relevant characteristics have been meaningfully altered present heightened risk and require greater regulation to ensure their safety and efficacy above and beyond the need, as with 361 HCT/P's, to control the risk of communicable disease. 66 Fed. Reg. 5447, 5449-50 and 5457 (Jan. 19, 2001); *see* 21 C.F.R. §§ 1271.3(f), 1271.10(a)(1), and 1271.20.

---

[3] The details of Defendants' processing of adipose tissue are not in dispute. Defendants first recover adipose tissue from a patient through a mini-liposuction and then digest that tissue with an enzyme. Pl.'s SMUF ¶ 9-10. Defendants then perform other manufacturing processes, including centrifugation and filtration, before resuspending the resulting materials with saline to obtain their SVF product.  Pl.'s SMUF ¶ 10, 12, 39; *see generally* Declaration of Kristin Comella (D.E. 45-1) ("Comella Decl.") Ex. A (D.E. 45-2); Pl.'s SMUF ¶ 40.

Starting, as the regulation logically requires, with the adipose tissue Defendants recover from patients, it is clear that Defendants' processing constitutes far more than minimal manipulation of that tissue. The relevant characteristics of a structural tissue such as adipose tissue[4] relate to its utility for reconstruction, repair, or replacement. *See* 21 C.F.R. § 1271.3(f)(1); Decl. of Carolyn Yong, Ph.D. (D.E. 42-4) ("Yong Initial Decl.") ¶¶ 31-32. As noted in the Government's motion, Defendants alter the original relevant characteristics of the adipose tissue by changing its bulk, lipid storage capacity, and its utility to provide cushioning and support to the body, all of which are essential to the tissue's utility for reconstruction, repair, or replacement. Pl.'s MSJ at 22-23; Yong Initial Decl. ¶ 29-33. Thus, the SVF product is more than minimally manipulated.

Defendants subvert the purpose of the minimal manipulation criterion by focusing exclusively on a single purported characteristic, which they describe as the "regenerative functions" of certain *cells* within adipose tissue. Even if Defendants' characterization of the regenerative abilities of SVF cells were assumed to be true,[5] Defendants' argument still would fail because it ignores the fact that the definition of minimal manipulation focuses on "*the tissue's* utility for reconstruction, repair, or replacement." 21 C.F.R. § 1271.3(f)(1) (emphasis added). Through their manufacturing process, Defendants destroy adipose tissue to isolate SVF cells. They then dispose of all other parts of the original tissue. Defendants do not dispute that their processing alters (and eliminates) the tissue's ability to provide cushioning and support and its capacity for lipid storage, drastically impacting its utility for reconstruction, repair, and replacement. Because Defendants so significantly alter the original relevant characteristics of the adipose tissue removed from patients, it is indisputably more than minimally manipulated.[6]

---

[4] Although Defendants dispute which HCT/P should serve as the reference point for the minimal manipulation analysis (adipose tissue or the cells obtained from processing adipose tissue), they do not dispute that adipose tissue is structural tissue, *see* Defs. Opp'n at 12 (referring to "structural adipose tissue"), or that it has been substantially altered by Defendants' processing.

[5] Although it is not relevant to the resolution of this motion for the reasons discussed above, the Government disputes Defendants' broad characterizations of the regenerative properties of adipose-derived stem cells and adipose tissue. *See* Tr. of Dep. of Carolyn Yong, Ph.D (Feb. 21, 2019) ("Yong Depo. Tr.") at 91:4-20; Decl. of Todd H. Halpern in Support of Defs.' MSJ, Ex. 4 (D.E. 45-7) ("Yong Rebuttal Expert Report") at 7-9.

[6] Defendants' interpretation essentially would result in all HCT/P's meeting the minimal manipulation standard unless *all* original relevant characteristics were altered. In reality, the

2. The SSP Exception at 21 C.F.R. § 1271.15(b) Does Not Apply to the SVF Product

As explained at length in the Government's Opposition to Defendants' Motion for Summary Judgment (D.E. 49) ("Pl.'s Opp'n."), Defendants' establishment does not qualify for the SSP exception, which applies to "an establishment that removes HCT/P's from an individual and implants *such HCT/P's* into the same individual during the same surgical procedure." 21 C.F.R. § 1271.15(b) (emphasis added); *see generally* Pl.'s Opp'n. at 4-10 (discussing use of adipose tissue as the antecedent for "such HCT/P's"). There is no dispute that Defendants' manufacturing process starts with the removal of a structural tissue from the body; namely, the patient's adipose tissue (fat). Pl.'s SMUF ¶ 5; Comella Decl. Ex. A at 9 (slide entitled "Adipose Extraction"). There also is no dispute that Defendants' SVF product as injected into the patient is not adipose tissue, a structural tissue, or tissue at all. Pl.'s SMUF ¶¶ 10-13, 45-46.

Defendants erroneously claim that adipose tissue is not the antecedent HCT/P "remove[d] . . . from an individual" and thus is not the proper starting point for an analysis under the SSP exception. Defs.' Opp'n. at 9-11. Defendants improperly focus instead on some of the *cells* in adipose tissue that are later isolated after Defendants extensively process that tissue.[7] As the Government explained in its Opposition to Defendants' Motion for Summary Judgment, Defendants simply ignore the plain meaning of the regulatory text. Even if the regulation were ambiguous, FDA's longstanding interpretation of the regulation should be given effect. *See generally* Pl.'s Opp'n.[8]

---

original relevant characteristics of an HCT/P can be significantly altered even by losing one relevant characteristic—here adipose tissue's ability to provide cushioning and support. Thus, Defendants' focus on alleged regenerative properties as an alterntative characteristic is misguided, even assuming such properties were truly a characteristic of the original HCT/P and not altered by Defendants' processing. *See* Defs.' Opp'n. at 13-14.

[7] In support of many of their arguments, Defendants cite to the unsworn expert report of Dr. Elliot Lander. Dr. Lander is himself a defendant in a similar enforcement action involving adipose-derived SVF products pending in the Central District of California. *United States v. California Stem Cell Treatment Center, Inc., . . . and Elliot B. Lander, M.D.*, No. 5:18-cv-01005 (C.D. Cal. filed May 9, 2018). Because of the financial and reputational interests Dr. Lander has in the matters being litigated here, the Court should treat his statements with skeptical caution.

[8] Plaintiff disputes Defendants' contention (Defs.' Opp'n. at 7-9) that Defendants' manufacturing process does not change the SVF cells. *See* Pl.'s Opp'n. at 8-9, n.4; Suppl. Decl. of Carolyn Yong, Ph.D. (D.E. 49-2) ¶¶ 4-5; Pl.'s Resp. to Defs.' Statement of Material Undisputed Facts (D.E. 49-1) ¶¶ 6-7. However, that unsupported claim is not relevant to the

Defendants now appear to have performed an about-face on this issue. In their Motion for Summary Judgment, Defendants appeared to recognize that "such HCT/P's" in the SSP exception language referred to the HCT/P's removed from the patient. Defs.' MSJ at 11-12. In their opposition brief, Defendants now assert that the phrase "such HCT/P's" refers to the "HCT/P's in the form implanted back into the patient." Defs.' Opp'n. at 9. Defendants' new position is even more untenable than their previous position. By way of illustration, inserting Defendants' new definition into the text of the SSP exception for "such HCT/P's" leads to this unintelligible result:

> an establishment that removes HCT/P's from an individual and implants *HCT/P's in the form implanted back into the patient* into the same individual during the same surgical procedure.

Defendants' newly adopted position creates a tautology and renders the phrase "such HCT/P's"—the core of this legal dispute—completely meaningless.

Defendants' expansive interpretation would allow the narrow SSP exception to entirely swallow FDCA's drug approval process for any product manufactured from a patient's HCT/P. Under Defendants' revised interpretation, an establishment could remove *any* HCT/P from *any* part of a patient, perform *any* number and type of manufacturing steps on that tissue in relation to *any* purported surgical procedure (regardless of the risk associated with any of those steps), inject the end product into *any* part of the patient, and then invoke the SSP exception as long as the end product contained some derivative of the original HCT/P (no matter how wildly different

---

resolution of the cross-motions for summary judgment, because it relates to Defendants' flawed legal interpretation of the SSP exception.

Defendants further assert that their collagenase enzyme simply "cleanses and separates" SVF cells from adipose tissue. Def.s' Opp'n at 7. Destroying adipose tissue must qualify as more than cleansing and separating by any reasonable interpretation of those terms. As at least one court has recognized, the use of an enzyme to break down adipose tissue before reinjecting some of the cells from that tissue back into the patient raises reasonable "concerns about the impact [the] enzyme might have on cells that might be reintroduced into the human body." *See Cytori Therapeutics v. FDA*, 715 F.3d 922, 927-28 (D.C. Cir. 2013) (upholding FDA's determination that a medical device used to harvest stem cells from adipose tissue was not substantially equivalent to a device that isolated stem cells from blood and bone marrow). Defendants have not submitted data to FDA to alleviate such reasonable concerns in any application to the agency. Pl.'s SMUF ¶¶ 21- 22.

the end product). This interpretation, whereby all processed HCT/P's would qualify for the SSP exception, is patently absurd and could result in untold harm to patients.

Defendants' varying interpretations of the SSP exception also ignore the distinction Part 1271 makes between *tissue* and *cells*. By definition, HCT/P's are "articles containing or consisting of human cells *or* tissues . . . ." 21 C.F.R. § 1271.3(d) (emphasis added). The significant difference between HCT/P's that are "structural tissue" and HCT/P's that are "cells or nonstructural tissues" is further reflected by two distinct definitions used to determine whether HCT/P's are minimally manipulated under 21 C.F.R. § 1271.10(a)(1). *See* 21 C.F.R. § 1271.3(f). Losing sight of Part 1271's important distinction between cells and tissues, Defendants' competing readings of the SSP exception would lead to another absurd result. Even though Defendants' SVF product does not satisfy the criteria for *reduced* regulation as a 361 HCT/P under 21 C.F.R. § 1271.10(a) (*see* Section B.1, *supra*), Defendants' interpretation of the SSP exception would allow them to avoid FDA regulation *entirely* by removing one type of HCT/P— structural tissue—and transforming it into another HCT/P the regulations treat differently—in this case, a cellular product. Because the SVF product is unquestionably more than minimally manipulated, Pl.'s MSJ at 22-23, *a fortiori*, the SSP exception cannot apply to Defendants' establishment.

Rather than adopt Defendants' tortured reading of these regulations and create a vast loophole in the FDCA with the potential for serious public harm, this Court should interpret the SSP exception consistent with its inherent plain meaning, read in the appropriate context of "the whole law, . . . its object and policy." *John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 94-95, (1993); *see Gilbert v. Alta Health & Life Ins. Co.*, 276 F.3d 1292 (11th Cir. 2001); *see also Cremeens v. City of Montgomery*, 602 F.3d 1224, 1227 (11th Cir. 2008) ("We apply the canons of construction to regulations as well as to statutes."). Simply put, Defendants remove an HCT/P, adipose tissue, and do not reimplant "such HCT/P" into their patients. They instead inject an SVF product that fails to retain any semblance of the original adipose tissue's ability to provide cushioning and support to parts of the body. The SSP exception cannot apply to Defendants' establishment.

### C. Defendants' Other Arguments are Irrelevant to the Resolution of this Matter

Defendants also raise arguments irrelevant to resolving this motion. Primarily, Defendants discuss studies that they claim show the "safety and efficacy" of their SVF product

in an attempt to refute allegations that their practices could "endanger patients." Defs.' Opp'n. at 3-5. Defendants' argument turns the drug approval process on its head by suggesting that FDA bears the burden to prove that an unapproved product is unsafe or ineffective before bringing an enforcement action. *See* Defs.' Opp'n at 3-5; Pl.'s SMUF ¶ 21. The law requires exactly the opposite. *See* 21 U.S.C. § 355(a). If Defendants believe their SVF product is safe and effective, they should submit the proper data to FDA and seek approval to allow it to be marketed legally.[9]

Further, Defendants fail to understand that a drug can "endanger patients" in different ways. Drugs like Defendants' SVF product that have not been shown to be safe and effective obviously could endanger patients directly if they are not safe. Such drugs also may harm patients indirectly if they are not effective, because patients may forego other, proven treatments. Even approved products that have been shown to be safe and effective in adequate and well-controlled studies can still endanger patients if they are not produced under conditions that comply with CGMP and labeled with adequate directions for use. For all of these reasons, the FDCA prohibits the manufacture and sale of adulterated and misbranded drugs—prohibitions that Defendants blithely argue should not apply to them and their products.[10]

## CONCLUSION

Defendants are violating well-established law and endangering the public by manufacturing an adulterated and misbranded experimental drug. It is clear from the plain language of 21 C.F.R. Part 1271 that no exception applies. The Government therefore requests that this Court grant its motion for summary judgment and permanently enjoin Defendants from causing the adulteration and misbranding of their drugs in violation of the FDCA.

---

[9] It is not necessary for this Court to resolve Defendants' claims of safety and efficacy to grant summary judgment in favor of the Government. Whether a drug is safe and effective is relevant to just one of three independent bases for establishing that the SVF product fails to bear adequate directions for use. *See* Pl.'s MSJ at 17-19, n.8; Decl. of Larissa Lapteva, M.D. (D.E. 42-5), ¶¶ 14-32. Because Defendants admit that they do *not* label their SVF product with indications for use, dosages, or routes of administration, Pls. SMUF ¶ 20, the SVF product is misbranded even if it were generally recognized as safe and effective—which it is not. Pl.'s MSJ at 16-17.

[10] Nor can the safety and efficacy of Defendants' SVF product be ensured by the Florida Board of Medicine. State health departments and medical boards play an important role in overseeing medical practices, but that responsibility is complementary to, not exclusive of, FDA's authority to safeguard the safety and effectiveness of products used by physicians. *See* 21 U.S.C. § 393(b)(2)(B); *Regenerative Scis., LLC*, 741 F.3d at 1319-21.

| | |
|---|---|
| DATED: April 1, 2019. | **Respectfully Submitted,** |
| **JOSEPH H. HUNT**<br>Assistant Attorney General | **ARIANA FAJARDO ORSHAN**<br>**UNITED STATES ATTORNEY** |
| **JAMES M. BURNHAM**<br>**Deputy Assistant Attorney General**<br>**Civil Division** | **JAMES A. WEINKLE**<br>**Assistant United States Attorney**<br>Florida Bar No. 0710891<br>99 N.E. 4th Street, Suite 300 |
| **GUSTAV W. EYLER**<br>**Acting Director**<br>**Consumer Protection Branch** | Miami, Florida 33132<br>Tel.: 305.961.9290<br>Email: James.Weinkle@usdoj.gov |
| **ROGER J. GURAL**<br>Roger J. Gural<br>**Trial Attorney**<br>Consumer Protection Branch<br>United States Department of Justice<br>P.O. Box 386<br>Washington, DC  20044<br>Tel.: 202.307.0174<br>Email: roger.gural@usdoj.gov | *Counsel for United States of America* |

*Counsel for United States of America*

Of Counsel:
ROBERT P. CHARROW
General Counsel

STACY CLINE AMIN
Chief Counsel
Food and Drug Administration
Deputy General Counsel
Department of Health and Human Services

PERHAM GORJI
Deputy Chief Counsel for Litigation

MICHAEL D. HELBING
Associate Chief Counsel for Enforcement
United States Food and Drug Administration
Office of the Chief Counsel
White Oak 31, Room 4426A
10903 New Hampshire Avenue
Silver Spring, MD 20993-0002
Telephone: 240.402.6165