UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO.: 18-61047-CIV-UNGARO/O'SULLIVAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

US STEM CELL CLINIC, LLC, a Florida
limited liability company,
US STEM CELL, INC., a Florida profit
corporation, and
KRISTIN C. COMELLA and
THEODORE GRADEL, individuals,

    Defendants.

## CONSENT DECREE OF PERMANENT INJUNCTION
## FOR DEFENDANT THEODORE GRADEL

Plaintiff, the United States of America, by its undersigned attorneys, having filed a Complaint for Permanent Injunction ("Complaint") against US Stem Cell Clinic, LLC, a Florida limited liability company, US Stem Cell, Inc., a Florida profit corporation, and individuals Kristin C. Comella and Theodore Gradel (collectively, "Defendants"); and Defendant Theodore Gradel ("Defendant Gradel") having appeared and having consented to the entry of this Consent Decree of Permanent Injunction ("Decree") without contest, without admitting or denying the allegations in the Complaint except as otherwise stated in any pleading responsive to the Complaint, and before any testimony has been taken, and the United States of America having consented to this Decree;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. This Court has jurisdiction over the subject matter in this action under 21 U.S.C. § 332 and 28 U.S.C. §§ 1331, 1337, and 1345, and personal jurisdiction over Defendant Gradel. Venue in this district is proper under 28 U.S.C. §§ 1391(b) and (c).

2. The Complaint for Permanent Injunction states a cause of action against Defendant Gradel under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301, *et seq.* (the "Act").

3. For purposes of this Decree, the following definitions shall apply:

   A. "Drug" shall have the meaning given the term in 21 U.S.C. § 321(g)(1) and shall include any HCT/P, as defined below, that does not meet all of the criteria in 21 C.F.R. § 1271.10(a), and the exception in 21 C.F.R. § 1271.15 does not apply;

   B. "HCT/P" shall refer to a human cell, tissue, or cellular or tissue-based product, as defined in 21 C.F.R. § 1271.3(d);

   C. An "SVF product" shall refer to any and all products that Defendant Gradel prepares or causes to be prepared that contain Stromal Vascular Fraction ("SVF") obtained or derived from adipose tissue;

   D. "Biological product" shall have the meaning given the term in 42 U.S.C. § 262(i), and shall include any HCT/P, as defined above, that does not meet all of the criteria in 21 C.F.R. § 1271.10(a), and the exception in 21 C.F.R. § 1271.15 does not apply; and

   E. "Defendant Gradel's facility" shall refer to any location(s) at which Defendant Gradel, now or in the future, manufactures, processes, packs, repacks, labels, holds, and/or distributes an SVF product, any other drug, any HCT/P, and/or any biological product, as defined above.

4. The Complaint alleges that Defendants' SVF product is a drug within the meaning of 21 U.S.C. § 321(g)(1) and a biological product within the meaning of in 42 U.S.C. § 262(i), that Defendants' SVF product does not meet all of the criteria in 21 C.F.R. § 1271.10(a), and that no exception in 21 C.F.R. § 1271.15 applies.

5. The Complaint alleges that Defendants violate the Act, 21 U.S.C. § 331(k), by causing articles of drug to become adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B), and misbranded within the meaning of 21 U.S.C. § 352(f)(1) while such drugs, or one or more of their components, are held for sale after shipment in interstate commerce.

6. Upon entry of this Decree, Defendant Gradel is hereby permanently restrained and enjoined under 21 U.S.C. § 332(a) and the inherent equitable authority of this Court, from directly or indirectly doing or causing to be done any act that:

    A. Violates 21 U.S.C. § 331(k) by causing any article of drug to become adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B) or to become misbranded within the meaning of 21 U.S.C. § 352(f)(1), while such article is held for sale after shipment of one or more of its components in interstate commerce; and/or

    B. Results in the failure to implement and continuously maintain the requirements of this Decree.

7. Defendant Gradel represents that, as of the date of entry of this Decree, he is not in active concert or participation, or affiliated with Defendant US Stem Cell Clinic, LLC, Defendant US Stem Cell, Inc., or Defendant Kristin C. Comella. He further represents that he is not engaged in and is not causing, either directly or indirectly, the manufacture, processing, packing, repacking, labeling, holding, and/or distribution of any drugs, HCT/Ps, and/or

biological products (including, but not limited to, as the owner or partial owner of an entity engaged in or causing such activities).

8. If, after entry of this Decree, Defendant Gradel later intends to resume, either directly or indirectly manufacturing, processing, packing, repacking, labeling, holding, and/or distributing any drugs, HCT/Ps, and/or biological products, or causing any such activities (including, but not limited to, as owner or partial owner of an entity engaged in causing such activities), he shall notify FDA in writing at least thirty (30) days in advance of his intent to resume any such activities. This notice shall identify with specificity the type(s) of drugs, HCT/P(s), and/or biological product(s) Defendant Gradel intends to manufacture, process, pack, repack, label, hold, and/or distribute and his roles and responsibilities in such activities.

9. Following Defendant Gradel's provision of the notice to FDA described in paragraph 8, Defendant Gradel shall not resume any of the activities described in said notice and shall not either directly or indirectly manufacture, process, pack, repack, label, hold, and/or distribute any drugs, HCT/Ps, and/or biological products, or causing any such activities (including, but not limited to, as owner or partial owner of an entity engaged in causing such activities), unless and until Defendant Gradel receives FDA's written authorization that he may resume operations and shall resume operations only to the extent authorized in FDA's written authorization. In no circumstance shall FDA's silence be construed as a substitute for written notification. In evaluating whether written authorization should be provided, FDA may ask Defendant Gradel for additional information, require that Defendant Gradel take corrective action to achieve compliance with this Decree, the Act, and/or applicable regulations, and/or inspect Defendant Gradel's facility to determine compliance with this Decree, the Act, and/or applicable regulations.

10. If, at any time after Defendant Gradel receives FDA's written authorization to resume operations described in paragraph 9, FDA determines, based on the results of an inspection, analyses of samples, a report or data prepared or submitted by Defendant Gradel, or any other information, that Defendant Gradel has failed to comply with any provision of this Decree, or has violated the Act and/or applicable regulations, and/or that additional corrective actions are necessary to achieve compliance with this Decree, the Act, and/or applicable regulations, FDA may, as and when it deems necessary, direct Defendant Gradel in writing to take appropriate actions. Such actions may include, but are not limited to, the following:

A. Cease receiving, manufacturing, processing, packing, repacking, labeling, and/or distributing an SVF product, any other drug, HCT/P, and/or biological product;

B. Recall, at Defendant Gradel's sole expense, any products that are adulterated or misbranded or are otherwise in violation of this Decree, the Act, or applicable regulations; and/or

C. Take any other corrective action(s) as FDA, in its discretion, deems necessary to bring Defendant Gradel and/or his products into compliance with this Decree, the Act, or applicable regulations.

This remedy shall be separate and apart from, and in addition to, any other remedy available to the United States under this Decree or under the law.

11. Any cessation of operations or other action described in paragraph 10 shall continue until Defendant Gradel receives written notification from FDA that Defendant Gradel appears to be in compliance with this Decree, the Act, and its implementing regulations, and that Defendant Gradel may resume operations. Upon Defendant Gradel's written request to resume operations, FDA will determine whether Defendant Gradel appears to be in such compliance,

and, if so, issue to Defendant Gradel a written notification permitting, as appropriate, resumption of operations. In no circumstance shall FDA's silence be construed as a substitute for written notification. The costs of FDA inspections, sampling, testing, travel time, and subsistence expenses to implement the remedies set forth in this paragraph and paragraph 10, including the cost of travel incurred by specialized investigatory and expert personnel, shall be borne by Defendant Gradel at the rates specified in paragraph 13.

12.  Following Defendant Gradel's provision of the notice to FDA described in paragraph 8, representatives of FDA shall be permitted, without prior notice and as and when FDA deems necessary, to inspect Defendant Gradel's facility or any other location at which he conducts business and take any other measures necessary to monitor and ensure continuing compliance with this Decree. During inspections, FDA representatives shall be permitted to: have immediate access to buildings, equipment, in-process or unfinished and finished materials, containers, packaging material, labeling, and other promotional material therein; take photographs and make video recordings; take samples of Defendant Gradel's in-process or unfinished and finished materials, containers, packaging material, labeling, and other promotional material; and examine and copy all records relating to the receipt, manufacture, processing, packing, repacking, labeling, holding, and distribution of any and all SVF products, or any other drugs, HCT/Ps, biological products, and/or their components. The inspections shall be permitted upon presentation of a copy of this Decree and appropriate credentials. The inspection authority granted by this Decree is separate from, and in addition to, the authority to make inspections under the Act, 21 U.S.C. § 374.

13.  Following Defendant Gradel's provision of the notice to FDA described in paragraph 8, Defendant Gradel shall reimburse FDA for the costs of all FDA inspections,

investigations, supervision, reviews, examinations, and analyses specified in this Decree or that FDA deems necessary to evaluate Defendant Gradel's compliance with this Decree, including the travel incurred by specialized investigatory and expert personnel. The costs of such inspections shall be borne by Defendant Gradel at the prevailing rates in effect at the time the costs are incurred. As of the date of this Decree, these rates are: $95.39 per hour and fraction thereof per representative for inspection work; $114.33 per hour or fraction thereof per representative for analytical or review work; $0.58 per mile for travel expenses by automobile; government rate or the equivalent for travel by air or other means; and the published government per diem rate or the equivalent for the areas in which the inspections are performed per-day, per-representative for subsistence expenses, where necessary. In the event that the standard rates applicable to FDA supervision of court-ordered compliance are modified, these rates shall be increased or decreased without further order of the Court.

14. If Defendant Gradel receives FDA's written authorization to resume operations under paragraph 9, Defendant Gradel shall immediately post a copy of this Decree in a common area at Defendant Gradel's facility and at any other location at which he conducts business and shall ensure that the Decree remains posted for as long as the Decree remains in effect.

15. If Defendant Gradel receives FDA's written authorization to resume operations under paragraph 9, Defendant Gradel shall provide a copy of this Decree, by personal service or registered mail, to each and all of his directors, officers, agents, employees, representatives, successors, assigns, attorneys, and any and all persons in active concert or participation with any of them (referred to collectively as "Associated Persons"). Within thirty (30) calendar days after the date Defendant Gradel receives FDA's authorization to resume operations under paragraph 9, Defendant Gradel shall provide to FDA an affidavit of compliance, signed by a person with

personal knowledge of the facts, stating the fact and manner of compliance with the provisions of this paragraph and identifying the names, addresses, and positions of all persons who have received a copy of this Decree.

16. In the event that, at any time after Defendant Gradel receives FDA's authorization to resume operations under paragraph 9, Defendant Gradel becomes associated with any additional Associated Person(s), Defendant Gradel immediately shall provide a copy of this Decree, by personal service or certified mail (restricted delivery, return receipt requested), to such Associated Person(s). Within thirty (30) calendar days of each time Defendant Gradel becomes associated with any such additional Associated Person(s), Defendant Gradel shall provide to FDA an affidavit stating the fact and manner of their compliance with this paragraph, identifying the names, addresses, and positions of all Associated Persons who received a copy of this Decree pursuant to this paragraph, and attaching a copy of the executed certified mail return receipts. Within ten (10) calendar days of receiving a request from FDA for any information or documentation that FDA deems necessary to evaluate Defendant Gradel's compliance with this paragraph, Defendant Gradel shall provide such information or documentation to FDA.

17. If Defendant Gradel receives FDA's written authorization to resume operations under paragraph 9, Defendant Gradel shall notify FDA at least fifteen (15) calendar days before any change in ownership, character, or name of their businesses, including incorporation, reorganization, bankruptcy, assignment, or sale resulting in the emergence of a successor business or corporation, the creation or dissolution of subsidiaries, or any other change in the corporate structure or identity, or in the sale or assignment of any business assets, such as buildings, equipment, or inventory, that may affect obligations arising out of this Decree. Defendant Gradel shall provide a copy of this Decree to any potential successor or assign at least

fifteen (15) calendar days before any sale or assignment. Defendant Gradel shall furnish FDA with an affidavit of compliance with this paragraph no later than ten (10) calendar days prior to such assignment or change in ownership.

18.     If Defendant Gradel fails to comply with any provision of the Act, its implementing regulations, and/or this Decree with respect to any of Defendant Gradel's products and/or Defendant Gradel's facility, including any time frame imposed by this Decree, then, on written notice of FDA in this proceeding, Defendant Gradel shall pay to the United States of America: fifteen thousand dollars ($15,000) in liquidated damages for each day such violation continues; an additional sum of fifteen thousand dollars ($15,000) in liquidated damages for each violation; and further additional sum equal to the retail value of drugs, HCT/Ps and/or biological products that have been received, manufactured, processed, packed, repacked, labeled, held, and/or distributed in violation of the Act, its implementing regulations, and/or this Decree. The remedy in this paragraph shall be in addition to any other remedies available to the United States under this Decree or the law.

19.     To the extent that paragraphs 7, 8, 10, 12, and 18 of this Decree apply to drugs, such paragraphs shall apply only to drugs that are also biological products and/or HCT/Ps, as those terms are defined in paragraph 3.

20.     Defendant Gradel shall abide by the decisions of FDA, and FDA's decisions shall be final. All decisions conferred upon FDA in this Decree shall be vested in FDA's discretion and, if contested, shall be reviewed by the Court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A). Review by the Court of any FDA decision rendered pursuant to this Decree shall be based exclusively on the written record before FDA at the time of the decision. No discovery shall be taken by either party.

21. Should the United States of America bring, and prevail in, a contempt action to enforce the terms of this Decree, Defendant Gradel shall, in addition to other remedies, reimburse the United States for its attorneys' fees (including overhead), travel expenses incurred by attorneys and witnesses, court costs, expert witness fees, and investigational and analytical expenses incurred in bringing such action.

22. All notifications, certifications, reports, correspondence, and other communications to FDA required by the terms of this Decree shall be marked "Consent Decree Correspondence" and shall be sent to both the Director, Office of Biological Products Operations, Office of Regulatory Affairs, Office of Medical Products and Tobacco Operations, U.S. Food and Drug Administration, 10903 New Hampshire Avenue, White Oak Building 31, Room 3548, Silver Spring, MD 20993, and Director, Office of Compliance and Biologics Quality, CBER, 10903 New Hampshire Avenue, White Oak Building 71, Room 5030 HFM-600, Silver Spring, MD 20993.

23. If any deadline in this Decree falls on a weekend or holiday, the deadline is continued to the next business day.

24. This Court retains jurisdiction of this action and Defendant Gradel thereto for the purpose of enforcing and modifying this Decree and for the purpose of granting such additional relief as may be necessary or appropriate.

SO ORDERED:

Dated this ___ day of _____, 2019.

_____
UNITED STATES DISTRICT JUDGE

The undersigned hereby consent to entry of the foregoing Decree.

| For Defendants: | For Plaintiff: |
|---|---|
| *[signature]*<br>**THEODORE GRADEL** | **ARIANA FAJARDO ORSHAN**<br>United States Attorney |
| *[signature]*<br>**TODD H. HALPERN**<br>Venable LLP<br>600 Massachusetts Avenue, NW<br>Washington, DC 20001<br>Telephone: 202.344.4152<br>Email: THHalpern@Venable.com | **JAMES A. WEINKLE**<br>Assistant U.S. Attorney<br>Florida Bar No. 0710891<br>99 N.E. 4th Street<br>Miami, FL 33132<br>Telephone: (305) 961-9290<br>Email: James.Weinkle@usdoj.gov |

**JOSEPH P. HUNT**
Assistant Attorney General

**JAMES M. BURNHAM**
Deputy Assistant Attorney General
Civil Division

**GUSTAV W. EYLER**
Acting Director
Consumer Protection Branch

**ALAN PHELPS**
Assistant Director

*[signature]*
**ROGER J. GURAL**
Trial Attorney
Consumer Protection Branch
P.O. Box 386
Washington, D.C. 20044
Email: Roger.Gural@usdoj.gov
Tel. (202) 307-0174

Of Counsel:

ROBERT P. CHARROW
General Counsel

STACY CLINE AMIN
Chief Counsel
Food and Drug Administration
Deputy General Counsel
Department of Health and Human
Services

PERHAM GORJI
Deputy Chief Counsel for Litigation

MICHAEL D. HELBING
Associate Chief Counsel for Enforcement
United States Department of Health and
Human Services
Office of the General Counsel
White Oak 31, Room 4426A
10903 New Hampshire Avenue
Silver Spring, MD 20993-0002
Telephone: (240) 402-6165