**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

**CASE NO.: 18-CV-61047**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

  **v.**

**US STEM CELL CLINIC, LLC, a Florida limited liability company,
US STEM CELL, INC., a Florida profit corporation, and
KRISTIN C. COMELLA and
THEODORE GRADEL, individuals,**

      **Defendants.**

**DEFENDANTS US STEM CELL, INC., US STEM CELL CLINIC, LLC,
AND KRISTIN C. COMELLA'S MOTION TO CLARIFY AND TO STAY
THE REQUIREMENT THAT PATIENT CELLS CURRENTLY
STORED IN AN FDA-REGISTERED TISSUE BANK BE DESTROYED**

**I.   INTRODUCTION**

The injunction here goes a bit too far. It forces the Defendants to destroy the property of scores of people who are not party to this litigation and who have not been heard in this litigation. The destruction is particularly unique because it does not involve widgets or realty, but part of a person's body. The Defendants are thus seeking a slight modification to the injunction to allow these third parties to retain that property, their very own cells, and at minimum to afford these

1

interested persons their due process right to be heard—a right over one hundred of them have attempted to exercise by sending letters to the Court after learning the fate of their cells.[1]

The Court should modify the injunction for three reasons. First, the injunction goes beyond the scope of Federal Rule of Civil Procedure 65(d) by interfering with the rights of non-parties. Second, patients' due process rights are violated because none were given their day in court. Third and finally, the destruction of defendant's patients' cells would be an impermissible taking.

For those reasons, the injunction should be modified to stop the manifest injustice that would result if Defendants were forced to destroy the cells in their possession.

## II. PROCEDURAL HISTORY

On May 9, 2018, the United States of America ("United States") filed its complaint against Defendants US Stem Cell, Inc.; US Stem Cell Clinic, LLC; and Kristin C. Comella (hereinafter "Defendants") (ECF 1)[2]. The complaint alleged wrongdoing with respect to a particular, same-day surgical procedure in which medical professionals remove fat tissue from a patient, isolate stromal vascular fraction ("SVF") from that tissue, and re-inject that SVF back into the patient. At no point did the complaint discuss any issues relating to a tissue bank that certain of the Defendants operate. The complaint did not, in other words, allege that anything associated with the tissue bank was unlawful in any way. The omission of the operations of the tissue bank from the complaint could not have been an oversight; after all, the tissue bank is registered with the Food and Drug Administration.

After failing to settle through mediation, both the United States and Defendants filed concurrent motions for summary judgment on March 11, 2019. (ECF 48; ECF 42). Those motions

---

[1] One tissue bank depositor has demanded that her cells at the tissue bank not be destroyed due to the pendency of a lawsuit. This person received an SVF treatment in 2015, not from the Defendants but from a private physician, and her cells were also banked. Her suit is currently pending.
[2] Theodore Gradel was also a defendant, but has since settled the matter as to him.

and the associated briefing focused exclusively on the SVF procedure. Nothing in the briefing touched on the operations of the tissue bank. The Court granted the United States' motion for summary judgment. Its opinion, like the summary judgment motions themselves, analyzed only the SVF procedure. Nothing in that opinion touched on the operations of the tissue bank. Shortly thereafter, upon hearing from the parties about the scope of injunctive remedy, the Court ordered a permanent injunction against Defendants. (ECF 73; ECF 75; ECF 83).

The Defendants are complying with the injunction. The Defendants are not seeking to evade any aspects of that injunction.[3] The Defendants are, however, seeking to clarify one provision of the injunction – namely, Paragraph 10 – which requires the Defendants to destroy tissue that is stored at the tissue bank. The clarification they seek is to allow them to continue to store tissue at the bank until the patients to whom the tissue belongs request its return.

## III.  RELEVANT FACTS

In assessing the impact of the injunction on third parties, it is important to understand the operations at the tissue bank, at least in a broad sense. The tissue bank, which is registered with the Food and Drug Administration, receives tissue from health care providers. Those providers and their patients are from all over the country. Not all of the tissue, in other words, comes from procedures performed at or by any of the Defendants. Some of that tissue is adipose tissue, which falls within the parameters of the Court's injunction and destruction order.

As is obvious, then, the operations of the tissue bank are a far cry from the SVF procedure that was the subject of this litigation. As the Court noted in its order entering the injunction, "[t]he Court is cognizant of the fact that stem cell treatments and products are rapidly evolving, but every such treatment and product is unique and whether they constitute "drugs," or "biological products"

---

[3] The Defendants do, however, reserve all rights to appeal the Court's summary judgment order and the injunction itself.

subject to FDA regulation under the FDCA and PHSA, respectively, requires independent consideration."

The cells stored at Defendants' tissue bank are in Defendants' custody and are derived from adipose tissue; therefore, Defendants would be required to destroy all cells stored in the tissue bank—regardless whether they are from Defendants' patients or patients of non-parties and notwithstanding the fact that the tissue at the bank was not part of this litigation.

## IV. ARGUMENT

Pursuant to the Federal Rule of Civil Procedure 59(e), a court may amend or alter a judgment if a motion is filed within 28 days. Fed. R. Civ. P. 59(e). Pursuant to the Rule, there are "three grounds which justify the filing of a motion for reconsideration: 1) an intervening change in controlling law; 2) the availability of new evidence; and 3) the need to correct clear error or prevent manifest injustice." *Beach Bars USA, LLC v. Indem. Ins. Corp. of DC*, No. 11-60883-CIV-COOKE/TURNOFF, 2013 WL 12085500, *1 (S.D. Fla. Sept. 25, 2013) (internal quotations omitted). Here, the decision to require the destruction of cells belonging to individuals not party to this litigation, along with individuals that were never even treated by anyone associated with the Defendants, must be modified to prevent a manifest injustice. Failure to do so would leave in place an overbroad injunction, would result in a violation of patient's due process rights, and would lead to an impermissible taking.

### a. The Injunction is Overbroad as it Binds Third Parties

The Court's Order binds non-parties, namely, the individuals whose tissue is stored at the bank. That is improper. Pursuant to Rule 65(d) of the Federal Rules of Civil Procedure, "[e]very order granting an injunction . . . is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with

4

them who receive actual notice of the order by personal service or otherwise." Fed. R. Civ. P. 65(d). There is no question that individuals whose tissue is stored at the bank were neither party to this litigation nor in active concert or participation with Defendants.

The Defendants do not own the tissue at the bank. Instead, patients retain continuous ownership, which is clearly outlined in the contract that patients sign when choosing to store their cells at Defendant's tissue bank. Specifically, the contract states: "[n]otwithstanding Bank's possession of the Tissue and the stem cells derived therefrom, Patient is and shall remain the owner of the Tissue and the stem cells derived therefrom, until the release or disposition of same by Bank." Forcing the destruction of patients' SVF cells, which Defendants have clearly stated are always owned by its patients, impermissibly binds them to this injunction.[4]

Indeed, courts have modified injunctions that impermissibly infringed on the rights of innocent third parties. In *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1105 (D.C. Cir. 2009), for example, the United States filed suit against various cigarette manufacturers and tobacco-related trade organizations arguing that they were engaged in a conspiracy to deceive the American public about the health effects of smoking. The district court agreed with the United States, entered an injunction, and ordered the defendants to take various remedial measures—one of which included requiring that tobacco retailers display an in-store sign meant to correct the misleading statements that the defendants made about tobacco. *Id.* at 1141. The defendants appealed. During the appeal, tobacco retailers filed an amicus brief arguing that the injunction impermissibly ordered retailers, who were not party to the original suit and did not have their day in court, to display "corrective communications" that the court required of tobacco manufacturers.

---

[4] This situation is not synonymous with individuals who donate their cells for scientific research. *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F.Supp.2d 1064 (S.D. Fla. 2003) (finding that Defendants did not retain a property right in their tissue after it was donated for medical research). Here, the tissue bank contract clearly states that patients retain ownership, and Defendants are merely storing the cells, not using them for research.

*Id.* The United States Court of Appeals for the District of Columbia agreed with the retailers. The court vacated the relevant provision and remanded to the district court to either "abandon[]" the relevant provision or "craft[] a new version reflecting the rights of third parties." *Id.* at 1142. The Court of Appeals explained "that the district court exceeded its authority by failing to consider the rights of retailers and crafting an injunction that works a potentially serious detriment to innocent persons not parties to or otherwise heard in the district court proceedings. Even though not explicitly bound by the terms of an injunction on pain of contempt, third parties may be so adversely affected by an injunction as to render it improper." *Id.* at 1141.

  The non-party individuals who store tissue at the bank are in the same position as the retailers in the *Philip Morris* case. Just like the retailers, the non-party individuals here will be bound by an injunction that resulted from a litigation in which they played no part. And, just like the retailers, the non-party individuals here have never been found to have engaged in any wrongdoing. So, just like the court in *Philip Morris*, the Court here should modify the injunction so as to avoid harming innocent third parties.

  The concept that injunctions should not work a detriment on third parties is so well entrenched that it has been applied even in situations in which a court cannot identify the third parties and any harm to those third parties is both inchoate and non-cognizable. Take, for example, *Cook Inc. v. Bos. Sci. Corp.,* 333 F.3d 737, 738–739 (7th Cir.2003). There, Angiotech Pharmaceuticals held a patent for coating vascular stents, used to treat atherosclerosis, with a drug that reduces the risk of the affected artery further narrowing after the procedure. Angiotech Pharmaceuticals did not manufacture stents or drugs, but provided a co-exclusive license to two corporations. *Id.* at 739. The licenses forbade any assignments without the approval of all parties. *Id.* One of the corporations that was provided a license, Cook, contracted with a third-party

6

company, ACS, to make the stents for Cook to coat with the drug. *Id.* at 741. The district court found this to be a *de facto* assignment that violated the contract, and granted an injunction. *Id.* The injunction provided, in relevant part, that "no information, data or technology generated or gathered in connection with the ACS deal shall be used for any commercial purpose, *including the purpose of obtaining regulatory approval to sell paclitaxel-coated stents in the United States or elsewhere*." *Id.* at 744. On appeal, the Seventh Circuit struck down that part of the injunction because it "violate[d] the principle that in determining the appropriate scope of an injunction the judge must give due weight to the injunction's possible effect on innocent third parties." *Id*. The Court of Appeals determined that those third parties are the unnamed sufferers of atherosclerosis who might benefit from a device that prevents restenosis, the narrowing of the artery after implantation of a stent. *Id.* The court did not identify who those third parties might be, and acknowledged that a failure to obtain regulatory approval for drug-coated stents worked no legal harm on those third parties. Still, the court struck the provision as overbroad. *Id.*

If the injunction in Cook was overbroad, *a fortiori* the injunction here is overbroad. After all, the injunction here works real harm on real, identified people, none of whom were parties to the litigation.

### b. The Order Violates Defendants' Patients' Due Process Rights

It is well-settled law that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Taylor v. Sturgel*, 553 U.S. 880, 884 (2008) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)). Indeed, "[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." *Martin v. Wilks*, 490 U.S. 755, 762 (1989). The most basic and fundamental requirements of due process provide that a party

7

must be properly brought within the court's jurisdiction and given an opportunity to be heard. *See Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 313 (1950) ("[A]t a minimum [the Due Process Clause] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). "This rule is part of our 'deep-rooted historic tradition that everyone should have his own day in court.'" *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 798 (1996).

  The individuals storing tissue at the bank never had their day in court. They were not parties to this suit. Nor did they have any warning that the litigation would affect them. The cells that Defendants store in the tissue bank were never at issue in this litigation. Indeed, although the existence of the tissue bank was briefly mentioned in the United States' seventeen-page Complaint, nowhere did the United States ever allege, or even hint – in the complaint or otherwise – that anything about the tissue bank presented a possible violation of the law. It is thus unreasonable—and impermissible—to suddenly sweep the tissue bank, and the tissue stored there, into the realm of this litigation.

  As non-parties, patients whose cells Defendants store in their FDA-registered tissue bank never had the opportunity to present evidence or assert their rights with respect to the cells during the action. Now, the property of these patients—parts of their own bodies—face destruction, even though nothing about that property was adjudicated here, let alone adjudicated as somehow being unlawful. Fundamental due process and fairness do not permit a court to affect substantially the rights of non-parties in this way.

  Consequently, because no patients were party to this litigation, the patients should not be adversely affected by the injunction. To destroy the patients' cells would impermissibly impede the patients' due process.

### c. The Destruction of Patients' Cells would be an Impermissible Taking

The Fifth Amendment commands that property cannot be taken without just compensation. U.S. Const. Amend. V ("[n]or shall private property be taken for public use, without just compensation."). A taking can occur through a judicial decree. *Stop the Beach Renourishment, Inc. v. Fla. Dept. of Environmental Protection*, 560 U.S. 702, 715 (2010) ("the Takings Clause bars the State from taking private property without paying for it, no matter which branch is the instrument of the taking."). "If a legislature or a court declares that what was once an established right of private property no longer exists, it has taken that property, no less than if the State had physically appropriated it or destroyed its value by regulation." *Id.*

There can be no dispute that the tissue stored at the bank is the property of the patients. It is their body, after all. And, if that alone were not enough, the contract that the patients sign when storing their tissue at the bank makes clear that the tissue is, and remains, their property. The patients have a property interest in their own cells, those cells are required to be destroyed by the injunction, yet none of the patients are being compensated. In fact, it is unclear how a court could compensate patients for the destruction of their own cells.

Accordingly, the injunction substantially interferes with the legitimate property interests of non-parties without just compensation; hence, it is an unconstitutional taking.

### V. RELIEF SOUGHT

Defendants are not attempting to evade the injunction, but do not want to facilitate a manifest injustice by destroying the property—the body parts—of innocent, non-parties.

Defendants thus request that the provisions of the injunction requiring the destruction of patients' cells be stayed pending the Court providing the patients the opportunity to be heard in court.

DATED: July 12, 2019  　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　*/s/ Isaac J. Mitrani*
　　　　　　　　　　　　　　　　　　　Isaac J. Mitrani
　　　　　　　　　　　　　　　　　　　Florida Bar No. 348538
　　　　　　　　　　　　　　　　　　　Loren H. Cohen
　　　　　　　　　　　　　　　　　　　Florida Bar No. 303879
　　　　　　　　　　　　　　　　　　　MITRANI, RYNOR,
　　　　　　　　　　　　　　　　　　　ADAMSKY & TOLAND, P.A.
　　　　　　　　　　　　　　　　　　　301 Arthur Godfrey Road, Penthouse
　　　　　　　　　　　　　　　　　　　Miami Beach, FL 33140
　　　　　　　　　　　　　　　　　　　Tel.:    305-358-0050
　　　　　　　　　　　　　　　　　　　Fax:    305-358-0050
　　　　　　　　　　　　　　　　　　　imitrani@mitrani.com
　　　　　　　　　　　　　　　　　　　lcohen@mitrani.com
　　　　　　　　　　　　　　　　　　　dbitran@mitrani.com
　　　　　　　　　　　　　　　　　　　ctenn@mitrani.com
　　　　　　　　　　　　　　　　　　　miamidocketing@mitrani.com

　　　　　　　　　　　　　　　　　　　Todd A. Harrison (admitted pro hac vice)
　　　　　　　　　　　　　　　　　　　Todd H. Halpern (admitted pro hac vice)
　　　　　　　　　　　　　　　　　　　Michael Blume (admitted pro hac vice)
　　　　　　　　　　　　　　　　　　　Stephen R. Freeland (admitted pro hac vice)
　　　　　　　　　　　　　　　　　　　Mary M. Gardner (admitted pro hac vice)
　　　　　　　　　　　　　　　　　　　Venable LLP
　　　　　　　　　　　　　　　　　　　600 Massachusetts Avenue NW
　　　　　　　　　　　　　　　　　　　Washington, DC 20001

　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants US Stem Cell Clinic, LLC,*
　　　　　　　　　　　　　　　　　　　*US Stem Cell, Inc., and Kristin C. Comella*

## **LOCAL RULE 7.1 CERTIFICATE OF GOOD FAITH CONFERENCE**

The undersigned attorney, counsel for Defendants, hereby certifies that he has conferred with Mr. Roger Gural, Esq., counsel for Plaintiff, and is authorized to represent the Plaintiff's position as follows: "The government has represented to defendants that it is not necessarily opposed to a temporary stay of paragraph 10 of the injunction to allow for any necessary consideration of the issues recently raised by defendants and by third parties.  The government intends to explain its position more fully as a response to the instant motion to be filed no later than Wednesday, July 17, 2019."

*/s/ Michael Blume*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 12, 2019, a true and correct copy of the foregoing Defendants' Motion to Clarify and to Stay the Requirement that Patient Cell's Currently Stored in an FDA-Registered Tissue Bank Be Destroyed was filed with the Clerk of the Court via CM/ECF and the CM/ECF system will send a notice of electronic filing to all counsel and parties of record listed on the Service List Below.

> */s/ Isaac J. Mitrani*
> Isaac J. Mitrani
> Florida Bar No. 348538
> MITRANI, RYNOR,
> ADAMSKY & TOLAND, P.A.
> 301 Arthur Godfrey Road, Penthouse
> Miami Beach, FL  33140
> Tel.:    305-/358-0050
> Fax:    305/358-0050
> imitrani@mitrani.com
> dbitran@mitrani.com
> ctenn@mitrani.com
> miamidocketing@mitrani.com
>
> *Attorneys for Defendants US Stem Cell Clinic, LLC, US Stem Cell, Inc., and Kristin C. Comella*