# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO.: 18-CV-61047

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

US STEM CELL CLINIC, LLC, a Florida
limited liability company,
US STEM CELL, INC., a Florida profit
corporation, and
KRISTIN C. COMELLA and
THEODORE GRADEL, individuals,

        Defendants.

---

JAN AITKEN, CAROL BARROWS,
DAVID H. BUCKLES, BARBARA BURNS,
STEPHANIE CIARAMITARO, EVELYN L.
CLOUGH, SAMUEL COLACURIO, ERIC
C. CONGIARDO, ENRIQUE CORRAL,
LAWRENCE COUGHLIN, LYDIA
CRONIN, ALLISON L. CRONIN, PAUL
DECKER, ROBERT DEMANE, GAY
D'SURNEY, CAMILLA J. FOREMAN, JAN
GIMIAN, DARRO GRIECO, GAIL GRILL,
NAOTA HASHIMOTO, LUZ C.
HERNANDEZ, LAUREL L. HODORY,
GREGORY O. HUDGINS, ALAN D.
HUDSON, KAREN J. JEFFRIES, JAMES L.
JEFFRIES,  MAUREEN JONES,
MICHAEL L. KELBY, MARY
KLUCARICH,  DEANNA M. LAWRENCE,
SUZANNE M. LAWRENCE, FRANCIS
MAGENNIS, JEFFERY MASTERS,
MARGARITA MATTINGLY, ELAINE
MURIN, BERNADETTE NEWLON,
OLIVIA NEWSOME-GRIECO, KATHRYN
L. O'HARROW, ROBERT I. ORENSTEIN,

1

**MICHAEL K. POOL, KATHLEEN ROGERS, REID RUNZHEIMER,  MARY SCZEPANIAK, SHANNON E. SETH, DEBORAH SIMMONS, CHARMIE SMITH, JUDITH SMITH, CHRISTEN STREUFERT, LINDA T. TAYLOR, JOHN M. TEMPLE, THOMAS THIBODEAU, ANTHONY J. THYNNE, DAWN WASHKEWICZ, PAM WASHKEWICZ, STEVEN WATERMAN, NANCY WEAVER, KURT WELLNER, RENATE WILSON, DAWN WINSLOW, JOYCE YEARGAN, CHARLES YEARGAN,**

**Intervenors.**

### COMPLAINT-IN-INTERVENTION

Intevenors Jan Aitken, Carol Barrows,  David H. Buckles, Barbara Burns, Stephanie Ciaramitaro, Evelyn L. Clough, Samuel Colacurio, Eric C. Congiardo, Enrique Corral, Lawrence Coughlin, Lydia Cronin, Allison L. Cronin, Paul Decker, Robert Demane, Gay D'Surney, Camilla J. Foreman, Jan Gimian, Darro Grieco, Gail Grill, Naota Hashimoto, Luz C. Hernandez, Laurel L. Hodory, Gregory O. Hudgins, Alan D. Hudson, Karen J. Jeffries, James L. Jeffries,  Maureen Jones, Michael L. Kelby, Mary Klucarich,  Deanna M. Lawrence, Suzanne M. Lawrence, Francis Magennis, Jeffery Masters,   Margarita Mattingly, Elaine Murin, Bernadette Newlon, Olivia Newsome-Grieco, Kathryn L. O'Harrow, Robert I. Orenstein, Michael K. Pool, Kathleen Rogers, Reid Runzheimer,  Mary Sczepaniak, Shannon E. Seth, Deborah Simmons, Charmie Smith, Judith Smith, Christen Streufert, Linda T. Taylor, John M. Temple, Thomas Thibodeau, Anthony J. Thynne, Dawn Washkewicz, Pam Washkewicz, Steven Waterman, Nancy Weaver, Kurt Wellner, Renate Wilson, Dawn Winslow, Joyce Yeargan, Charles Yeargan (collectively, the "Intervenors," and each, an "Intervenor"), by and through counsel, and pursuant to 28 U.S.C. §§ 2201-2202 and Rules 24 and 57 of the Federal Rules of Civil Procedure, respectfully file this Complaint for Declaratory Relief, and allege upon information and belief as follows:

2

## PRELIMINARY STATEMENT

1.      This is an action for declaratory relief seeking to prevent enforcement of an order of this Court directing the destruction of property of the Intervenors.

2.      Intervenors are individuals whose stem cells (the "Stem Cells") are banked at and in the possession of a tissue bank (the "Tissue Bank") that is registered with the United States Food and Drug Administration (the "FDA") and operated by Defendant US Stem Cell, Inc. ("US Stem").

3.      Intervenors recently received notice from US Stem that the Stem Cells are slated for destruction by July 25, 2019 pursuant to the Order of Permanent Injunction (the "Injunction Order") entered in this case on June 25, 2019. [D.E. 83]

4.      Intervenors did not have notice or an opportunity to defend their property rights in the Stem Cells before issuance of the Injunction Order and face the deprivation of their property without due process of law. Intervenors seek a declaratory judgment to protect against the provisions of the Injunction Order requiring destruction of "any and all SVF Product that is in Defendants' possession, custody, or control."

## JURISDICTION AND VENUE

5.      This action arises under the Fifth Amendment to the United States Constitution and 28 U.S.C. §§ 2201-2202. This Court has jurisdiction over the United States' claims for injunctive relief pursuant to 21 U.S.C. § 332(a).

6.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337, and 1345.

7.      Venue in this district is proper under 28 U.S.C. §§ 1391(b) and (c).

3

## PARTIES

8.      Defendant US Stem Cell Clinic, LLC, ("USSCC") is a Florida limited liability company founded in 2014, with its principal place of business located at 12651 Sunrise Blvd., Suite 104, Sunrise, Florida 33323, within the jurisdiction of this Court.

9.      Defendant US Stem, is a Florida profit corporation, founded in 1999, with its principal place of business at 13794 Northwest 4th Street, Suite 212, Sunrise, Florida 33325. US Stem operates the Tissue Bank.

10.     Plaintiff, United States of America (the "United States"), filed this action against USSCC and US Stem seeking, pursuant to the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 332(a), to restrain alleged violations by the Defendants taking place at USSCC's facilities in violation of 21 U.S.C. § 331(k), 21 U.S.C. § 351(a)(2)(B), and 21 U.S.C. § 352(f)(1).

11.     Each Intervenor is an individual who is the owner of Stem Cells being stored at the Tissue Bank.

## FACTS

12.     Intervenors are individuals who have banked their stem cells for storage at the Tissue Bank, located in South Florida pursuant to a Stem Cell Processing and Storage Agreement (each, a "Storage Agreement").

13.     Intervenors had their Stem Cells extracted and deposited at the Tissue Bank for cryopreservation and storage.

14.     The Tissue Bank is registered with the United States Food and Drug Administration (the "FDA") as a human cells, tissues, and cellular and tissue-based product establishment" [D.E. 1 ¶ 17] pursuant to 21 CFR Part 1271, with an FDA Establishment Identifier of 3005825762.

4

15.     The Storage Agreement expressly provides that the Intervenors' Stem Cells stored pursuant to the agreement is and remains the sole property of the individual entering the Storage Agreement.  One Storage Agreement provides in pertinent part:

>       (d) Notwithstanding Bank's possession of the Tissue and the stem cells derived therefrom, **Patient is and shall remain the owner of the Tissue and the stem cells derived therefrom**, until the release or disposition of same by Bank.

*See, e.g.,* Storage Agreement between Linda T. Taylor and US Stem Cell, Inc., attached as Exhibit A to the Declaration of Linda T. Taylor M.D., which is attached hereto as Exhibit A (Storage Agreement p.3 at Part II ¶ 3(d)) (emphasis added). Each Storage Agreement has substantially similar language.

16.     Each Intervenor has signed a Storage Agreement substantially similar in all material respects pertinent hereto to the Storage Agreement attached in Exhibit A.

17.     Each Intervenor has paid thousands of dollars to first obtain the Stem Cells and then to cryopreserve and store the Stem Cells for future release at the request of such Intervenor.

18.     Intervenors intend to use the Stem Cells for private, autologous use and lawful purposes only, when and where such lawful use is or may become available.

19.     Intervenors have used their Stem Cells for treatment of debilitating and life threatening diseases and medical conditions.  In some cases, Intervenors have no other form of effective treatment for such diseases and medical conditions.

20.     The Stems Cells cannot be replaced by stems cells of the same quality.

21.     Scientific evidence indicates that stem cells that are cryopreserved and banked, like Intervenors' Stem Cells, maintain the quality and age of the individual they were extracted from at the time when such stem cells were extracted and stored.  Because human stem cells degrade as

Case 0:18-cv-61047-UU   Document 215-4   Entered on FLSD Docket 07/15/2019   Page 7 of 26

a person ages, Intervenors have no way of replicating their stored Stem Cells, which have been extracted and cryopreserved when each Intervenor, and such Intevenor's Stem Cells, was younger.

22.     Because the Stem Cells in the Tissue Bank are of a higher quality than any stem cells which could be extracted from the Intervenors currently or in the future, the Stem Cells are irreplaceable.

23.     The Stem Cells may be lawfully used in the US for non-therapeutic purposes.

24.     As research and investigation into stem cell treatments (including adipose-derived stem cell treatments) rapidly advance, it is possible that Intervenors' Stem Cells may soon be lawfully used under federal law for therapeutic use (if not already subject to lawful therapeutic use).

25.     The law regarding stem cells is evolving within the United States.  For example, the State of Texas has adopted "Charlie's Law," 2017 Tex. HB 810, 2017 Tex. Gen. Laws 697, which may permit the Stem Cells to be used by the Intervenors within the State of Texas commencing September 1, 2019.

26.     The Trickett Wendler, Frank Mongiello, Jordan McLinn, and Matthew Bellina Right to Try Act, or Right to Try Act of 2017, 21 U.S.C.S. § 360bbb-0a was signed into law May 30, 2018.  This law allows patients who have been diagnosed with life-threatening diseases or conditions who have tried all approved treatment options and who are unable to participate in a clinical trial to access certain unapproved and non-licensed investigational drugs for which a Phase 1 clinical trial has been completed. *See* https://www.fda.gov/patients/learn-about-expanded-access-and-other-treatment-options/right-try.  The State of Florida has enacted a similar "Right to Try" statute.  Fla. Stat. § 499.0295. At least forty other states have also enacted such right to try legislation.

27.     Sometimes called "compassionate use", the FDA's expanded access platform is an additional potential pathway for a patient with an immediately life-threatening condition or serious disease or condition to gain access to an investigational medical product (drug, biologic, or medical device) for treatment outside of clinical trials when no comparable or satisfactory alternative therapy options are available. *See* https://www.fda.gov/news-events/public-health-focus/expanded-access.

28.     Upon information and belief, the Stem Cells may be lawfully used for therapeutic purposes in jurisdictions outside the United States and may be lawfully exported to such jurisdictions pursuant to Section 21 USCS § 382.

29.     Unbeknownst to Intervenors until after issuance of the Injunction Order, the United States of America (the "United States") filed this action against the US Stem Defendants in May of 2018, alleging that US Stem Cell Clinic, LLC (the "Clinic" or "USSCC") manufactures a product containing what is referred to as "stromal vascular fraction" (the "SVF product") from a patient's adipose (fat) tissue and then administers the SVF product to the same patient from whom the adipose tissue was removed (hereinafter referred to as the "Extract-Manufacture-Treat Process"). The Court found this SVF Product, produced by USSCC, constituted a drug and held that it was adulterated within the meaning of 21 USC § 351(A)(2)(b) and misbranded within the meaning of 21 USC § 352(f)(1).

30.     The Complaint does not make any allegations of unapproved actions taken by US Stem with respect to the Tissue Bank (as opposed to the Clinic) operated by USSCC's parent US Stem. [*See generally,* D.E. 1 and D.E. 42-1] In particular, there has been no allegation in this case that the FDA inspected or found malfeasance at the Tissue Bank.

31.     On or after June 28, 2019, the Intervenors were notified of the Injunction Order for the first time by US Stem and that their Stem Cells were slated for destruction by US Stem pursuant to the Injunction Order.

32.     Intervenors were not named parties to this action prior to the issuance of the Injunction Order.

33.     Intervenors received no notice that the United States sought the destruction of their Stem Cells in this action prior to issuance of the Injunction Order.

34.     Intervenors have been afforded no opportunity to be heard before the issuance of the Injunction Order requiring the destruction of their property.

35.     The Injunction Order provides Intervenors with no compensation for the Court ordered destruction of their property.

## COUNT I

### DECLARATORY JUDGMENT – VIOLATION OF DUE PROCESS

36.     Intervenors reallege paragraphs 1 through 35 above and incorporates them herein.

37.     The Stem Cells stored at the Tissue Bank are the sole property of such Intervenor from whom it was extracted.

38.     The Intervenors did not receive notice of this action prior to entry of the Injunction Order.

39.     The Intervenors did not have an opportunity to be heard in this action prior to entry of the Injunction Order.

40.     The Intervenors take the position that the provisions of the Injunction Order directing destruction of their Stem Cells would constitute a deprivation of property by the United States without due process of law in violation of the Fifth Amendment to the United States Constitution.

41.     Upon information and belief, the United States of America disagrees.

42.     Intervenors are in doubt about their rights under the Injunction Order and the Fifth Amendment to the United States Constitution.

43.     Intervenors are entitled to a judgment declaring that each Intervenor's Stem Cells are the sole property of such Intervenor and that destruction of SVF Product owned by non-Defendant third-parties and stored at the Tissue Bank pursuant to the Injunction Order violates the Intervenor's rights to due process of law in violation of the Fifth Amendment to the United States Constitution.

WHEREFORE, Intervenors respectfully request that this Court (i) declare Paragraph 10 of the Injunction Order void as to the third-party owned stem cells, including Stem Cells owned by Intervenors, stored at the Tissue Bank, (ii) modify and/or clarify the Injunction Order to prevent destruction of the third-party owned SVF Product and stem cells, including Stem Cells owned by the Intervenors, stored at the Tissue Bank, and (iii) enter such further relief as is just and proper.

**COUNT II**

**DECLARATORY JUDGMENT – TAKING OF PROPERTY**

44.     Intervenors reallege paragraphs 1 through 35 above and incorporates them herein.

45.     The Stem Cells stored at the Tissue Bank are the sole property of the Intervenors.

46.     The Intervenors did not receive notice of this action prior to entry of the Injunction Order.

47.     The Intervenors did not have an opportunity to be heard in this action prior to entry of the Injunction Order.

48.     The Intervenors take the position that the provisions of the Injunction Order directing destruction of their Stem Cells would constitute a regulatory taking of property by the

9

United States without adequate compensation in violation of the Fifth Amendment to the United States Constitution.

49.     Upon information and belief, the United States of America disagrees.

50.     Intervenors are in doubt about their rights under the Injunction Order and the Fifth Amendment to the United States Constitution.

51.     Intervenors are entitled to a judgment declaring that destruction of SVF Product owned by non-Defendant third-parties and stored at the Tissue Bank pursuant to the Injunction Order would constitute a regulatory taking without just compensation in violation of Intervenors' rights under the Fifth Amendment to the United States Constitution.

WHEREFORE, Intervenors respectfully request that this Court (i) declare Paragraph 10 of the Injunction Order void as to the third-party owned stem cells, including Stem Cells owned by Intervenors, stored at the Tissue Bank, (ii) modify and/or clarify the Injunction Order to prevent destruction of the third-party owned SVF Product and stem cells, including Stem Cells owned by the Intervenors, stored at the Tissue Bank, (iii) require that any destruction of the SVF Product of third-parties, including the Stem Cells of the Intervenors, would constitute a regulatory taking necessitating just compensation and determine the amount of such compensation, and (iv) enter such further relief as is just and proper.

### COUNT III
### DECLARATORY JUDGMENT –
### INTERVENORS' STEM CELLS NOT WITHIN SCOPE OF INJUNCTION

52.     Intervenors reallege paragraphs 1 through 35 above and incorporates them herein.

53.     The United States of America and US Stem have taken the position that Intervenors' Stem Cells stored at the Tissue Bank are included in the Court's definition of "SVF Product" pursuant to paragraph 3.F of the Injunction Order. [D.E. 83 ¶ 3.F]

54.    The United States of America has interpreted paragraph 10 of the Injunction Order to require the destruction of Intervenors' Stem Cells as "SVF Product that is in Defendants' possession, custody, or control." [D.E. 83 ¶ 10]

55.    US Stem believes that paragraph 10 of the Injunction Order may require the destruction of Intervenors' Stem Cells as "SVF Product that is in Defendants' possession, custody, or control." [D.E. 83 ¶ 10]

56.    The Intervenors seek declaratory judgment from this Court that stem cells owned by non-Defendant third-parties and stored at the Tissue Bank are excluded from the Court's definition of "SVF Product" in paragraph 3.F of the Injunction Order, and that Intervenors' Stem Cells are therefore not subject to destruction pursuant to paragraph 10 of the Injunction Order or otherwise affected by the Injunction Order.

57.    Intervenors are in doubt about their rights under the Injunction Order.

WHEREFORE, Intervenors demand judgment declaring that their Stem Cells do not fall under the definition of "SVF Product" for the purposes of the Injunction Order and should not be destroyed pursuant to the Injunction Order and are otherwise unaffected by the Injunction Order.

Dated this __ day of July, 2019.

**GIVNER LAW GROUP, LLP**

*Attorneys for Intervenors*
19495 Biscayne Boulevard
Suite 702
Aventura, FL  33180
Telephone: 305-933-9970
Facsimile: 786-520-2704


By: _____

    J. Joseph Givner
    Florida Bar No.: 850705
    E-mail: jgivner@givner.law
    Esther S. Meisels
    Florida Bar No.:0037142
    E-mail: emeisels@givner.law

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July ____, 2019, a true and correct copy of the foregoing Intervenors' Complaint-In-Intervention was filed with the Clerk of the Court via CM/ECF and the CM/ECF system will send a notice of electronic filing to all counsel and parties of record listed on the Service List Below.


_____

J. Joseph Givner

## SERVICE LIST

| | |
|---|---|
| **Michael S. Blume**<br>Venable LLP<br>Rockefeller Center<br>1270 Avenue of the Americas, 24th Floor<br>New York, NY<br>212-503-0699<br>msblume@venable.com<br>Designation: Retained<br>Assigned: 04/11/2019<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* | Representing:<br><br>**US Stem Cell Clinic, LLC**<br>(Defendant)<br><br>**US Stem Cell Clinic, Inc.**<br>(Defendant)<br><br>**Kristin C. Comella**<br>(Defendant) |
| **Loren Harley Cohen**<br>Mitrani, Rynor, Adamsky & Toland, P.A<br>301 Arthur Godfrey Road<br>Penthouse<br>Miami Beach, FL 33140<br>305-358-0050<br>358-0550(fax)<br>lcohen@mitrani.com<br>Assigned: 07/16/2018<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* | Representing:<br><br>**US Stem Cell Clinic, LLC**<br>(Defendant)<br><br>**US Stem Cell Clinic, Inc.**<br>(Defendant)<br><br>**Kristin C. Comella**<br>(Defendant)<br><br>**Theodore Gradel**<br>(Defendant) |
| **Stephen R. Freeland**<br>Venable LLP<br>600 Massachusetts Avenue, NW<br>Washington, DC 20001<br>202-344-4837<br>srfreeland@venable.com<br>Designation: Retained<br>Assigned: 05/22/2018<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* | Representing:<br><br>**US Stem Cell Clinic, LLC**<br>(Defendant)<br><br>**US Stem Cell Clinic, Inc.**<br>(Defendant)<br><br>**Kristin C. Comella**<br>(Defendant)<br><br>**Theodore Gradel**<br>(Defendant) |
| **Mary M. Gardner**<br>Venable LLP<br>600 Massachusetts Avenue, NW<br>Washington, DC 20001<br>202-344-4398<br>mmgardner@venable.com<br>Designation: Retained | Representing:<br><br>**US Stem Cell Clinic, LLC**<br>(Defendant)<br><br>**US Stem Cell Clinic, Inc.**<br>(Defendant) |

| | |
|---|---|
| Assigned: 05/22/2018<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* | **Kristin C. Comella**<br>(Defendant)<br><br>**Theodore Gradel**<br>(Defendant) |
| **Roger J. Gural**<br>United States Department of Justice<br>Civil Division, Office of Consumer Litigation<br>450 5th Street, NW<br>Washington, DC 20001<br>202-307-0174<br>202-514-8742 (fax)<br>Reger.gural@usdoj.gov<br>Designation: Retained<br>Assigned: 05/09/2018<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* | Representing<br><br>**United States of America**<br>(Plaintiff) |
| **Todd H. Halpern**<br>Venable LLP<br>600 Massachusetts Avenue, NW<br>Washington, DC 20001<br>202-344-4152<br>thhalpern@venable.com<br>Designation: Retained<br>Assigned: 05/22/2018<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* | Representing:<br><br>**US Stem Cell Clinic, LLC**<br>(Defendant)<br><br>**US Stem Cell Clinic, Inc.**<br>(Defendant)<br><br>**Kristin C. Comella**<br>(Defendant)<br><br>**Theodore Gradel**<br>(Defendant) |
| **Todd H. Harrison**<br>Venable LLP<br>600 Massachusetts Avenue, NW<br>Washington, DC 20001<br>202-344-4152<br>thharrison@venable.com<br>Designation: Retained<br>Assigned: 05/22/2018<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* | Representing:<br><br>**US Stem Cell Clinic, LLC**<br>(Defendant)<br><br>**US Stem Cell Clinic, Inc.**<br>(Defendant)<br><br>**Kristin C. Comella**<br>(Defendant)<br><br>**Theodore Gradel**<br>(Defendant) |
| **Isaac Jaime Mitrani**<br>Mitrani, Rynor Adamsky & Toland, P.A. | Representing: |

15

| | |
|---|---|
| 301 Arthur Godfrey Road<br>Penthouse<br>Miami Beach, FL 33140<br>(305) 358-0050<br>(305) 358-0050 (fax)<br>imitrani@mitrani.com<br>Assigned: 05/16/2018<br>*ATTORNEY TO BE NOTICED* | **US Stem Cell Clinic, LLC**<br>(Defendant)<br><br>**US Stem Cell Clinic, Inc.**<br>(Defendant)<br><br>**Kristin C. Comella**<br>(Defendant)<br><br>**Theodore Gradel**<br>(Defendant) |
| **James Alan Weinkle**<br>United States Attorney's Office<br>99 N.E. 4th Street<br>Suite 300<br>Miami, FL 33132<br>(305) 961-9290<br>(305) 530-7139 (fax)<br>James.weinkle@usdoj.gov<br>Designation: Retained<br>Assigned: 05/10/2018<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* | Representing<br><br>**United States of America**<br>(Plaintiff) |

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO.: 18-61047-CIV-UNGARO/O'SULLIVAN

UNITED STATES OF AMERICA,
Plaintiff,
v.

US STEM CELL CLINIC, LLC, a Florida
limited liability company,
US STEM CELL, INC., a Florida profit
corporation, and
KRISTIN C. COMELLA, individual,
Defendants.

_____/

## DECLARATION OF Linda T. Taylor M.D.

I, Linda T. Taylor M.D., hereby make this declaration pursuant to and in accordance with

28 U.S.C. § 1746:

1.      I am a resident of Jackson, Wyoming USA, over eighteen years of age.  I have

personal knowledge of the matters set forth herein.

2.      I have banked my stem cells (the "Stem Cells") for storage at a tissue bank operated

by US Stem Cell, Inc., pursuant to a Stem Cell Processing and Storage Agreement (the "Storage

Agreement").  A copy of my Storage Agreement is attached as Exhibit A to this Declaration.

3.      The Storage Agreement expressly provides that the Stem Cells stored pursuant to

the Storage Agreement are and shall remain my sole property.

4.      I received no notice that my Stem Cells were at issue or subject to destruction in

this action until June 28, 2019 (the "Notification Date").  On that date, I was notified by U.S. Stem

Cell, Inc. that this Court ordered the destruction of my Stem Cells being banked with U.S. Stem Cell, Inc.

5.    Prior to the notification date, I did not see any press coverage of this action or otherwise knew of the pendency of this action.

**I declare under a penalty of perjury that the foregoing is true and correct.**

Executed on this 14th day of July, 2019.

Linda T. Taylor M.D.

**STEM CELL PROCESSING AND STORAGE AGREEMENT**                    EXHIBIT A

This Stem Cell Processing and Storage Agreement (this "**Agreement**") is between ("**you**" or the "**Patient**") and U.S. Stem Cell, Inc., a Florida corporation ("**Bank**") and is entered into this day of , 2018 (the "**Enrollment Date**") for the testing, processing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of your adipose (fat), muscle and/or bone marrow tissue that is collected by your physician (the "**Tissue**"), for the purpose of extracting and storing the stem cells contained in the Tissue, on the terms set forth in this Agreement. This Agreement legally binds Bank and the Patient.

# Part I

## INFORMED CONSENT

By signing below, you acknowledge that you have the legal and mental capacity to sign this document and that you have given your informed consent to your physician to undergo liposuction or another surgical procedure, and that you also have given your consent to the collection of your Tissue by your physician during such procedure. You further acknowledge that your consent includes, but is not limited to: the performance of such procedures as may be necessary or appropriate to transport, test, process and expand the Tissue after removal by your physician, as well as the extraction of the stem cells, if any, that may be present in the Tissue, followed by the cryopreservation of the stem cells. You also acknowledge that you consent to the terms and conditions relating to the transportation, testing, processing, expansion, cryopreservation, storage, withdrawal, transfer, donation, shipping and/or other use of the Tissue, by or on behalf of Bank, that are set forth in this Agreement.

**1. Risks Involved in Storage and Use.** You understand that the cryopreservation of stem cells from the Tissue is a relatively new procedure, and that there are laboratory tests and other studies that have indicated that it is a successful method of preserving stem cells. You understand that the transplantation of stem cells is a relatively new procedure that may offer possible future benefits to you in treating diseases. You also understand that there are no assurances, warranties or guarantees that any such benefits will be obtained.

**2. Collection Risks and Consent**. You have been fully informed about the procedure for collecting the Tissue and hereby authorize and direct your physician, his/her employees and/or contracted health care provider(s) to collect your Tissue during your scheduled procedure, for packaging, transport and delivery to Bank, using a banking kit ("**Banking Kit**") provided to your physician by Bank. You understand that although the collection of the Tissue is a relatively simple procedure, complications may occur during the procedure that could preclude the collection of the Tissue. You acknowledge that you have been fully informed of, accept and agree to the conditions, risks, limitations and costs of collecting, processing, testing and storing of your Tissue, which include, without limitation, the following:

- a risk of contamination when collecting the Tissue;

- there is no guarantee or assurance of the success of the collection procedure;

- the Tissue collected may be insufficient for stem cell extraction or any other purpose;

  - there may be complications that will make it impossible or problematic to collect the Tissue, and your physician may properly refuse to collect the Tissue; and

  - the Tissue that is collected may not be acceptable for any medical use as determined by your physician at the time of collection, or by Bank upon receipt of the Tissue.

Therefore, you agree that your physician may determine in the exercise of his/her professional medical judgment, whether or not to proceed with collecting the Tissue during the procedure, and that the determination of your physician shall be final and binding on you. Nonetheless, being cognizant of the foregoing conditions, risks and limitations, you hereby consent to allow your physician to collect the Tissue and to furnish it to Bank for testing, processing, cryopreserving, storing, and servicing.

**3. Disclosure of Health Information**: Bank will use reasonable procedures to safeguard the confidentiality of health information that you provide to Bank concerning your health. You hereby consent to the use of your confidential health information, including the Tissue testing results, by

of its obligations under this Agreement or as otherwise may be permitted or required by applicable laws or regulations.

**4. Release from Liability.** You hereby for yourself, your agents, attorneys, successors-in- interest, affiliates, representatives, heirs and assigns, irrevocably and unconditionally release and discharge Bank and its shareholders, directors, officers, employees, agents, representatives, affiliates, and/or their respective legal representatives, estates, successors and assigns, from and against any and all claims, causes of action, liabilities, damages, costs, and expenses, known and unknown, that you, or your heirs, assigns, or representatives may incur, resulting from or relating to the processing (after collection by your physician), testing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of the Tissue pursuant to this Agreement. Without limiting the foregoing, you further acknowledge that Bank is not responsible in any way for the actions of others including your physician, medical facility, staff of the medical facility, laboratory staff, and transporters of the Tissue. You understand that by agreeing to this Release from Liability you are giving up rights that you might otherwise have now or in the future to seek money damages or other remedies or relief from Bank, its affiliates, its agents or managers, and other persons and entities referenced in this Release from Liability.

# Part II

## PATIENT SERVICE AGREEMENT TERMS AND CONDITIONS

### 1. Testing, Processing, Expanding, Freezing and Storing the Tissue

Upon receipt of the Tissue, Bank will test and process the Tissue, and will extract, expand, cryopreserve and store the stem cells contained in the Tissue. Bank will perform a visual inspection and conduct a viability test to determine the suitability of the Tissue for stem cell extraction, expansion, cryopreservation and storage. Stem cell extraction, expansion, cryopreservation and storage are collectively referred to as the "**Tissue Banking Services**". If the Tissue is deemed acceptable by Bank, Bank will process the Tissue, extract the stem cells, expand the stem cells, and/or store the stem cells in a cryogenic cellular storage unit until the termination of this Agreement in accordance with the terms set forth herein. Bank's obligations are expressly limited to the services described in this Agreement.

### 2. Patient Representations and Warranties. You represent and warrant that:

(a) You are of legal age;

 (b) You have carefully read and understand all of the terms of this Agreement;

(c) Your decision to have the Tissue collected, processed, expanded and stored is a completely voluntary act;

(d) You have had the opportunity to discuss this Agreement with a competent medical professional, who is not an employee of Bank; and

(e) You understand the risks related to collection, expansion, storage and the possible future use of the Tissue.

### 3. Use and Ownership of Tissue.

(a) Patient acknowledges and agrees that the Tissue and the stem cells derived therefrom are for "**Autologous Use.**" Autologous Use means that the stem cells derived from the Tissue may only be implanted, transplanted, infused or transferred back into the individual from whom the Tissue was collected. Accordingly, the Tissue and the stem cells derived therefrom shall only be used for implantation, transplantation, infusion or transfer back into Patient, exclusively.

(b) Bank will receive and retain possession of the Tissue and the stem cells derived therefrom in accordance with the terms of this Agreement, until this Agreement is terminated in accordance with **Section 6** hereof.

(c) Upon termination of this Agreement, Bank will dispose of the Tissue and/or the stem cells derived therefrom, in the manner set forth in **Section 7** hereof.

(d) Notwithstanding Bank's possession of the Tissue and the stem cells derived therefrom, Patient is and shall remain the owner of the Tissue and the stem cells derived therefrom, until the release or disposition of

two (2) weeks' advance written notice to Bank. The request must be made on a request form provided by Bank (a "Retrieval Request Form"), must be signed by the Patient, must include the name and address of the recipient to whom the stem cells are to be delivered and the date delivery is requested. The transfer or disposal of the stem cells will be performed in accordance with Bank's standard operating procedures in effect at the time of the request. Patient is required to pay all administrative, handling, transportation and delivery charges for the release and transfer of the stem cells prior to shipment thereof, and Bank shall not be required to release, prepare, ship or dispose of the stem cells unless and until any and all payments required to be made under this Agreement have been paid in full.

**5. Fees.** Patient agrees to pay the fees (the "**Fees**") set forth below for the services selected by Patient. Fees must be paid by the due dates. Any taxes that may be due on the Fees are the responsibility of Patient, and the Fees are expressed exclusive of taxes. Bank reserves the right, in its discretion, to make adjustments from time to time to the Initial Fee, Annual Fee, and the Retrieval Fee (as defined below). Bank will notify Patient in writing of any such change in the Fees. If Patient fails to pay the Fees when due, Patient's account may be forwarded to a collection agency for further action. Patient consents to receive autodialed and/or pre-recorded calls from or on behalf of Bank for account collection purposes at the landline and/or mobile telephone numbers provided to Bank. If Patient fails to pay any Fee when due or otherwise fails to comply with the terms and conditions of this Agreement, Bank shall not be obligated to provide, or continue to provide, the Tissue Banking Services or any other services hereunder. The Fees for the Tissue Banking Services and other services provided by Bank are as follows:

(a) An initial fee for the Tissue Banking Services including one year of storage of the stem cells ("**Initial Fee**"), payable in full in advance of the receipt of the Tissue by Bank;

(b) An annual fee for the storage of the stem cells during each year, or portion of a year, after the end of the first year of the term of this Agreement ("**Annual Fee**"), in the amount of $250.00 per year, payable in full before each anniversary of the Enrollment Date; and

(c) A fee for the retrieval and transfer of a single dose of stem cells ("**Retrieval Fee**"), in the amount of $500.00 for each transfer of a single dose of stem cells.

**6. Term and Termination.** The term of this Agreement shall commence on the Enrollment Date, and shall continue until terminated as follows:

(a) Termination by Bank. This Agreement may be terminated by Bank at any time by giving Patient sixty (60) days' advance written notice. In the event this Agreement is terminated by Bank pursuant to this **Section 6(a)** prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Bank shall refund to Patient the pro-rata portion of the Annual Fee for the unused portion of the year after the date of termination, and Patient shall be entitled to retrieve the stem cells by submitting a Retrieval Request Form to Bank prior to the expiration of the sixty (60) day notice period.

(b) Termination by Patient. This Agreement may be terminated by Patient at any time by delivering a written notice of termination to Bank. In the event this Agreement is terminated by Patient pursuant to this **Section 6(b)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(c) Termination upon Death of Patient. This Agreement will terminate immediately upon the death of Patient. If such termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient's estate or heirs shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

(d) Termination due to a Force Majeure Event. This Agreement may be terminated by Bank upon the loss, deterioration or destruction of all or any part of the Tissue and/or the stem cells derived from the Tissue of Patient, from causes or circumstances beyond Bank's reasonable control, including, without limitation, fires, explosions or power outages, natural disasters, disruption of utilities or public services, strikes or labor shortages, terrorist acts or acts of war, acts of governments, or any law, proclamation, ordinance, demand, or requirement of any government agency. In the event this Agreement is terminated by Bank pursuant to this **Section 6(d)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(e) Termination for Non-Payment of Fees. Bank may terminate this Agreement in the event Patient fails to pay when due any Fee payable hereunder. If this Agreement is terminated for
non-payment, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

or provisions of this Agreement could be deemed to be in violation or contravention of applicable law or regulations, or Bank's ability to be compensated for its services will be materially and adversely affected by such changes or clarifications, then this Agreement may be modified or amended to bring the affected provisions or terms into compliance with such change. If it is not possible to comply with such changes by amending or modifying this Agreement, then Bank shall have the right to terminate this Agreement, and the Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(g) Automatic Termination. If not otherwise terminated pursuant to **Section 6(a)** through **Section 6(f)** above, this Agreement will automatically terminate at such time as no Tissue and/or stem cells derived from Tissue collected from Patient, remains in the possession of Bank, whether due to the prior retrieval, transfer, or permitted disposal of the Tissue and/or the stem cells derived from the Tissue of Patient. If the automatic termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

**7. Disposal of Tissue and/or Stem Cells.** Bank will be entitled to dispose of the Tissue and/or the stem cells derived from the Tissue in accordance with standard clinical practices and without further notice to the Patient, as follows: (a) upon termination of this Agreement for any reason; and (b) whenever there is excess material remaining following the completion of processing of the Tissue. Such disposal may consist of disposal as medical waste, donation for academic or research purposes, or any other proper purpose as determined by Bank, in its sole discretion.

**8. Communications.** From time to time, Bank may send notices and updates to Patient via U.S. mail or e-mail, which may include marketing communications. Patient consents to electronic mail correspondence and other communications, including for marketing purposes.

**9. Indemnification.** Patient agrees to indemnify, defend and hold harmless Bank and its affiliates, including without limitation their respective shareholders, directors, officers, employees, agents (including marketing agents) and/or other representatives, from and against any and all claims, liabilities, losses, costs and expenses (including attorney's fees and costs of defense), damages, settlements, and judgments arising out of or related to: (a) the provision of, or failure to provide, services by Bank pursuant to this Agreement; and (b) claims concerning rights in and to the Tissue or the stem cells extracted therefrom, the transportation thereof, and the disposition of same.

**10. No Warranty.** Patient acknowledges that neither Bank nor any of its officers, directors, shareholders, executives, employees, agents (including without limitation marketing agents), representatives, consultants, and/or affiliates has made, nor makes herein, any representations or warranties to Patient, express or implied, of any kind or nature, including, without limiting the generality of the foregoing, any representations or warranties with respect to: (i) suitability of stem cells for future treatment of diseases; (ii) successful treatment of diseases through stem cell transplantation; (iii) advantages of stem cell transplantation over other types of treatment; or (iv) successful preservation of stem cells through cryopreservation. Patient acknowledges and agrees that neither Bank nor any of its shareholders, directors, officers, agents, employees or affiliates have made any representation, guaranty or warranty, express or implied, to Patient.

**11. Limitation of Liability.** PATIENT HEREBY ACKNOWLEDGES AND AGREES THAT BANK HAS NO LIABILITY OF ANY KIND IN RESPECT OF BANK'S PERFORMANCE OR FAILURE TO PERFORM UNDER THIS AGREEMENT EXCEPT TO THE EXTENT ATTRIBUTABLE TO BANK'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. IN NO EVENT SHALL BANK'S LIABILITY EXCEED THE TOTAL AMOUNT PAID BY PATIENT TO BANK UNDER THIS AGREEMENT. BANK SHALL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES (INCLUDING, WITHOUT LIMITATION, DAMAGES IN RESPECT OF BREACH OF CONTRACT, WARRANTY, STRICT LIABILITY OR TORT), WHETHER OR NOT BANK HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE LIMITATIONS SET FORTH IN THIS SECTION SHALL APPLY NOTWITHSTANDING THE FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

**12. Assignment and Delegation.** Bank may assign its rights and delegate its obligations under this Agreement at any time and in its sole discretion, without further consent of Patient. Bank may perform services to be provided by it hereunder through subcontractors, agents or managers pursuant to management

**13. Governing Law, Jurisdiction and Venue; Attorney's Fees.** This Agreement is governed by the laws of the State of Florida without regard to its conflict of laws principles. Any judicial proceedings brought against either Bank or Patient under this Agreement will be brought in a court in Miami-Dade County, Florida. Bank and Patient consent to the exclusive jurisdiction of the aforesaid courts and waive any objection to venue therein and irrevocably agree to be bound by any judgment rendered thereby. The prevailing party in any such proceedings will be entitled to an award of its reasonable attorney's fees, paralegal fees, costs and expenses incurred in such proceedings.

**14. Entire Agreement.** This Agreement constitutes the entire Agreement between the parties and supersedes all previous agreements or representations by Bank or Patient, oral or written, relating to the subject matter of this Agreement.

**15. Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

**16. Survival.** All provisions which by their terms require performance after the termination of this Agreement will survive the termination of this Agreement.

**17. Headings.** The headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**18. Notices.** Any notice to be given hereunder by either party to the other shall be in English and in writing, and shall be hand delivered or sent by overnight courier or registered, express mail to the addresses listed on the enrollment documents (or any updated address provided by Patient in writing to Bank or by Bank in writing to Patient, and shall be deemed to be effective two (2) business days after dispatch).

1.

**Amendment.** Except as set forth herein, this Agreement may only be modified or amended by a writing signed by each party and shall be binding on Patient and Bank and their heirs, personal representatives, successors and permitted assigns.

By signing below, you confirm that you have read and fully understand the terms and conditions of this Agreement, including both Part I: Informed Consent and Part II: Patient Service Agreement Terms and Conditions.

**Patient's Signature** *(Only Last Page)*                    **Patient's Initials & Date**



Signed 03/05/2019



## RELEASE LETTER FOR USE OF CELLS

To: US Stem Cell, Inc.

I, Linda Taylor agree that this form is to request my cells. These cells are from my bodily tissue and I therefore own them.

Signed 03/05/2019
Patient Signature & Date