### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### FT. LAUDERDALE DIVISION

Case No.: 0 18-cv-61047 (UU)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

US STEM CELL CLINIC, LLC, a Florida
Profit corporation, and KRISTIN C.
COMELLA and THEODORE GRADEL,
individuals,

        Defendants.

_____

### DECLARATION OF VIRGINIA POROWSKI

I, Virginia Porowski, hereby make this declaration pursuant to and in accordance with 28

U.S.C. § 1746:

1) I am a resident of 720 Old Dairy Drive, Wake Forest, North Carolina, 27587 and am over eighteen years of age. I have personal knowledge of the matters set forth herein.

2) I have banked my stem cells (the "Stem Cells") for a storage at a tissue bank operated by US Stem Cell, Inc., pursuant to a Stem Cell Processing and Storage Agreement (the "Storage Agreement"). A copy of my Storage Agreement, together with a Certificate that I obtained from US Stem Cells in connection with the banking of my cells are attached as Exhibit A to this Declaration.

3) The Storage Agreement expressly provides that the Stem Cells stored pursuant to the Storage Agreement are and shall remain my property.

4) I received no notice that my stem cells were in jeopardy or were the subject of an order calling for their destruction, until June 28, 2019 when I was notified by US Stem Cells directly.

5)  Prior to the notification I received from US Stem Cell on June 28, 2019, I did not see any press coverage of this action or otherwise knew of the pendency of the action.

I declare under a penalty of perjury that the foregoing is true and correct.

Executed this 16th day of July, 2019

_Virginia Porowski_
Virginia Porowski

Congratulations your sample has been received!



# U.S.STEMCELL

## Stem Cell Banking

**This Certificate is for:**

*Virginia Parowski*

Patient ID:

Please contact banking@us-stemcell.com
to receive any information about your cells

**Thank you for choosing U.S. Stem Cell, Inc.**

October 27th, 2018

JULIETA RADICHE
OPERATIONS AND LAB MANAGER

KRISTIN COMELLA
CHIEF SCIENCE OFFICER

13794 NW 4th Street, Suite 212 ● Sunrise, Florida 33325
Phone: 954.835.1500 ● Fax: 954.845.9976
www.us-stemcell.com

## STEM CELL PROCESSING AND STORAGE AGREEMENT

This Stem Cell Processing and Storage Agreement (this "**Agreement**") is between
("**you**" or the "**Patient**") and U.S. Stem Cell, Inc., a Florida corporation ("**Bank**") and is entered into this day of,
2018 (the "**Enrollment Date**") for the testing, processing, expanding, freezing, storing, withdrawing, transferring,
donating, shipping, transporting and/or other use of your adipose (fat), muscle and/or bone marrow tissue that is
collected by your physician (the "**Tissue**"), for the purpose of extracting and storing the stem cells contained in
the Tissue, on the terms set forth in this Agreement. This Agreement legally binds Bank and the Patient.

# Part I
## INFORMED CONSENT

By signing below, you acknowledge that you have the legal and mental capacity to sign this document and that you
have given your informed consent to your physician to undergo liposuction or another surgical procedure, and that
you also have given your consent to the collection of your Tissue by your physician during such procedure. You
further acknowledge that your consent includes, but is not limited to: the performance of such procedures as may
be necessary or appropriate to transport, test, process and expand the Tissue after removal by your physician, as
well as the extraction of the stem cells, if any, that may be present in the Tissue, followed by the cryopreservation
of the stem cells. You also acknowledge that you consent to the terms and conditions relating to the transportation,
testing, processing, expansion, cryopreservation, storage, withdrawal, transfer, donation, shipping and/or other
use of the Tissue, by or on behalf of Bank, that are set forth in this Agreement.

**1. Risks Involved in Storage and Use.** You understand that the cryopreservation of stem cells from the
Tissue is a relatively new procedure, and that there are laboratory tests and other studies that have
indicated that it is a successful method of preserving stem cells. You understand that the transplantation
of stem cells is a relatively new procedure that may offer possible future benefits to you in treating
diseases. You also understand that there are no assurances, warranties or guarantees that any such
benefits will be obtained.

**2. Collection Risks and Consent.** You have been fully informed about the procedure for collecting the
Tissue and hereby authorize and direct your physician, his/her employees and/or contracted health care
provider(s) to collect your Tissue during your scheduled procedure, for packaging, transport and delivery
to Bank, using a banking kit ("**Banking Kit**") provided to your physician by Bank. You understand that
although the collection of the Tissue is a relatively simple procedure, complications may occur during
the procedure that could preclude the collection of the Tissue. You acknowledge that you have been
fully informed of, accept and agree to the conditions, risks, limitations and costs of collecting,
processing, testing and storing of your Tissue, which include, without limitation, the following:

- a risk of contamination when collecting the Tissue;

- there is no guarantee or assurance of the success of the collection procedure;

- the Tissue collected may be insufficient for stem cell extraction or any other purpose;

  - there may be complications that will make it impossible or problematic to collect the
    Tissue, and your physician may properly refuse to collect the Tissue; and

  - the Tissue that is collected may not be acceptable for any medical use as determined
    by your physician at the time of collection, or by Bank upon receipt of the Tissue.

Therefore, you agree that your physician may determine in the exercise of his/her professional medical
judgment, whether or not to proceed with collecting the Tissue during the procedure, and that the
determination of your physician shall be final and binding on you. Nonetheless, being cognizant of the
foregoing conditions, risks and limitations, you hereby consent to allow your physician to collect the
Tissue and to furnish it to Bank for testing, processing, cryopreserving, storing, and servicing.

**3. Disclosure of Health Information**: Bank will use reasonable procedures to safeguard the
confidentiality of health information that you provide to Bank concerning your health. You hereby
consent to the use of your confidential health information, including the Tissue testing results, by
Bank, and acknowledge and agree that Bank may retain and make further use of such confidential
health information for all lawful purposes, as may be reasonably necessary for Bank's performance

of its obligations under this Agreement or as otherwise may be permitted or required by applicable laws or regulations.

**4. Release from Liability.** You hereby for yourself, your agents, attorneys, successors-in- interest, affiliates, representatives, heirs and assigns, irrevocably and unconditionally release and discharge Bank and its shareholders, directors, officers, employees, agents, representatives, affiliates, and/or their respective legal representatives, estates, successors and assigns, from and against any and all claims, causes of action, liabilities, damages, costs, and expenses, known and unknown, that you, or your heirs, assigns, or representatives may incur, resulting from or relating to the processing (after collection by your physician), testing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of the Tissue pursuant to this Agreement. Without limiting the foregoing, you further acknowledge that Bank is not responsible in any way for the actions of others including your physician, medical facility, staff of the medical facility, laboratory staff, and transporters of the Tissue. You understand that by agreeing to this Release from Liability you are giving up rights that you might otherwise have now or in the future to seek money damages or other remedies or relief from Bank, its affiliates, its agents or managers, and other persons and entities referenced in this Release from Liability.

# Part II

## PATIENT SERVICE AGREEMENT TERMS AND CONDITIONS

**1. Testing, Processing, Expanding, Freezing and Storing the Tissue**

Upon receipt of the Tissue, Bank will test and process the Tissue, and will extract, expand, cryopreserve and store the stem cells contained in the Tissue. Bank will perform a visual inspection and conduct a viability test to determine the suitability of the Tissue for stem cell extraction, expansion, cryopreservation and storage. Stem cell extraction, expansion, cryopreservation and storage are collectively referred to as the "**Tissue Banking Services**". If the Tissue is deemed acceptable by Bank, Bank will process the Tissue, extract the stem cells, expand the stem cells, and/or store the stem cells in a cryogenic cellular storage unit until the termination of this Agreement in accordance with the terms set forth herein. Bank's obligations are expressly limited to the services described in this Agreement.

**2. Patient Representations and Warranties**. You represent and warrant that:

(a) You are of legal age;

(b) You have carefully read and understand all of the terms of this Agreement;

(c) Your decision to have the Tissue collected, processed, expanded and stored is a completely voluntary act;

(d) You have had the opportunity to discuss this Agreement with a competent medical professional, who is not an employee of Bank; and

(e) You understand the risks related to collection, expansion, storage and the possible future use of the Tissue.

**3. Use and Ownership of Tissue.**

(a) Patient acknowledges and agrees that the Tissue and the stem cells derived therefrom are for "**Autologous Use.**" Autologous Use means that the stem cells derived from the Tissue may only be implanted, transplanted, infused or transferred back into the individual from whom the Tissue was collected. Accordingly, the Tissue and the stem cells derived therefrom shall only be used for implantation, transplantation, infusion or transfer back into Patient, exclusively.

(b) Bank will receive and retain possession of the Tissue and the stem cells derived therefrom in accordance with the terms of this Agreement, until this Agreement is terminated in accordance with **Section 6** hereof.

(c) Upon termination of this Agreement, Bank will dispose of the Tissue and/or the stem cells derived therefrom, in the manner set forth in **Section 7** hereof.

(d) Notwithstanding Bank's possession of the Tissue and the stem cells derived therefrom, Patient is and shall remain the owner of the Tissue and the stem cells derived therefrom, until the release or disposition of same by Bank.

**4. Requests for Release of Stem Cells**. Commencing three (3) months after the Enrollment Date, Patient may direct Bank to release and transfer the stem cells derived from Patient's Tissue, by providing at least

two (2) weeks' advance written notice to Bank. The request must be made on a request form provided by Bank (a "Retrieval Request Form"), must be signed by the Patient, must include the name and address of the recipient to whom the stem cells are to be delivered and the date delivery is requested. The transfer or disposal of the stem cells will be performed in accordance with Bank's standard operating procedures in effect at the time of the request. Patient is required to pay all administrative, handling, transportation and delivery charges for the release and transfer of the stem cells prior to shipment thereof, and Bank shall not be required to release, prepare, ship or dispose of the stem cells unless and until any and all payments required to be made under this Agreement have been paid in full.

**5. Fees**. Patient agrees to pay the fees (the "**Fees**") set forth below for the services selected by Patient. Fees must be paid by the due dates. Any taxes that may be due on the Fees are the responsibility of Patient, and the Fees are expressed exclusive of taxes. Bank reserves the right, in its discretion, to make adjustments from time to time to the Initial Fee, Annual Fee, and the Retrieval Fee (as defined below). Bank will notify Patient in writing of any such change in the Fees. If Patient fails to pay the Fees when due, Patient's account may be forwarded to a collection agency for further action. Patient consents to receive autodialed and/or pre-recorded calls from or on behalf of Bank for account collection purposes at the landline and/or mobile telephone numbers provided to Bank. If Patient fails to pay any Fee when due or otherwise fails to comply with the terms and conditions of this Agreement, Bank shall not be obligated to provide, or continue to provide, the Tissue Banking Services or any other services hereunder. The Fees for the Tissue Banking Services and other services provided by Bank are as follows:

(a) An initial fee for the Tissue Banking Services including one year of storage of the stem cells ("**Initial Fee**"), payable in full in advance of the receipt of the Tissue by Bank;

(b) An annual fee for the storage of the stem cells during each year, or portion of a year, after the end of the first year of the term of this Agreement ("**Annual Fee**"), in the amount of $250.00 per year, payable in full before each anniversary of the Enrollment Date; and

(c) A fee for the retrieval and transfer of a single dose of stem cells ("**Retrieval Fee**"), in the amount of $500.00 for each transfer of a single dose of stem cells.

**6. Term and Termination.** The term of this Agreement shall commence on the Enrollment Date, and shall continue until terminated as follows:

(a) Termination by Bank. This Agreement may be terminated by Bank at any time by giving Patient sixty (60) days' advance written notice. In the event this Agreement is terminated by Bank pursuant to this **Section 6(a)** prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Bank shall refund to Patient the pro-rata portion of the Annual Fee for the unused portion of the year after the date of termination, and Patient shall be entitled to retrieve the stem cells by submitting a Retrieval Request Form to Bank prior to the expiration of the sixty (60) day notice period.

(b) Termination by Patient. This Agreement may be terminated by Patient at any time by delivering a written notice of termination to Bank. In the event this Agreement is terminated by Patient pursuant to this **Section 6(b)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(c) Termination upon Death of Patient. This Agreement will terminate immediately upon the death of Patient. If such termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient's estate or heirs shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

(d) Termination due to a Force Majeure Event. This Agreement may be terminated by Bank upon the loss, deterioration or destruction of all or any part of the Tissue and/or the stem cells derived from the Tissue of Patient, from causes or circumstances beyond Bank's reasonable control, including, without limitation, fires, explosions or power outages, natural disasters, disruption of utilities or public services, strikes or labor shortages, terrorist acts or acts of war, acts of governments, or any law, proclamation, ordinance, demand, or requirement of any government agency. In the event this Agreement is terminated by Bank pursuant to this **Section 6(d)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(e) Termination for Non-Payment of Fees. Bank may terminate this Agreement in the event Patient fails to pay when due any Fee payable hereunder. If this Agreement is terminated for
non-payment, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(f) Termination due to Change in Law. In the event there is a change in the laws, regulations, or the policies of a governmental agency with regulatory jurisdiction over the activities of Bank such that any of the terms

or provisions of this Agreement could be deemed to be in violation or contravention of applicable law or regulations, or Bank's ability to be compensated for its services will be materially and adversely affected by such changes or clarifications, then this Agreement may be modified or amended to bring the affected provisions or terms into compliance with such change. If it is not possible to comply with such changes by amending or modifying this Agreement, then Bank shall have the right to terminate this Agreement, and the Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(g) Automatic Termination. If not otherwise terminated pursuant to **Section 6(a)** through **Section 6(f)** above, this Agreement will automatically terminate at such time as no Tissue and/or stem cells derived from Tissue collected from Patient, remains in the possession of Bank, whether due to the prior retrieval, transfer, or permitted disposal of the Tissue and/or the stem cells derived from the Tissue of Patient. If the automatic termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

**7. Disposal of Tissue and/or Stem Cells.** Bank will be entitled to dispose of the Tissue and/or the stem cells derived from the Tissue in accordance with standard clinical practices and without further notice to the Patient, as follows: (a) upon termination of this Agreement for any reason; and (b) whenever there is excess material remaining following the completion of processing of the Tissue. Such disposal may consist of disposal as medical waste, donation for academic or research purposes, or any other proper purpose as determined by Bank, in its sole discretion.

**8. Communications.** From time to time, Bank may send notices and updates to Patient via U.S. mail or e-mail, which may include marketing communications. Patient consents to electronic mail correspondence and other communications, including for marketing purposes.

**9. Indemnification.** Patient agrees to indemnify, defend and hold harmless Bank and its affiliates, including without limitation their respective shareholders, directors, officers, employees, agents (including marketing agents) and/or other representatives, from and against any and all claims, liabilities, losses, costs and expenses (including attorney's fees and costs of defense), damages, settlements, and judgments arising out of or related to: (a) the provision of, or failure to provide, services by Bank pursuant to this Agreement; and (b) claims concerning rights in and to the Tissue or the stem cells extracted therefrom, the transportation thereof, and the disposition of same.

**10. No Warranty.** Patient acknowledges that neither Bank nor any of its officers, directors, shareholders, executives, employees, agents (including without limitation marketing agents), representatives, consultants, and/or affiliates has made, nor makes herein, any representations or warranties to Patient, express or implied, of any kind or nature, including, without limiting the generality of the foregoing, any representations or warranties with respect to: (i) suitability of stem cells for future treatment of diseases; (ii) successful treatment of diseases through stem cell transplantation; (iii) advantages of stem cell transplantation over other types of treatment; or (iv) successful preservation of stem cells through cryopreservation. Patient acknowledges and agrees that neither Bank nor any of its shareholders, directors, officers, agents, employees or affiliates have made any representation, guaranty or warranty, express or implied, to Patient.

**11. Limitation of Liability.** PATIENT HEREBY ACKNOWLEDGES AND AGREES THAT BANK HAS NO LIABILITY OF ANY KIND IN RESPECT OF BANK'S PERFORMANCE OR FAILURE TO PERFORM UNDER THIS AGREEMENT EXCEPT TO THE EXTENT ATTRIBUTABLE TO BANK'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. IN NO EVENT SHALL BANK'S LIABILITY EXCEED THE TOTAL AMOUNT PAID BY PATIENT TO BANK UNDER THIS AGREEMENT. BANK SHALL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES (INCLUDING, WITHOUT LIMITATION, DAMAGES IN RESPECT OF BREACH OF CONTRACT, WARRANTY, STRICT LIABILITY OR TORT), WHETHER OR NOT BANK HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE LIMITATIONS SET FORTH IN THIS SECTION SHALL APPLY NOTWITHSTANDING THE FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

**12. Assignment and Delegation.** Bank may assign its rights and delegate its obligations under this Agreement at any time and in its sole discretion, without further consent of Patient. Bank may perform services to be provided by it hereunder through subcontractors, agents or managers pursuant to management services agreements. This Agreement is not assignable by Patient without the prior written consent of Bank and any attempted assignment in breach of the foregoing restriction shall be void.

**13. Governing Law, Jurisdiction and Venue; Attorney's Fees.** This Agreement is governed by the laws of the State of Florida without regard to its conflict of laws principles. Any judicial proceedings brought against either Bank or Patient under this Agreement will be brought in a court in Miami-Dade County, Florida. Bank and Patient consent to the exclusive jurisdiction of the aforesaid courts and waive any objection to venue therein and irrevocably agree to be bound by any judgment rendered thereby. The prevailing party in any such proceedings will be entitled to an award of its reasonable attorney's fees, paralegal fees, costs and expenses incurred in such proceedings.

**14. Entire Agreement.** This Agreement constitutes the entire Agreement between the parties and supersedes all previous agreements or representations by Bank or Patient, oral or written, relating to the subject matter of this Agreement.

**15. Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

**16. Survival.** All provisions which by their terms require performance after the termination of this Agreement will survive the termination of this Agreement.

**17. Headings.** The headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**18. Notices.** Any notice to be given hereunder by either party to the other shall be in English and in writing, and shall be hand delivered or sent by overnight courier or registered, express mail to the addresses listed on the enrollment documents (or any updated address provided by Patient in writing to Bank or by Bank in writing to Patient, and shall be deemed to be effective two (2) business days after dispatch).

1.

   **Amendment.** Except as set forth herein, this Agreement may only be modified or amended by a writing signed by each party and shall be binding on Patient and Bank and their heirs, personal representatives, successors and permitted assigns.

By signing below, you confirm that you have read and fully understand the terms and conditions of this Agreement, including both Part I: Informed Consent and Part II: Patient Service Agreement Terms and Conditions.

**Patient's Signature** *(Only Last Page)*                    **Patient's Initials & Date**



Signed 10/04/2018



Signed 10/04/2018

Accepted at 10/5/2018 10:10 AM by BRITTANY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION

Case No.: 0 18-cv-61047 (UU)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

US STEM CELL CLINIC, LLC, a Florida
Profit corporation, and KRISTIN C.
COMELLA and THEODORE GRADEL,
individuals,

        Defendants.

_____/


## DECLARATION OF JAMES POROWSKI

    I, James Porowski, hereby make this declaration pursuant to and in accordance with 28

U.S.C. § 1746:

1) I am a resident of 720 Old Dairy Drive, Wake Forest, NC 27587 and am over eighteen years of age. I have personal knowledge of the matters set forth herein.

2) I have banked my stem cells (the "Stem Cells") for a storage at a tissue bank operated by US Stem Cell, Inc., pursuant to a Stem Cell Processing and Storage Agreement (the "Storage Agreement"). A copy of my Storage Agreement, together with a Certificate that I obtained from US Stem Cells in connection with the banking of my cells are attached as Exhibit A to this Declaration.

3) The Storage Agreement expressly provides that the Stem Cells stored pursuant to the Storage Agreement are and shall remain my property.

4) I received no notice that my stem cells were in jeopardy or were the subject of an order calling for their destruction, until June 28, 2019 when I was notified by US Stem Cells directly.

5) Prior to the notification I received from US Stem Cell on June 28, 2019, I did not see any press coverage of this action or otherwise knew of the pendency of the action.

I declare under a penalty of perjury that the foregoing is true and correct.

Executed this 16th day of July, 2019

James Porowski

Congratulations your sample has been received!



# U.S.STEMCELL

## Stem Cell Banking

**This Certificate is for:**

*James Parowski*

Patient ID:

Please contact banking@us-stemcell.com
to receive any information about your cells

Thank you for choosing U.S. Stem Cell, Inc.

October 27th, 2018

JULIETA RADICHE
OPERATIONS AND LAB MANAGER

KRISTIN COMELLA
CHIEF SCIENCE OFFICER

13794 NW 4th Street, Suite 212 • Sunrise, Florida 33325
Phone: 954.835.1500 • Fax: 954.845.9976
www.us-stemcell.com

### STEM CELL PROCESSING AND STORAGE AGREEMENT

This Stem Cell Processing and Storage Agreement (this "**Agreement**") is between ("**you**" or the "**Patient**") and U.S. Stem Cell, Inc., a Florida corporation ("**Bank**") and is entered into this day of., 2018 (the "**Enrollment Date**") for the testing, processing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of your adipose (fat), muscle and/or bone marrow tissue that is collected by your physician (the "**Tissue**"), for the purpose of extracting and storing the stem cells contained in the Tissue, on the terms set forth in this Agreement. This Agreement legally binds Bank and the Patient.

## Part I

### INFORMED CONSENT

By signing below, you acknowledge that you have the legal and mental capacity to sign this document and that you have given your informed consent to your physician to undergo liposuction or another surgical procedure, and that you also have given your consent to the collection of your Tissue by your physician during such procedure. You further acknowledge that your consent includes, but is not limited to: the performance of such procedures as may be necessary or appropriate to transport, test, process and expand the Tissue after removal by your physician, as well as the extraction of the stem cells, if any, that may be present in the Tissue, followed by the cryopreservation of the stem cells. You also acknowledge that you consent to the terms and conditions relating to the transportation, testing, processing, expansion, cryopreservation, storage, withdrawal, transfer, donation, shipping and/or other use of the Tissue, by or on behalf of Bank, that are set forth in this Agreement.

**1. Risks Involved in Storage and Use.** You understand that the cryopreservation of stem cells from the Tissue is a relatively new procedure, and that there are laboratory tests and other studies that have indicated that it is a successful method of preserving stem cells. You understand that the transplantation of stem cells is a relatively new procedure that may offer possible future benefits to you in treating diseases. You also understand that there are no assurances, warranties or guarantees that any such benefits will be obtained.

**2. Collection Risks and Consent.** You have been fully informed about the procedure for collecting the Tissue and hereby authorize and direct your physician, his/her employees and/or contracted health care provider(s) to collect your Tissue during your scheduled procedure, for packaging, transport and delivery to Bank, using a banking kit ("**Banking Kit**") provided to your physician by Bank. You understand that although the collection of the Tissue is a relatively simple procedure, complications may occur during the procedure that could preclude the collection of the Tissue. You acknowledge that you have been fully informed of, accept and agree to the conditions, risks, limitations and costs of collecting, processing, testing and storing of your Tissue, which include, without limitation, the following:

- a risk of contamination when collecting the Tissue;

- there is no guarantee or assurance of the success of the collection procedure;

- the Tissue collected may be insufficient for stem cell extraction or any other purpose;

  - there may be complications that will make it impossible or problematic to collect the Tissue, and your physician may properly refuse to collect the Tissue; and

  - the Tissue that is collected may not be acceptable for any medical use as determined by your physician at the time of collection, or by Bank upon receipt of the Tissue.

Therefore, you agree that your physician may determine in the exercise of his/her professional medical judgment, whether or not to proceed with collecting the Tissue during the procedure, and that the determination of your physician shall be final and binding on you. Nonetheless, being cognizant of the foregoing conditions, risks and limitations, you hereby consent to allow your physician to collect the Tissue and to furnish it to Bank for testing, processing, cryopreserving, storing, and servicing.

**3. Disclosure of Health Information**: Bank will use reasonable procedures to safeguard the confidentiality of health information that you provide to Bank concerning your health. You hereby consent to the use of your confidential health information, including the Tissue testing results, by Bank, and acknowledge and agree that Bank may retain and make further use of such confidential health information for all lawful purposes, as may be reasonably necessary for Bank's performance

of its obligations under this Agreement or as otherwise may be permitted or required by applicable laws or regulations.

**4. Release from Liability.** You hereby for yourself, your agents, attorneys, successors-in- interest, affiliates, representatives, heirs and assigns, irrevocably and unconditionally release and discharge Bank and its shareholders, directors, officers, employees, agents, representatives, affiliates, and/or their respective legal representatives, estates, successors and assigns, from and against any and all claims, causes of action, liabilities, damages, costs, and expenses, known and unknown, that you, or your heirs, assigns, or representatives may incur, resulting from or relating to the processing (after collection by your physician), testing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of the Tissue pursuant to this Agreement. Without limiting the foregoing, you further acknowledge that Bank is not responsible in any way for the actions of others including your physician, medical facility, staff of the medical facility, laboratory staff, and transporters of the Tissue. You understand that by agreeing to this Release from Liability you are giving up rights that you might otherwise have now or in the future to seek money damages or other remedies or relief from Bank, its affiliates, its agents or managers, and other persons and entities referenced in this Release from Liability.

# Part II

## PATIENT SERVICE AGREEMENT TERMS AND CONDITIONS

### 1. Testing, Processing, Expanding, Freezing and Storing the Tissue

Upon receipt of the Tissue, Bank will test and process the Tissue, and will extract, expand, cryopreserve and store the stem cells contained in the Tissue. Bank will perform a visual inspection and conduct a viability test to determine the suitability of the Tissue for stem cell extraction, expansion, cryopreservation and storage. Stem cell extraction, expansion, cryopreservation and storage are collectively referred to as the "**Tissue Banking Services**". If the Tissue is deemed acceptable by Bank, Bank will process the Tissue, extract the stem cells, expand the stem cells, and/or store the stem cells in a cryogenic cellular storage unit until the termination of this Agreement in accordance with the terms set forth herein. Bank's obligations are expressly limited to the services described in this Agreement.

### 2. Patient Representations and Warranties. You represent and warrant that:

(a) You are of legal age;

(b) You have carefully read and understand all of the terms of this Agreement;

(c) Your decision to have the Tissue collected, processed, expanded and stored is a completely voluntary act;

(d) You have had the opportunity to discuss this Agreement with a competent medical professional, who is not an employee of Bank; and

(e) You understand the risks related to collection, expansion, storage and the possible future use of the Tissue.

### 3. Use and Ownership of Tissue.

(a) Patient acknowledges and agrees that the Tissue and the stem cells derived therefrom are for "**Autologous Use**." Autologous Use means that the stem cells derived from the Tissue may only be implanted, transplanted, infused or transferred back into the individual from whom the Tissue was collected. Accordingly, the Tissue and the stem cells derived therefrom shall only be used for implantation, transplantation, infusion or transfer back into Patient, exclusively.

(b) Bank will receive and retain possession of the Tissue and the stem cells derived therefrom in accordance with the terms of this Agreement, until this Agreement is terminated in accordance with **Section 6** hereof.

(c) Upon termination of this Agreement, Bank will dispose of the Tissue and/or the stem cells derived therefrom, in the manner set forth in **Section 7** hereof.

(d) Notwithstanding Bank's possession of the Tissue and the stem cells derived therefrom, Patient is and shall remain the owner of the Tissue and the stem cells derived therefrom, until the release or disposition of same by Bank.

**4. Requests for Release of Stem Cells.** Commencing three (3) months after the Enrollment Date, Patient may direct Bank to release and transfer the stem cells derived from Patient's Tissue, by providing at least

two (2) weeks' advance written notice to Bank. The request must be made on a request form provided by Bank (a "Retrieval Request Form"), must be signed by the Patient, must include the name and address of the recipient to whom the stem cells are to be delivered and the date delivery is requested. The transfer or disposal of the stem cells will be performed in accordance with Bank's standard operating procedures in effect at the time of the request. Patient is required to pay all administrative, handling, transportation and delivery charges for the release and transfer of the stem cells prior to shipment thereof, and Bank shall not be required to release, prepare, ship or dispose of the stem cells unless and until any and all payments required to be made under this Agreement have been paid in full.

**5. Fees.** Patient agrees to pay the fees (the **"Fees"**) set forth below for the services selected by Patient. Fees must be paid by the due dates. Any taxes that may be due on the Fees are the responsibility of Patient, and the Fees are expressed exclusive of taxes. Bank reserves the right, in its discretion, to make adjustments from time to time to the Initial Fee, Annual Fee, and the Retrieval Fee (as defined below). Bank will notify Patient in writing of any such change in the Fees. If Patient fails to pay the Fees when due, Patient's account may be forwarded to a collection agency for further action. Patient consents to receive autodialed and/or pre-recorded calls from or on behalf of Bank for account collection purposes at the landline and/or mobile telephone numbers provided to Bank. If Patient fails to pay any Fee when due or otherwise fails to comply with the terms and conditions of this Agreement, Bank shall not be obligated to provide, or continue to provide, the Tissue Banking Services or any other services hereunder. The Fees for the Tissue Banking Services and other services provided by Bank are as follows:

(a) An initial fee for the Tissue Banking Services including one year of storage of the stem cells (**"Initial Fee"**), payable in full in advance of the receipt of the Tissue by Bank;

(b) An annual fee for the storage of the stem cells during each year, or portion of a year, after the end of the first year of the term of this Agreement (**"Annual Fee"**), in the amount of $250.00 per year, payable in full before each anniversary of the Enrollment Date; and

(c) A fee for the retrieval and transfer of a single dose of stem cells (**"Retrieval Fee"**), in the amount of $500.00 for each transfer of a single dose of stem cells.

**6. Term and Termination.** The term of this Agreement shall commence on the Enrollment Date, and shall continue until terminated as follows:

(a) Termination by Bank. This Agreement may be terminated by Bank at any time by giving Patient sixty (60) days' advance written notice. In the event this Agreement is terminated by Bank pursuant to this **Section 6(a)** prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Bank shall refund to Patient the pro-rata portion of the Annual Fee for the unused portion of the year after the date of termination, and Patient shall be entitled to retrieve the stem cells by submitting a Retrieval Request Form to Bank prior to the expiration of the sixty (60) day notice period.

(b) Termination by Patient. This Agreement may be terminated by Patient at any time by delivering a written notice of termination to Bank. In the event this Agreement is terminated by Patient pursuant to this **Section 6(b)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(c) Termination upon Death of Patient. This Agreement will terminate immediately upon the death of Patient. If such termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient's estate or heirs shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

(d) Termination due to a Force Majeure Event. This Agreement may be terminated by Bank upon the loss, deterioration or destruction of all or any part of the Tissue and/or the stem cells derived from the Tissue of Patient, from causes or circumstances beyond Bank's reasonable control, including, without limitation, fires, explosions or power outages, natural disasters, disruption of utilities or public services, strikes or labor shortages, terrorist acts or acts of war, acts of governments, or any law, proclamation, ordinance, demand, or requirement of any government agency. In the event this Agreement is terminated by Bank pursuant to this **Section 6(d)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(e) Termination for Non-Payment of Fees. Bank may terminate this Agreement in the event Patient fails to pay when due any Fee payable hereunder. If this Agreement is terminated for
non-payment, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(f) Termination due to Change in Law. In the event there is a change in the laws, regulations, or the policies of a governmental agency with regulatory jurisdiction over the activities of Bank such that any of the terms

Accepted at 10/4/2018 4:34 AM by BRITTANY

or provisions of this Agreement could be deemed to be in violation or contravention of applicable law or regulations, or Bank's ability to be compensated for its services will be materially and adversely affected by such changes or clarifications, then this Agreement may be modified or amended to bring the affected provisions or terms into compliance with such change. If it is not possible to comply with such changes by amending or modifying this Agreement, then Bank shall have the right to terminate this Agreement, and the Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(g) Automatic Termination. If not otherwise terminated pursuant to **Section 6(a)** through **Section 6(f)** above, this Agreement will automatically terminate at such time as no Tissue and/or stem cells derived from Tissue collected from Patient, remains in the possession of Bank, whether due to the prior retrieval, transfer, or permitted disposal of the Tissue and/or the stem cells derived from the Tissue of Patient. If the automatic termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

**7. Disposal of Tissue and/or Stem Cells.** Bank will be entitled to dispose of the Tissue and/or the stem cells derived from the Tissue in accordance with standard clinical practices and without further notice to the Patient, as follows: (a) upon termination of this Agreement for any reason; and (b) whenever there is excess material remaining following the completion of processing of the Tissue. Such disposal may consist of disposal as medical waste, donation for academic or research purposes, or any other proper purpose as determined by Bank, in its sole discretion.

**8. Communications.** From time to time, Bank may send notices and updates to Patient via U.S. mail or e-mail, which may include marketing communications. Patient consents to electronic mail correspondence and other communications, including for marketing purposes.

**9. Indemnification.** Patient agrees to indemnify, defend and hold harmless Bank and its affiliates, including without limitation their respective shareholders, directors, officers, employees, agents (including marketing agents) and/or other representatives, from and against any and all claims, liabilities, losses, costs and expenses (including attorney's fees and costs of defense), damages, settlements, and judgments arising out of or related to: (a) the provision of, or failure to provide, services by Bank pursuant to this Agreement; and (b) claims concerning rights in and to the Tissue or the stem cells extracted therefrom, the transportation thereof, and the disposition of same.

**10. No Warranty.** Patient acknowledges that neither Bank nor any of its officers, directors, shareholders, executives, employees, agents (including without limitation marketing agents), representatives, consultants, and/or affiliates has made, nor makes herein, any representations or warranties to Patient, express or implied, of any kind or nature, including, without limiting the generality of the foregoing, any representations or warranties with respect to: (i) suitability of stem cells for future treatment of diseases; (ii) successful treatment of diseases through stem cell transplantation; (iii) advantages of stem cell transplantation over other types of treatment; or (iv) successful preservation of stem cells through cryopreservation. Patient acknowledges and agrees that neither Bank nor any of its shareholders, directors, officers, agents, employees or affiliates have made any representation, guaranty or warranty, express or implied, to Patient.

**11. Limitation of Liability.** PATIENT HEREBY ACKNOWLEDGES AND AGREES THAT BANK HAS NO LIABILITY OF ANY KIND IN RESPECT OF BANK'S PERFORMANCE OR FAILURE TO PERFORM UNDER THIS AGREEMENT EXCEPT TO THE EXTENT ATTRIBUTABLE TO BANK'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. IN NO EVENT SHALL BANK'S LIABILITY EXCEED THE TOTAL AMOUNT PAID BY PATIENT TO BANK UNDER THIS AGREEMENT. BANK SHALL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES (INCLUDING, WITHOUT LIMITATION, DAMAGES IN RESPECT OF BREACH OF CONTRACT, WARRANTY, STRICT LIABILITY OR TORT), WHETHER OR NOT BANK HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE LIMITATIONS SET FORTH IN THIS SECTION SHALL APPLY NOTWITHSTANDING THE FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

**12. Assignment and Delegation.** Bank may assign its rights and delegate its obligations under this Agreement at any time and in its sole discretion, without further consent of Patient. Bank may perform services to be provided by it hereunder through subcontractors, agents or managers pursuant to management services agreements. This Agreement is not assignable by Patient without the prior written consent of Bank and any attempted assignment in breach of the foregoing restriction shall be void.

**13. Governing Law, Jurisdiction and Venue; Attorney's Fees**. This Agreement is governed by the laws of the State of Florida without regard to its conflict of laws principles. Any judicial proceedings brought against either Bank or Patient under this Agreement will be brought in a court in Miami-Dade County, Florida. Bank and Patient consent to the exclusive jurisdiction of the aforesaid courts and waive any objection to venue therein and irrevocably agree to be bound by any judgment rendered thereby. The prevailing party in any such proceedings will be entitled to an award of its reasonable attorney's fees, paralegal fees, costs and expenses incurred in such proceedings.

**14. Entire Agreement.** This Agreement constitutes the entire Agreement between the parties and supersedes all previous agreements or representations by Bank or Patient, oral or written, relating to the subject matter of this Agreement.

**15. Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

**16. Survival.** All provisions which by their terms require performance after the termination of this Agreement will survive the termination of this Agreement.

**17. Headings.** The headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**18. Notices.** Any notice to be given hereunder by either party to the other shall be in English and in writing, and shall be hand delivered or sent by overnight courier or registered, express mail to the addresses listed on the enrollment documents (or any updated address provided by Patient in writing to Bank or by Bank in writing to Patient, and shall be deemed to be effective two (2) business days after dispatch).

1.

**Amendment.** Except as set forth herein, this Agreement may only be modified or amended by a writing signed by each party and shall be binding on Patient and Bank and their heirs, personal representatives, successors and permitted assigns.

By signing below, you confirm that you have read and fully understand the terms and conditions of this Agreement, including both Part I: Informed Consent and Part II: Patient Service Agreement Terms and Conditions.

**Patient's Signature *(Only Last Page)***            **Patient's Initials & Date**



Signed 09/09/2018



Signed 09/09/2018

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION

Case No.: 0 18-cv-61047 (UU)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

US STEM CELL CLINIC, LLC, a Florida
Profit corporation, and KRISTIN C.
COMELLA and THEODORE GRADEL,
individuals,

        Defendants.

_____/

## DECLARATION OF TARA RUSSELL

I, Tara Russell, hereby make this declaration pursuant to and in accordance with 28 U.S.C. § 1746:

1) I am a resident of Whitelaw, WI and am over eighteen years of age.  I have personal knowledge of the matters set forth herein.

2) I have banked my stem cells (the "Stem Cells") for a storage at a tissue bank operated by US Stem Cell, Inc., pursuant to a Stem Cell Processing and Storage Agreement (the "Storage Agreement").  A copy of my Storage Agreement, together with a Certificate that I obtained from US Stem Cells in connection with the banking of my cells are attached as Exhibit A to this Declaration.

3) The Storage Agreement expressly provides that the Stem Cells stored pursuant to the Storage  Agreement are and shall remain my property.

4) I received no notice that my stem cells were in jeopardy or were the subject of an order calling for their destruction, until June 28, 2019 when I was notified by US Stem Cells directly.

5) Prior to the notification I received from US Stem Cell on June 28, 2019, I did not see any press coverage of this action or otherwise knew of the pendency of the action.

I declare under a penalty of perjury that the foregoing is true and correct.

Executed this 17th day of July, 2019

Tara Russell



# U.S. STEMCELL

## Stem Cell Banking

**Congratulations your sample has been received!**

**This Certificate is for:**

*Tara Russell*



Patient ID:

**Please contact banking@us-stemcell.com
to receive any information about your cells**

**Thank you for choosing U.S. Stem Cell, Inc.**

February 26th, 2019

JULIETA RADICHE
OPERATIONS AND LAB DIRECTOR

KRISTIN COMELLA
CHIEF SCIENCE OFFICER

13794 NW 4th Street, Suite 212 • Sunrise, Florida 33325
Phone: 954.835.1500 • Fax: 954.845.9976
www.us-stemcell.com

## STEM CELL PROCESSING AND STORAGE AGREEMENT

This Stem Cell Processing and Storage Agreement (this "**Agreement**") is between ("**you**" or the "**Patient**") and U.S. Stem Cell, Inc., a Florida corporation ("**Bank**") and is entered into this day of , 2018 (the "**Enrollment Date**") for the testing, processing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of your adipose (fat), muscle and/or bone marrow tissue that is collected by your physician (the "**Tissue**"), for the purpose of extracting and storing the stem cells contained in the Tissue, on the terms set forth in this Agreement. This Agreement legally binds Bank and the Patient.

# Part I
## INFORMED CONSENT

By signing below, you acknowledge that you have the legal and mental capacity to sign this document and that you have given your informed consent to your physician to undergo liposuction or another surgical procedure, and that you also have given your consent to the collection of your Tissue by your physician during such procedure. You further acknowledge that your consent includes, but is not limited to: the performance of such procedures as may be necessary or appropriate to transport, test, process and expand the Tissue after removal by your physician, as well as the extraction of the stem cells, if any, that may be present in the Tissue, followed by the cryopreservation of the stem cells. You also acknowledge that you consent to the terms and conditions relating to the transportation, testing, processing, expansion, cryopreservation, storage, withdrawal, transfer, donation, shipping and/or other use of the Tissue, by or on behalf of Bank, that are set forth in this Agreement.

**1. Risks Involved in Storage and Use.** You understand that the cryopreservation of stem cells from the Tissue is a relatively new procedure, and that there are laboratory tests and other studies that have indicated that it is a successful method of preserving stem cells. You understand that the transplantation of stem cells is a relatively new procedure that may offer possible future benefits to you in treating diseases. You also understand that there are no assurances, warranties or guarantees that any such benefits will be obtained.

**2. Collection Risks and Consent.** You have been fully informed about the procedure for collecting the Tissue and hereby authorize and direct your physician, his/her employees and/or contracted health care provider(s) to collect your Tissue during your scheduled procedure, for packaging, transport and delivery to Bank, using a banking kit ("**Banking Kit**") provided to your physician by Bank. You understand that although the collection of the Tissue is a relatively simple procedure, complications may occur during the procedure that could preclude the collection of the Tissue. You acknowledge that you have been fully informed of, accept and agree to the conditions, risks, limitations and costs of collecting, processing, testing and storing of your Tissue, which include, without limitation, the following:

- a risk of contamination when collecting the Tissue;

- there is no guarantee or assurance of the success of the collection procedure;

- the Tissue collected may be insufficient for stem cell extraction or any other purpose;

- there may be complications that will make it impossible or problematic to collect the Tissue, and your physician may properly refuse to collect the Tissue; and

- the Tissue that is collected may not be acceptable for any medical use as determined by your physician at the time of collection, or by Bank upon receipt of the Tissue.

Therefore, you agree that your physician may determine in the exercise of his/her professional medical judgment, whether or not to proceed with collecting the Tissue during the procedure, and that the determination of your physician shall be final and binding on you. Nonetheless, being cognizant of the foregoing conditions, risks and limitations, you hereby consent to allow your physician to collect the Tissue and to furnish it to Bank for testing, processing, cryopreserving, storing, and servicing.

**3. Disclosure of Health Information:** Bank will use reasonable procedures to safeguard the confidentiality of health information that you provide to Bank concerning your health. You hereby consent to the use of your confidential health information, including the Tissue testing results, by Bank, and acknowledge and agree that Bank may retain and make further use of such confidential

of its obligations under this Agreement or as otherwise may be permitted or required by applicable laws or regulations.

**4. Release from Liability.** You hereby for yourself, your agents, attorneys, successors-in- interest, affiliates, representatives, heirs and assigns, irrevocably and unconditionally release and discharge Bank and its shareholders, directors, officers, employees, agents, representatives, affiliates, and/or their respective legal representatives, estates, successors and assigns, from and against any and all claims, causes of action, liabilities, damages, costs, and expenses, known and unknown, that you, or your heirs, assigns, or representatives may incur, resulting from or relating to the processing (after collection by your physician), testing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of the Tissue pursuant to this Agreement. Without limiting the foregoing, you further acknowledge that Bank is not responsible in any way for the actions of others including your physician, medical facility, staff of the medical facility, laboratory staff, and transporters of the Tissue. You understand that by agreeing to this Release from Liability you are giving up rights that you might otherwise have now or in the future to seek money damages or other remedies or relief from Bank, its affiliates, its agents or managers, and other persons and entities referenced in this Release from Liability.

# Part II

## PATIENT SERVICE AGREEMENT TERMS AND CONDITIONS

**1. Testing, Processing, Expanding, Freezing and Storing the Tissue**

Upon receipt of the Tissue, Bank will test and process the Tissue, and will extract, expand, cryopreserve and store the stem cells contained in the Tissue. Bank will perform a visual inspection and conduct a viability test to determine the suitability of the Tissue for stem cell extraction, expansion, cryopreservation and storage. Stem cell extraction, expansion, cryopreservation and storage are collectively referred to as the "**Tissue Banking Services**". If the Tissue is deemed acceptable by Bank, Bank will process the Tissue, extract the stem cells, expand the stem cells, and/or store the stem cells in a cryogenic cellular storage unit until the termination of this Agreement in accordance with the terms set forth herein. Bank's obligations are expressly limited to the services described in this Agreement.

**2. Patient Representations and Warranties**. You represent and warrant that:

(a) You are of legal age;

 (b) You have carefully read and understand all of the terms of this Agreement;

(c) Your decision to have the Tissue collected, processed, expanded and stored is a completely voluntary act;

(d) You have had the opportunity to discuss this Agreement with a competent medical professional, who is not an employee of Bank; and

(e) You understand the risks related to collection, expansion, storage and the possible future use of the Tissue.

**3. Use and Ownership of Tissue.**

(a) Patient acknowledges and agrees that the Tissue and the stem cells derived therefrom are for "**Autologous Use**." Autologous Use means that the stem cells derived from the Tissue may only be implanted, transplanted, infused or transferred back into the individual from whom the Tissue was collected. Accordingly, the Tissue and the stem cells derived therefrom shall only be used for implantation, transplantation, infusion or transfer back into Patient, exclusively.

(b) Bank will receive and retain possession of the Tissue and the stem cells derived therefrom in accordance with the terms of this Agreement, until this Agreement is terminated in accordance with **Section 6** hereof.

(c) Upon termination of this Agreement, Bank will dispose of the Tissue and/or the stem cells derived therefrom, in the manner set forth in **Section 7** hereof.

(d) Notwithstanding Bank's possession of the Tissue and the stem cells derived therefrom, Patient is and shall remain the owner of the Tissue and the stem cells derived therefrom, until the release or disposition of same by Bank.

**4. Requests for Release of Stem Cells**. Commencing three (3) months after the Enrollment Date, Patient

two (2) weeks' advance written notice to Bank. The request must be made on a request form provided by Bank (a "Retrieval Request Form"), must be signed by the Patient, must include the name and address of the recipient to whom the stem cells are to be delivered and the date delivery is requested. The transfer or disposal of the stem cells will be performed in accordance with Bank's standard operating procedures in effect at the time of the request. Patient is required to pay all administrative, handling, transportation and delivery charges for the release and transfer of the stem cells prior to shipment thereof, and Bank shall not be required to release, prepare, ship or dispose of the stem cells unless and until any and all payments required to be made under this Agreement have been paid in full.

**5. Fees**. Patient agrees to pay the fees (the "**Fees**") set forth below for the services selected by Patient. Fees must be paid by the due dates. Any taxes that may be due on the Fees are the responsibility of Patient, and the Fees are expressed exclusive of taxes. Bank reserves the right, in its discretion, to make adjustments from time to time to the Initial Fee, Annual Fee, and the Retrieval Fee (as defined below). Bank will notify Patient in writing of any such change in the Fees. If Patient fails to pay the Fees when due, Patient's account may be forwarded to a collection agency for further action. Patient consents to receive autodialed and/or pre-recorded calls from or on behalf of Bank for account collection purposes at the landline and/or mobile telephone numbers provided to Bank. If Patient fails to pay any Fee when due or otherwise fails to comply with the terms and conditions of this Agreement, Bank shall not be obligated to provide, or continue to provide, the Tissue Banking Services or any other services hereunder. The Fees for the Tissue Banking Services and other services provided by Bank are as follows:

(a) An initial fee for the Tissue Banking Services including one year of storage of the stem cells ("**Initial Fee**"), payable in full in advance of the receipt of the Tissue by Bank;

(b) An annual fee for the storage of the stem cells during each year, or portion of a year, after the end of the first year of the term of this Agreement ("**Annual Fee**"), in the amount of $250.00 per year, payable in full before each anniversary of the Enrollment Date; and

(c) A fee for the retrieval and transfer of a single dose of stem cells ("**Retrieval Fee**"), in the amount of $500.00 for each transfer of a single dose of stem cells.

**6. Term and Termination.** The term of this Agreement shall commence on the Enrollment Date, and shall continue until terminated as follows:

(a) Termination by Bank. This Agreement may be terminated by Bank at any time by giving Patient sixty (60) days' advance written notice. In the event this Agreement is terminated by Bank pursuant to this **Section 6(a)** prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Bank shall refund to Patient the pro-rata portion of the Annual Fee for the unused portion of the year after the date of termination, and Patient shall be entitled to retrieve the stem cells by submitting a Retrieval Request Form to Bank prior to the expiration of the sixty (60) day notice period.

(b) Termination by Patient. This Agreement may be terminated by Patient at any time by delivering a written notice of termination to Bank. In the event this Agreement is terminated by Patient pursuant to this **Section 6(b)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(c) Termination upon Death of Patient. This Agreement will terminate immediately upon the death of Patient. If such termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient's estate or heirs shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

(d) Termination due to a Force Majeure Event. This Agreement may be terminated by Bank upon the loss, deterioration or destruction of all or any part of the Tissue and/or the stem cells derived from the Tissue of Patient, from causes or circumstances beyond Bank's reasonable control, including, without limitation, fires, explosions or power outages, natural disasters, disruption of utilities or public services, strikes or labor shortages, terrorist acts or acts of war, acts of governments, or any law, proclamation, ordinance, demand, or requirement of any government agency. In the event this Agreement is terminated by Bank pursuant to this **Section 6(d)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(e) Termination for Non-Payment of Fees. Bank may terminate this Agreement in the event Patient fails to pay when due any Fee payable hereunder. If this Agreement is terminated for non-payment, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(f) Termination due to Change in Law. In the event there is a change in the laws, regulations, or the policies

or provisions of this Agreement could be deemed to be in violation or contravention of applicable law or regulations, or Bank's ability to be compensated for its services will be materially and adversely affected by such changes or clarifications, then this Agreement may be modified or amended to bring the affected provisions or terms into compliance with such change. If it is not possible to comply with such changes by amending or modifying this Agreement, then Bank shall have the right to terminate this Agreement, and the Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(g) Automatic Termination. If not otherwise terminated pursuant to **Section 6(a)** through **Section 6(f)** above, this Agreement will automatically terminate at such time as no Tissue and/or stem cells derived from Tissue collected from Patient, remains in the possession of Bank, whether due to the prior retrieval, transfer, or permitted disposal of the Tissue and/or the stem cells derived from the Tissue of Patient. If the automatic termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

**7. Disposal of Tissue and/or Stem Cells.** Bank will be entitled to dispose of the Tissue and/or the stem cells derived from the Tissue in accordance with standard clinical practices and without further notice to the Patient, as follows: (a) upon termination of this Agreement for any reason; and (b) whenever there is excess material remaining following the completion of processing of the Tissue. Such disposal may consist of disposal as medical waste, donation for academic or research purposes, or any other proper purpose as determined by Bank, in its sole discretion.

**8. Communications.** From time to time, Bank may send notices and updates to Patient via U.S. mail or e-mail, which may include marketing communications. Patient consents to electronic mail correspondence and other communications, including for marketing purposes.

**9. Indemnification.** Patient agrees to indemnify, defend and hold harmless Bank and its affiliates, including without limitation their respective shareholders, directors, officers, employees, agents (including marketing agents) and/or other representatives, from and against any and all claims, liabilities, losses, costs and expenses (including attorney's fees and costs of defense), damages, settlements, and judgments arising out of or related to: (a) the provision of, or failure to provide, services by Bank pursuant to this Agreement; and (b) claims concerning rights in and to the Tissue or the stem cells extracted therefrom, the transportation thereof, and the disposition of same.

**10. No Warranty.** Patient acknowledges that neither Bank nor any of its officers, directors, shareholders, executives, employees, agents (including without limitation marketing agents), representatives, consultants, and/or affiliates has made, nor makes herein, any representations or warranties to Patient, express or implied, of any kind or nature, including, without limiting the generality of the foregoing, any representations or warranties with respect to: (i) suitability of stem cells for future treatment of diseases; (ii) successful treatment of diseases through stem cell transplantation; (iii) advantages of stem cell transplantation over other types of treatment; or (iv) successful preservation of stem cells through cryopreservation. Patient acknowledges and agrees that neither Bank nor any of its shareholders, directors, officers, agents, employees or affiliates have made any representation, guaranty or warranty, express or implied, to Patient.

**11. Limitation of Liability.** PATIENT HEREBY ACKNOWLEDGES AND AGREES THAT BANK HAS NO LIABILITY OF ANY KIND IN RESPECT OF BANK'S PERFORMANCE OR FAILURE TO PERFORM UNDER THIS AGREEMENT EXCEPT TO THE EXTENT ATTRIBUTABLE TO BANK'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. IN NO EVENT SHALL BANK'S LIABILITY EXCEED THE TOTAL AMOUNT PAID BY PATIENT TO BANK UNDER THIS AGREEMENT. BANK SHALL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES (INCLUDING, WITHOUT LIMITATION, DAMAGES IN RESPECT OF BREACH OF CONTRACT, WARRANTY, STRICT LIABILITY OR TORT), WHETHER OR NOT BANK HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE LIMITATIONS SET FORTH IN THIS SECTION SHALL APPLY NOTWITHSTANDING THE FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

**12. Assignment and Delegation.** Bank may assign its rights and delegate its obligations under this Agreement at any time and in its sole discretion, without further consent of Patient. Bank may perform services to be provided by it hereunder through subcontractors, agents or managers pursuant to management services agreements. This Agreement is not assignable by Patient without the prior written consent of Bank and any attempted assignment in breach of the foregoing restriction shall be void.

**13. Governing Law, Jurisdiction and Venue; Attorney's Fees.** This Agreement is governed by the laws of the State of Florida without regard to its conflict of laws principles. Any judicial proceedings brought against either Bank or Patient under this Agreement will be brought in a court in Miami-Dade County, Florida. Bank and Patient consent to the exclusive jurisdiction of the aforesaid courts and waive any objection to venue therein and irrevocably agree to be bound by any judgment rendered thereby. The prevailing party in any such proceedings will be entitled to an award of its reasonable attorney's fees, paralegal fees, costs and expenses incurred in such proceedings.

**14. Entire Agreement.** This Agreement constitutes the entire Agreement between the parties and supersedes all previous agreements or representations by Bank or Patient, oral or written, relating to the subject matter of this Agreement.

**15. Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

**16. Survival.** All provisions which by their terms require performance after the termination of this Agreement will survive the termination of this Agreement.

**17. Headings.** The headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**18. Notices.** Any notice to be given hereunder by either party to the other shall be in English and in writing, and shall be hand delivered or sent by overnight courier or registered, express mail to the addresses listed on the enrollment documents (or any updated address provided by Patient in writing to Bank or by Bank in writing to Patient, and shall be deemed to be effective two (2) business days after dispatch).

1.
   **Amendment.** Except as set forth herein, this Agreement may only be modified or amended by a writing signed by each party and shall be binding on Patient and Bank and their heirs, personal representatives, successors and permitted assigns.

By signing below, you confirm that you have read and fully understand the terms and conditions of this Agreement, including both Part I: Informed Consent and Part II: Patient Service Agreement Terms and Conditions.

**Patient's Signature *(Only Last Page)***                    **Patient's Initials & Date**



Signed 01/26/2019

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

Case No.: 0 18-cv-61047 (UU)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

US STEM CELL CLINIC, LLC, a Florida
Profit corporation, and KRISTIN C.
COMELLA and THEODORE GRADEL,
individuals,

        Defendants.

_____/

**DECLARATION OF GREGORY MUSKE**

I, Gregory Muske, hereby make this declaration pursuant to and in accordance with 28 U.S.C. § 1746:

1) I am a resident of Whitelaw, WI and am over eighteen years of age.  I have personal knowledge of the matters set forth herein.

2) I have banked my stem cells (the "Stem Cells") for a storage at a tissue bank operated by US Stem Cell, Inc., pursuant to a Stem Cell Processing and Storage Agreement (the "Storage Agreement").  A copy of my Storage Agreement, together with a Certificate that I obtained from US Stem Cells in connection with the banking of my cells are attached as Exhibit A to this Declaration.

3) The Storage Agreement expressly provides that the Stem Cells stored pursuant to the Storage  Agreement are and shall remain my property.

4) I received no notice that my stem cells were in jeopardy or were the subject of an order calling for their destruction, until June 28, 2019 when I was notified by US Stem Cells directly.

5) Prior to the notification I received from US Stem Cell on June 28, 2019, I did not see any press coverage of this action or otherwise knew of the pendency of the action.

I declare under a penalty of perjury that the foregoing is true and correct.

Executed this 17th day of July, 2019

Gregory Muske

**Congratulations your sample has been received!**



# U.S.STEMCELL

## Stem Cell Banking

**This Certificate is for:**

# Greg Muske

Patient ID: ██████

**Please contact banking@us-stemcell.com
to receive any information about your cells**

**Thank you for choosing U.S. Stem Cell, Inc.**

February 29th, 2019

JULIETA RADICHE
OPERATIONS AND LAB DIRECTOR

KRISTIN COMELLA
CHIEF SCIENCE OFFICER

13794 NW 4th Street, Suite 212 ● Sunrise, Florida 33325
Phone: 954.835.1500 ● Fax: 954.845.9976
www.us-stemcell.com

## STEM CELL PROCESSING AND STORAGE AGREEMENT

This Stem Cell Processing and Storage Agreement (this "**Agreement**") is between ("**you**" or the "**Patient**") and U.S. Stem Cell, Inc., a Florida corporation ("**Bank**") and is entered into this day of , 2018 (the "**Enrollment Date**") for the testing, processing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of your adipose (fat), muscle and/or bone marrow tissue that is collected by your physician (the "**Tissue**"), for the purpose of extracting and storing the stem cells contained in the Tissue, on the terms set forth in this Agreement. This Agreement legally binds Bank and the Patient.

# Part I

## INFORMED CONSENT

By signing below, you acknowledge that you have the legal and mental capacity to sign this document and that you have given your informed consent to your physician to undergo liposuction or another surgical procedure, and that you also have given your consent to the collection of your Tissue by your physician during such procedure. You further acknowledge that your consent includes, but is not limited to: the performance of such procedures as may be necessary or appropriate to transport, test, process and expand the Tissue after removal by your physician, as well as the extraction of the stem cells, if any, that may be present in the Tissue, followed by the cryopreservation of the stem cells. You also acknowledge that you consent to the terms and conditions relating to the transportation, testing, processing, expansion, cryopreservation, storage, withdrawal, transfer, donation, shipping and/or other use of the Tissue, by or on behalf of Bank, that are set forth in this Agreement.

**1. Risks Involved in Storage and Use.** You understand that the cryopreservation of stem cells from the Tissue is a relatively new procedure, and that there are laboratory tests and other studies that have indicated that it is a successful method of preserving stem cells. You understand that the transplantation of stem cells is a relatively new procedure that may offer possible future benefits to you in treating diseases. You also understand that there are no assurances, warranties or guarantees that any such benefits will be obtained.

**2. Collection Risks and Consent**. You have been fully informed about the procedure for collecting the Tissue and hereby authorize and direct your physician, his/her employees and/or contracted health care provider(s) to collect your Tissue during your scheduled procedure, for packaging, transport and delivery to Bank, using a banking kit ("**Banking Kit**") provided to your physician by Bank. You understand that although the collection of the Tissue is a relatively simple procedure, complications may occur during the procedure that could preclude the collection of the Tissue. You acknowledge that you have been fully informed of, accept and agree to the conditions, risks, limitations and costs of collecting, processing, testing and storing of your Tissue, which include, without limitation, the following:

- a risk of contamination when collecting the Tissue;

- there is no guarantee or assurance of the success of the collection procedure;

- the Tissue collected may be insufficient for stem cell extraction or any other purpose;

    - there may be complications that will make it impossible or problematic to collect the Tissue, and your physician may properly refuse to collect the Tissue; and

    - the Tissue that is collected may not be acceptable for any medical use as determined by your physician at the time of collection, or by Bank upon receipt of the Tissue.

Therefore, you agree that your physician may determine in the exercise of his/her professional medical judgment, whether or not to proceed with collecting the Tissue during the procedure, and that the determination of your physician shall be final and binding on you. Nonetheless, being cognizant of the foregoing conditions, risks and limitations, you hereby consent to allow your physician to collect the Tissue and to furnish it to Bank for testing, processing, cryopreserving, storing, and servicing.

**3. Disclosure of Health Information**: Bank will use reasonable procedures to safeguard the confidentiality of health information that you provide to Bank concerning your health. You hereby consent to the use of your confidential health information, including the Tissue testing results, by Bank, and acknowledge and agree that Bank may retain and make further use of such confidential

of its obligations under this Agreement or as otherwise may be permitted or required by applicable laws or regulations.

**4. Release from Liability.** You hereby for yourself, your agents, attorneys, successors-in- interest, affiliates, representatives, heirs and assigns, irrevocably and unconditionally release and discharge Bank and its shareholders, directors, officers, employees, agents, representatives, affiliates, and/or their respective legal representatives, estates, successors and assigns, from and against any and all claims, causes of action, liabilities, damages, costs, and expenses, known and unknown, that you, or your heirs, assigns, or representatives may incur, resulting from or relating to the processing (after collection by your physician), testing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of the Tissue pursuant to this Agreement. Without limiting the foregoing, you further acknowledge that Bank is not responsible in any way for the actions of others including your physician, medical facility, staff of the medical facility, laboratory staff, and transporters of the Tissue. You understand that by agreeing to this Release from Liability you are giving up rights that you might otherwise have now or in the future to seek money damages or other remedies or relief from Bank, its affiliates, its agents or managers, and other persons and entities referenced in this Release from Liability.

# Part II

**PATIENT SERVICE AGREEMENT TERMS AND CONDITIONS**

**1. Testing, Processing, Expanding, Freezing and Storing the Tissue**

Upon receipt of the Tissue, Bank will test and process the Tissue, and will extract, expand, cryopreserve and store the stem cells contained in the Tissue. Bank will perform a visual inspection and conduct a viability test to determine the suitability of the Tissue for stem cell extraction, expansion, cryopreservation and storage. Stem cell extraction, expansion, cryopreservation and storage are collectively referred to as the "**Tissue Banking Services**". If the Tissue is deemed acceptable by Bank, Bank will process the Tissue, extract the stem cells, expand the stem cells, and/or store the stem cells in a cryogenic cellular storage unit until the termination of this Agreement in accordance with the terms set forth herein. Bank's obligations are expressly limited to the services described in this Agreement.

**2. Patient Representations and Warranties**. You represent and warrant that:

(a) You are of legal age;

(b) You have carefully read and understand all of the terms of this Agreement;

(c) Your decision to have the Tissue collected, processed, expanded and stored is a completely voluntary act;

(d) You have had the opportunity to discuss this Agreement with a competent medical professional, who is not an employee of Bank; and

(e) You understand the risks related to collection, expansion, storage and the possible future use of the Tissue.

**3. Use and Ownership of Tissue.**

(a) Patient acknowledges and agrees that the Tissue and the stem cells derived therefrom are for "**Autologous Use**." Autologous Use means that the stem cells derived from the Tissue may only be implanted, transplanted, infused or transferred back into the individual from whom the Tissue was collected. Accordingly, the Tissue and the stem cells derived therefrom shall only be used for implantation, transplantation, infusion or transfer back into Patient, exclusively.

(b) Bank will receive and retain possession of the Tissue and the stem cells derived therefrom in accordance with the terms of this Agreement, until this Agreement is terminated in accordance with **Section 6** hereof.

(c) Upon termination of this Agreement, Bank will dispose of the Tissue and/or the stem cells derived therefrom, in the manner set forth in **Section 7** hereof.

(d) Notwithstanding Bank's possession of the Tissue and the stem cells derived therefrom, Patient is and shall remain the owner of the Tissue and the stem cells derived therefrom, until the release or disposition of same by Bank.

**4. Requests for Release of Stem Cells.** Commencing three (3) months after the Enrollment Date, Patient

two (2) weeks' advance written notice to Bank. The request must be made on a request form provided by Bank (a "Retrieval Request Form"), must be signed by the Patient, must include the name and address of the recipient to whom the stem cells are to be delivered and the date delivery is requested. The transfer or disposal of the stem cells will be performed in accordance with Bank's standard operating procedures in effect at the time of the request. Patient is required to pay all administrative, handling, transportation and delivery charges for the release and transfer of the stem cells prior to shipment thereof, and Bank shall not be required to release, prepare, ship or dispose of the stem cells unless and until any and all payments required to be made under this Agreement have been paid in full.

**5. Fees**. Patient agrees to pay the fees (the "**Fees**") set forth below for the services selected by Patient. Fees must be paid by the due dates. Any taxes that may be due on the Fees are the responsibility of Patient, and the Fees are expressed exclusive of taxes. Bank reserves the right, in its discretion, to make adjustments from time to time to the Initial Fee, Annual Fee, and the Retrieval Fee (as defined below). Bank will notify Patient in writing of any such change in the Fees. If Patient fails to pay the Fees when due, Patient's account may be forwarded to a collection agency for further action. Patient consents to receive autodialed and/or pre-recorded calls from or on behalf of Bank for account collection purposes at the landline and/or mobile telephone numbers provided to Bank. If Patient fails to pay any Fee when due or otherwise fails to comply with the terms and conditions of this Agreement, Bank shall not be obligated to provide, or continue to provide, the Tissue Banking Services or any other services hereunder. The Fees for the Tissue Banking Services and other services provided by Bank are as follows:

(a) An initial fee for the Tissue Banking Services including one year of storage of the stem cells ("**Initial Fee**"), payable in full in advance of the receipt of the Tissue by Bank;

(b) An annual fee for the storage of the stem cells during each year, or portion of a year, after the end of the first year of the term of this Agreement ("**Annual Fee**"), in the amount of $250.00 per year, payable in full before each anniversary of the Enrollment Date; and

(c) A fee for the retrieval and transfer of a single dose of stem cells ("**Retrieval Fee**"), in the amount of $500.00 for each transfer of a single dose of stem cells.

**6. Term and Termination.** The term of this Agreement shall commence on the Enrollment Date, and shall continue until terminated as follows:

(a) Termination by Bank. This Agreement may be terminated by Bank at any time by giving Patient sixty (60) days' advance written notice. In the event this Agreement is terminated by Bank pursuant to this **Section 6(a)** prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Bank shall refund to Patient the pro-rata portion of the Annual Fee for the unused portion of the year after the date of termination, and Patient shall be entitled to retrieve the stem cells by submitting a Retrieval Request Form to Bank prior to the expiration of the sixty (60) day notice period.

(b) Termination by Patient. This Agreement may be terminated by Patient at any time by delivering a written notice of termination to Bank. In the event this Agreement is terminated by Patient pursuant to this **Section 6(b)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(c) Termination upon Death of Patient. This Agreement will terminate immediately upon the death of Patient. If such termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient's estate or heirs shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

(d) Termination due to a Force Majeure Event. This Agreement may be terminated by Bank upon the loss, deterioration or destruction of all or any part of the Tissue and/or the stem cells derived from the Tissue of Patient, from causes or circumstances beyond Bank's reasonable control, including, without limitation, fires, explosions or power outages, natural disasters, disruption of utilities or public services, strikes or labor shortages, terrorist acts or acts of war, acts of governments, or any law, proclamation, ordinance, demand, or requirement of any government agency. In the event this Agreement is terminated by Bank pursuant to this **Section 6(d)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(e) Termination for Non-Payment of Fees. Bank may terminate this Agreement in the event Patient fails to pay when due any Fee payable hereunder. If this Agreement is terminated for
 non-payment, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(f) Termination due to Change in Law. In the event there is a change in the laws, regulations, or the policies

or provisions of this Agreement could be deemed to be in violation or contravention of applicable law or regulations, or Bank's ability to be compensated for its services will be materially and adversely affected by such changes or clarifications, then this Agreement may be modified or amended to bring the affected provisions or terms into compliance with such change. If it is not possible to comply with such changes by amending or modifying this Agreement, then Bank shall have the right to terminate this Agreement, and the Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(g) <u>Automatic Termination</u>. If not otherwise terminated pursuant to **Section 6(a)** through **Section 6(f)** above, this Agreement will automatically terminate at such time as no Tissue and/or stem cells derived from Tissue collected from Patient, remains in the possession of Bank, whether due to the prior retrieval, transfer, or permitted disposal of the Tissue and/or the stem cells derived from the Tissue of Patient. If the automatic termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

**7. Disposal of Tissue and/or Stem Cells.** Bank will be entitled to dispose of the Tissue and/or the stem cells derived from the Tissue in accordance with standard clinical practices and without further notice to the Patient, as follows: (a) upon termination of this Agreement for any reason; and (b) whenever there is excess material remaining following the completion of processing of the Tissue. Such disposal may consist of disposal as medical waste, donation for academic or research purposes, or any other proper purpose as determined by Bank, in its sole discretion.

**8. Communications.** From time to time, Bank may send notices and updates to Patient via U.S. mail or e-mail, which may include marketing communications. Patient consents to electronic mail correspondence and other communications, including for marketing purposes.

**9. Indemnification.** Patient agrees to indemnify, defend and hold harmless Bank and its affiliates, including without limitation their respective shareholders, directors, officers, employees, agents (including marketing agents) and/or other representatives, from and against any and all claims, liabilities, losses, costs and expenses (including attorney's fees and costs of defense), damages, settlements, and judgments arising out of or related to: (a) the provision of, or failure to provide, services by Bank pursuant to this Agreement; and (b) claims concerning rights in and to the Tissue or the stem cells extracted therefrom, the transportation thereof, and the disposition of same.

**10. No Warranty.** Patient acknowledges that neither Bank nor any of its officers, directors, shareholders, executives, employees, agents (including without limitation marketing agents), representatives, consultants, and/or affiliates has made, nor makes herein, any representations or warranties to Patient, express or implied, of any kind or nature, including, without limiting the generality of the foregoing, any representations or warranties with respect to: (i) suitability of stem cells for future treatment of diseases; (ii) successful treatment of diseases through stem cell transplantation; (iii) advantages of stem cell transplantation over other types of treatment; or (iv) successful preservation of stem cells through cryopreservation. Patient acknowledges and agrees that neither Bank nor any of its shareholders, directors, officers, agents, employees or affiliates have made any representation, guaranty or warranty, express or implied, to Patient.

**11. Limitation of Liability.** PATIENT HEREBY ACKNOWLEDGES AND AGREES THAT BANK HAS NO LIABILITY OF ANY KIND IN RESPECT OF BANK'S PERFORMANCE OR FAILURE TO PERFORM UNDER THIS AGREEMENT EXCEPT TO THE EXTENT ATTRIBUTABLE TO BANK'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. IN NO EVENT SHALL BANK'S LIABILITY EXCEED THE TOTAL AMOUNT PAID BY PATIENT TO BANK UNDER THIS AGREEMENT. BANK SHALL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES (INCLUDING, WITHOUT LIMITATION, DAMAGES IN RESPECT OF BREACH OF CONTRACT, WARRANTY, STRICT LIABILITY OR TORT), WHETHER OR NOT BANK HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE LIMITATIONS SET FORTH IN THIS SECTION SHALL APPLY NOTWITHSTANDING THE FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

**12. Assignment and Delegation.** Bank may assign its rights and delegate its obligations under this Agreement at any time and in its sole discretion, without further consent of Patient. Bank may perform services to be provided by it hereunder through subcontractors, agents or managers pursuant to management services agreements. This Agreement is not assignable by Patient without the prior written consent of Bank and any attempted assignment in breach of the foregoing restriction shall be void.

**13. Governing Law, Jurisdiction and Venue; Attorney's Fees**. This Agreement is governed by the laws of the State of Florida without regard to its conflict of laws principles. Any judicial proceedings brought against either Bank or Patient under this Agreement will be brought in a court in Miami-Dade County, Florida. Bank and Patient consent to the exclusive jurisdiction of the aforesaid courts and waive any objection to venue therein and irrevocably agree to be bound by any judgment rendered thereby. The prevailing party in any such proceedings will be entitled to an award of its reasonable attorney's fees, paralegal fees, costs and expenses incurred in such proceedings.

**14. Entire Agreement.** This Agreement constitutes the entire Agreement between the parties and supersedes all previous agreements or representations by Bank or Patient, oral or written, relating to the subject matter of this Agreement.

**15. Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

**16. Survival.** All provisions which by their terms require performance after the termination of this Agreement will survive the termination of this Agreement.

**17. Headings.** The headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**18. Notices.** Any notice to be given hereunder by either party to the other shall be in English and in writing, and shall be hand delivered or sent by overnight courier or registered, express mail to the addresses listed on the enrollment documents (or any updated address provided by Patient in writing to Bank or by Bank in writing to Patient, and shall be deemed to be effective two (2) business days after dispatch).

1.

**Amendment.** Except as set forth herein, this Agreement may only be modified or amended by a writing signed by each party and shall be binding on Patient and Bank and their heirs, personal representatives, successors and permitted assigns.

By signing below, you confirm that you have read and fully understand the terms and conditions of this Agreement, including both Part I: Informed Consent and Part II: Patient Service Agreement Terms and Conditions.

**Patient's Signature** *(Only Last Page)*                    **Patient's Initials & Date**

Signed 01/26/2019

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

Case No.: 0 18-cv-61047 (UU)

UNITED STATES OF AMERICA,

     Plaintiff,

v.

US STEM CELL CLINIC, LLC, a Florida
Profit corporation, and KRISTIN C.
COMELLA and THEODORE GRADEL,
individuals,

     Defendants.

_____/

**DECLARATION OF PORTER BROUGHTON**

I, Porter Broughton, hereby make this declaration pursuant to and in accordance with 28

U.S.C. § 1746:

1) I am a resident of *Tetonia   IDAHO*_____ and am over eighteen years of age.  I
have personal knowledge of the matters set forth herein.

2) I have banked my stem cells (the "Stem Cells") for a storage at a tissue bank operated
by US Stem Cell, Inc., pursuant to a Stem Cell Processing and Storage Agreement
(the "Storage Agreement").  A copy of my Storage Agreement, together with a
Certificate that I obtained from US Stem Cells in connection with the banking of my
cells are attached as Exhibit A to this Declaration.

3) The Storage Agreement expressly provides that the Stem Cells stored pursuant to the
Storage Agreement are and shall remain my property.

4) I received no notice that my stem cells were in jeopardy or were the subject of an order calling for their destruction, until June 28, 2019 when I was notified by US Stem Cells directly.

5) Prior to the notification I received from US Stem Cell on June 28, 2019, I did not see any press coverage of this action or otherwise knew of the pendency of the action.

I declare under a penalty of perjury that the foregoing is true and correct.

Executed this 16th day of July, 2019

Porter Broughton

against either Bank or Patient under this Agreement will be brought in a court in Miami-Dade County, Florida. Bank and Patient consent to the exclusive jurisdiction of the aforesaid courts and waive any objection to venue therein and irrevocably agree to be bound by any judgment rendered thereby. The prevailing party in any such proceedings will be entitled to an award of its reasonable attorney's fees, paralegal fees, costs and expenses incurred in such proceedings.

**14. Entire Agreement.** This Agreement constitutes the entire Agreement between the parties and supersedes all previous agreements or representations by Bank or Patient, oral or written, relating to the subject matter of this Agreement.

**15. Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

**16. Survival.** All provisions which by their terms require performance after the termination of this Agreement will survive the termination of this Agreement.

**17. Headings.** The headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**18. Notices.** Any notice to be given hereunder by either party to the other shall be in English and in writing, and shall be hand delivered or sent by overnight courier or registered, express mail to the addresses listed on the enrollment documents (or any updated address provided by Patient in writing to Bank or by Bank in writing to Patient, and shall be deemed to be effective two (2) business days after dispatch).

1.

**Amendment.** Except as set forth herein, this Agreement may only be modified or amended by a writing signed by each party and shall be binding on Patient and Bank and their heirs, personal representatives, successors and permitted assigns.

By signing below, you confirm that you have read and fully understand the terms and conditions of this Agreement, including both Part I: Informed Consent and Part II: Patient Service Agreement Terms and Conditions.

**Patient's Signature** *(Only Last Page)*

**Patient's Initials & Date**

PDR    9/27/18



**Congratulations your sample has been received!**

# U.S.STEMCELL

## Stem Cell Banking

**This Certificate is for:**

*Porter Broughton*

Patient ID: ████

**Please contact banking@us-stemcell.com
to receive any information about your cells**

**Thank you for choosing U.S. Stem Cell, Inc.**

September 27th, 2018

JULIETA RADICHE
OPERATIONS AND LAB MANAGER

KRISTIN COMELLA
CHIEF SCIENCE OFFICER

13794 NW 4th Street, Suite 212 • Sunrise, Florida 33325
Phone: 954.835.1500 • Fax: 954.845.9976
www.us-stemcell.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

Case No.: 0 18-cv-61047 (UU)

UNITED STATES OF AMERICA,

      Plaintiff,

v.

US STEM CELL CLINIC, LLC, a Florida
Profit corporation, and KRISTIN C.
COMELLA and THEODORE GRADEL,
individuals,

      Defendants.

_____/

### DECLARATION OF ANN-TOY BROUGHTON

I, Ann-Toy Broughton, hereby make this declaration pursuant to and in accordance with

28 U.S.C. § 1746:

1) I am a resident of _Tetonia  IDAHO_ and am over eighteen years of age. I have personal knowledge of the matters set forth herein.

2) I have banked my stem cells (the "Stem Cells") for a storage at a tissue bank operated by US Stem Cell, Inc., pursuant to a Stem Cell Processing and Storage Agreement (the "Storage Agreement"). A copy of my Storage Agreement, together with a Certificate that I obtained from US Stem Cells in connection with the banking of my cells are attached as Exhibit A to this Declaration.

3) The Storage Agreement expressly provides that the Stem Cells stored pursuant to the Storage Agreement are and shall remain my property.

4) I received no notice that my stem cells were in jeopardy or were the subject of an order calling for their destruction, until June 28, 2019 when I was notified by US Stem Cells directly.

5) Prior to the notification I received from US Stem Cell on June 28, 2019, I did not see any press coverage of this action or otherwise knew of the pendency of the action.

I declare under a penalty of perjury that the foregoing is true and correct.

Executed this 16th day of July, 2019

Ann-Toy Broughton

against either Bank or Patient under this Agreement will be brought in a court in Miami-Dade County, Florida. Bank and Patient consent to the exclusive jurisdiction of the aforesaid courts and waive any objection to venue therein and irrevocably agree to be bound by any judgment rendered thereby. The prevailing party in any such proceedings will be entitled to an award of its reasonable attorney's fees, paralegal fees, costs and expenses incurred in such proceedings.

**14. Entire Agreement.** This Agreement constitutes the entire Agreement between the parties and supersedes all previous agreements or representations by Bank or Patient, oral or written, relating to the subject matter of this Agreement.

**15. Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

**16. Survival.** All provisions which by their terms require performance after the termination of this Agreement will survive the termination of this Agreement.

**17. Headings.** The headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**18. Notices.** Any notice to be given hereunder by either party to the other shall be in English and in writing, and shall be hand delivered or sent by overnight courier or registered, express mail to the addresses listed on the enrollment documents (or any updated address provided by Patient in writing to Bank or by Bank in writing to Patient, and shall be deemed to be effective two (2) business days after dispatch).

1.

**Amendment.** Except as set forth herein, this Agreement may only be modified or amended by a writing signed by each party and shall be binding on Patient and Bank and their heirs, personal representatives, successors and permitted assigns.

By signing below, you confirm that you have read and fully understand the terms and conditions of this Agreement, including both Part I: Informed Consent and Part II: Patient Service Agreement Terms and Conditions.

**Patient's Signature** *(Only Last Page)*

*ette Braughter*

**Patient's Initials & Date**

*NEB*      *9/27/18*

**Congratulations your sample has been received!**



# U.S.STEMCELL

## Stem Cell Banking

**This Certificate is for:**

*Ann-Joy Broughton*

Patient ID: ▓▓▓▓

**Please contact** banking@us-stemcell.com
**to receive any information about your cells**

**Thank you for choosing U.S. Stem Cell, Inc.**

September 27th, 2015

JULIETA RADICHE
OPERATIONS AND LAB DIRECTOR

KRISTIN COMELLA
CHIEF SCIENCE OFFICER

13794 NW 4th Street, Suite 212 • Sunrise, Florida 33325
Phone: 954.835.1500 • Fax: 954.845.9976
www.us-stemcell.com

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

Case No.: 0 18-cv-61047 (UU)

UNITED STATES OF AMERICA,

      Plaintiff,

v.

US STEM CELL CLINIC, LLC, a Florida
Profit corporation, and KRISTIN C.
COMELLA and THEODORE GRADEL,
individuals,

      Defendants.

_____/

## DECLARATION OF MANNY CAMACHO

I, Manny Camacho, hereby make this declaration pursuant to and in accordance with 28 U.S.C. § 1746:

1) I am a resident of Weston, Florida and am over eighteen years of age. I have personal knowledge of the matters set forth herein.

2) I have banked my stem cells (the "Stem Cells") for a storage at a tissue bank operated by US Stem Cell, Inc., pursuant to a Stem Cell Processing and Storage Agreement (the "Storage Agreement"). A copy of my Storage Agreement, together with a Certificate that I obtained from US Stem Cells in connection with the banking of my cells are attached as Exhibit A to this Declaration.

3) The Storage Agreement expressly provides that the Stem Cells stored pursuant to the Storage Agreement are and shall remain my property.

4) I received no notice that my stem cells were in jeopardy or were the subject of an order calling for their destruction, until June 28, 2019 when I was notified by US Stem Cells directly.

5) Prior to the notification I received from US Stem Cell on June 28, 2019, I did not see any press coverage of this action or otherwise knew of the pendency of the action.

I declare under a penalty of perjury that the foregoing is true and correct.

Executed this 16th day of July, 2019

Manny Camacho

This Stem Cell Processing and Storage Agreement (this "**Agreement**") is between ("**you**" or the "**Patient**") and U.S. Stem Cell, Inc., a Florida corporation ("**Bank**") and is entered into this day of , 2017 (the "**Enrollment Date**") for the testing, processing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of your adipose (fat), muscle and/or bone marrow tissue that is collected by your physician (the "**Tissue**"), for the purpose of extracting and storing the stem cells contained in the Tissue, on the terms set forth in this Agreement. This Agreement legally binds Bank and the Patient.

# Part I

## INFORMED CONSENT

By signing below, you acknowledge that you have the legal and mental capacity to sign this document and that you have given your informed consent to your physician to undergo liposuction or another surgical procedure, and that you also have given your consent to the collection of your Tissue by your physician during such procedure. You further acknowledge that your consent includes, but is not limited to: the performance of such procedures as may be necessary or appropriate to transport, test, process and expand the Tissue after removal by your physician, as well as the extraction of the stem cells, if any, that may be present in the Tissue, followed by the cryopreservation of the stem cells. You also acknowledge that you consent to the terms and conditions relating to the transportation, testing, processing, expansion, cryopreservation, storage, withdrawal, transfer, donation, shipping and/or other use of the Tissue, by or on behalf of Bank, that are set forth in this Agreement.

**1. Risks Involved in Storage and Use.** You understand that the cryopreservation of stem cells from the Tissue is a relatively new procedure, and that there are laboratory tests and other studies that have indicated that it is a successful method of preserving stem cells. You understand that the transplantation of stem cells is a relatively new procedure that may offer possible future benefits to you in treating diseases. You also understand that there are no assurances, warranties or guarantees that any such benefits will be obtained.

**2. Collection Risks and Consent.** You have been fully informed about the procedure for collecting the Tissue and hereby authorize and direct your physician, his/her employees and/or contracted health care provider(s) to collect your Tissue during your scheduled procedure, for packaging, transport and delivery to Bank, using a banking kit ("**Banking Kit**") provided to your physician by Bank. You understand that although the collection of the Tissue is a relatively simple procedure, complications may occur during the procedure that could preclude the collection of the Tissue. You acknowledge that you have been fully informed of, accept and agree to the conditions, risks, limitations and costs of collecting, processing, testing and storing of your Tissue, which include, without limitation, the following:

- a risk of contamination when collecting the Tissue;

- there is no guarantee or assurance of the success of the collection procedure;

- the Tissue collected may be insufficient for stem cell extraction or any other purpose;

    - there may be complications that will make it impossible or problematic to collect the Tissue, and your physician may properly refuse to collect the Tissue; and

    - the Tissue that is collected may not be acceptable for any medical use as determined by your physician or by Bank upon receipt of the Tissue.

Therefore, you agree that your physician may determine in the exercise of his/her professional medical judgment, whether or not to proceed with collecting the Tissue during the procedure, and that the determination of your physician shall be final and binding on you. Nonetheless, being cognizant of the foregoing conditions, risks and limitations, you hereby consent to allow your physician to collect the Tissue and to furnish it to Bank for testing, processing, cryopreserving, storing, and servicing.

**3. Disclosure of Health Information**: Bank will use reasonable procedures to safeguard the confidentiality of health information that you provide to Bank concerning your health. You hereby consent to the use of your confidential health information, including the Tissue testing results, by

**4. Release from Liability.** You hereby for yourself, your agents, attorneys, successors-in-interest, affiliates, representatives, heirs and assigns, irrevocably and unconditionally release and discharge Bank and its shareholders, directors, officers, employees, agents, representatives, affiliates, and/or their respective legal representatives, estates, successors and assigns, from and against any and all claims, causes of action, liabilities, damages, costs, and expenses, known and unknown, that you, or your heirs, assigns, or representatives may incur, resulting from or relating to the processing (after collection by your physician), testing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of the Tissue pursuant to this Agreement. Without limiting the foregoing, you further acknowledge that Bank is not responsible in any way for the actions of others including your physician, medical facility, staff of the medical facility, laboratory staff, and transporters of the Tissue. You understand that by agreeing to this Release from Liability you are giving up rights that you might otherwise have now or in the future to seek money damages or other remedies or relief from Bank, its affiliates, its agents or managers, and other persons and entities referenced in this Release from Liability.

# Part II

## PATIENT SERVICE AGREEMENT TERMS AND CONDITIONS

### 1. Testing, Processing, Expanding, Freezing and Storing the Tissue

Upon receipt of the Tissue, Bank will test and process the Tissue, and will extract, expand, cryopreserve and store the stem cells contained in the Tissue. Bank will perform a visual inspection and conduct a viability test to determine the suitability of the Tissue for stem cell extraction, expansion, cryopreservation and storage. Stem cell extraction, expansion, cryopreservation and storage are collectively referred to as the "**Tissue Banking Services**". If the Tissue is deemed acceptable by Bank, Bank will process the Tissue, extract the stem cells, expand the stem cells, and/or store the stem cells in a cryogenic cellular storage unit until the termination of this Agreement in accordance with the terms set forth herein. Bank's obligations are expressly limited to the services described in this Agreement.

### 2. Patient Representations and Warranties. You represent and warrant that:

(a) You are of legal age;

(b) You have carefully read and understand all of the terms of this Agreement;

(c) Your decision to have the Tissue collected, processed, expanded and stored is a completely voluntary act;

(d) You have had the opportunity to discuss this Agreement with a competent medical professional, who is not an employee of Bank; and

(e) You understand the risks related to collection, expansion, storage and the possible future use of the Tissue.

### 3. Use and Ownership of Tissue.

(a) Patient acknowledges and agrees that the Tissue and the stem cells derived therefrom are for "**Autologous Use.**" Autologous Use means that the stem cells derived from the Tissue may only be implanted, transplanted, infused or transferred back into the individual from whom the Tissue was collected. Accordingly, the Tissue and the stem cells derived therefrom shall only be used for implantation, transplantation, infusion or transfer back into Patient, exclusively.

(b) Bank will receive and retain possession of the Tissue and the stem cells derived therefrom in accordance with the terms of this Agreement, until this Agreement is terminated in accordance with **Section 6** hereof.

(c) Upon termination of this Agreement, Bank will dispose of the Tissue and/or the stem cells derived therefrom, in the manner set forth in **Section 7** hereof.

(d) Notwithstanding Bank's possession of the Tissue and the stem cells derived therefrom, Patient is and shall remain the owner of the Tissue and the stem cells derived therefrom, until the release or disposition of same by Bank

recipient to whom the stem cells are to be delivered and the date delivery is requested. The transfer or disposal of the stem cells will be performed in accordance with Bank's standard operating procedures in effect at the time of the request. Patient is required to pay all administrative, handling, transportation and delivery charges for the release and transfer of the stem cells prior to shipment thereof, and Bank shall not be required to release, prepare, ship or dispose of the stem cells unless and until any and all payments required to be made under this Agreement have been paid in full.

**5. Fees.** Patient agrees to pay the fees (the "**Fees**") set forth below for the services selected by Patient. Fees must be paid by the due dates. Any taxes that may be due on the Fees are the responsibility of Patient, and the Fees are expressed exclusive of taxes. Bank reserves the right, in its discretion, to make adjustments from time to time to the Initial Fee, Annual Fee, and the Retrieval Fee (as defined below). Bank will notify Patient in writing of any such change in the Fees. If Patient fails to pay the Fees when due, Patient's account may be forwarded to a collection agency for further action. Patient consents to receive autodialed and/or pre-recorded calls from or on behalf of Bank for account collection purposes at the landline and/or mobile telephone numbers provided to Bank. If Patient fails to pay any Fee when due or otherwise fails to comply with the terms and conditions of this Agreement, Bank shall not be obligated to provide, or continue to provide, the Tissue Banking Services or any other services hereunder. The Fees for the Tissue Banking Services and other services provided by Bank are as follows:

(a) An initial fee for the Tissue Banking Services including one year of storage of the stem cells ("**Initial Fee**"), payable in full in advance of the receipt of the Tissue by Bank;

(b) An annual fee for the storage of the stem cells during each year, or portion of a year, after the end of the first year of the term of this Agreement ("**Annual Fee**"), in the amount of $250.00 per year, payable in full before each anniversary of the Enrollment Date; and

(c) A fee for the retrieval and transfer of a single dose of stem cells ("**Retrieval Fee**"), in the amount of $500.00 for each transfer of a single dose of stem cells.

**6. Term and Termination.** The term of this Agreement shall commence on the Enrollment Date, and shall continue until terminated as follows:

(a) Termination by Bank. This Agreement may be terminated by Bank at any time by giving Patient sixty (60) days' advance written notice. In the event this Agreement is terminated by Bank pursuant to this **Section 6(a)** prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Bank shall refund to Patient the pro-rata portion of the Annual Fee for the unused portion of the year after the date of termination, and Patient shall be entitled to retrieve the stem cells by submitting a Retrieval Request Form to Bank prior to the expiration of the sixty (60) day notice period.

(b) Termination by Patient. This Agreement may be terminated by Patient at any time by delivering a written notice of termination to Bank. In the event this Agreement is terminated by Patient pursuant to this **Section 6(b)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(c) Termination upon Death of Patient. This Agreement will terminate immediately upon the death of Patient. If such termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient's estate or heirs shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

(d) Termination due to a Force Majeure Event. This Agreement may be terminated by Bank upon the loss, deterioration or destruction of all or any part of the Tissue and/or the stem cells derived from the Tissue of Patient, from causes or circumstances beyond Bank's reasonable control, including, without limitation, fires, explosions or power outages, natural disasters, disruption of utilities or public services, strikes or labor shortages, terrorist acts or acts of war, acts of governments, or any law, proclamation, ordinance, demand, or requirement of any government agency. In the event this Agreement is terminated by Bank pursuant to this **Section 6(d)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(e) Termination for Non-Payment of Fees. Bank may terminate this Agreement in the event Patient fails to pay when due any Fee payable hereunder. If this Agreement is terminated for non-payment, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

such changes or clarifications, then this Agreement may be modified or amended to bring the affected provisions or terms into compliance with such change. If it is not possible to comply with such changes by amending or modifying this Agreement, then Bank shall have the right to terminate this Agreement, and the Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(g) Automatic Termination. If not otherwise terminated pursuant to **Section 6(a)** through **Section 6(f)** above, this Agreement will automatically terminate at such time as no Tissue and/or stem cells derived from Tissue collected from Patient, remains in the possession of Bank, whether due to the prior retrieval, transfer, or permitted disposal of the Tissue and/or the stem cells derived from the Tissue of Patient. If the automatic termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

**7. Disposal of Tissue and/or Stem Cells.** Bank will be entitled to dispose of the Tissue and/or the stem cells derived from the Tissue in accordance with standard clinical practices and without further notice to the Patient, as follows: (a) upon termination of this Agreement for any reason; and (b) whenever there is excess material remaining following the completion of processing of the Tissue. Such disposal may consist of disposal as medical waste, donation for academic or research purposes, or any other proper purpose as determined by Bank, in its sole discretion.

**8. Communications.** From time to time, Bank may send notices and updates to Patient via U.S. mail or e-mail, which may include marketing communications. Patient consents to electronic mail correspondence and other communications, including for marketing purposes.

**9. Indemnification.** Patient agrees to indemnify, defend and hold harmless Bank and its affiliates, including without limitation their respective shareholders, directors, officers, employees, agents (including marketing agents) and/or other representatives, from and against any and all claims, liabilities, losses, costs and expenses (including attorney's fees and costs of defense), damages, settlements, and judgments arising out of or related to: (a) the provision of, or failure to provide, services by Bank pursuant to this Agreement; and (b) claims concerning rights in and to the Tissue or the stem cells extracted therefrom, the transportation thereof, and the disposition of same.

**10. No Warranty.** Patient acknowledges that neither Bank nor any of its officers, directors, shareholders, executives, employees, agents (including without limitation marketing agents), representatives, consultants, and/or affiliates has made, nor makes herein, any representations or warranties to Patient, express or implied, of any kind or nature, including, without limiting the generality of the foregoing, any representations or warranties with respect to: (i) suitability of stem cells for future treatment of diseases; (ii) successful treatment of diseases through stem cell transplantation; (iii) advantages of stem cell transplantation over other types of treatment; or (iv) successful preservation of stem cells through cryopreservation. Patient acknowledges and agrees that neither Bank nor any of its shareholders, directors, officers, agents, employees or affiliates have made any representation, guaranty or warranty, express or implied, to Patient.

**11. Limitation of Liability.** PATIENT HEREBY ACKNOWLEDGES AND AGREES THAT BANK HAS NO LIABILITY OF ANY KIND IN RESPECT OF BANK'S PERFORMANCE OR FAILURE TO PERFORM UNDER THIS AGREEMENT EXCEPT TO THE EXTENT ATTRIBUTABLE TO BANK'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. IN NO EVENT SHALL BANK'S LIABILITY EXCEED THE TOTAL AMOUNT PAID BY PATIENT TO BANK UNDER THIS AGREEMENT. BANK SHALL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES (INCLUDING, WITHOUT LIMITATION, DAMAGES IN RESPECT OF BREACH OF CONTRACT, WARRANTY, STRICT LIABILITY OR TORT), WHETHER OR NOT BANK HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE LIMITATIONS SET FORTH IN THIS SECTION SHALL APPLY NOTWITHSTANDING THE FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

**12. Assignment and Delegation.** Bank may assign its rights and delegate its obligations under this Agreement at any time and in its sole discretion, without further consent of Patient. Bank may perform services to be provided by it hereunder through subcontractors, agents or managers pursuant to management services agreements. This Agreement is not assignable by Patient without the prior written consent of Bank

against either Bank or Patient under this Agreement will be brought in a court in Miami-Dade County, Florida. Bank and Patient consent to the exclusive jurisdiction of the aforesaid courts and waive any objection to venue therein and irrevocably agree to be bound by any judgment rendered thereby. The prevailing party in any such proceedings will be entitled to an award of its reasonable attorney's fees, paralegal fees, costs and expenses incurred in such proceedings.

**14. Entire Agreement.** This Agreement constitutes the entire Agreement between the parties and supersedes all previous agreements or representations by Bank or Patient, oral or written, relating to the subject matter of this Agreement.

**15. Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

**16. Survival.** All provisions which by their terms require performance after the termination of this Agreement will survive the termination of this Agreement.

**17. Headings.** The headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**18. Notices.** Any notice to be given hereunder by either party to the other shall be in English and in writing, and shall be hand delivered or sent by overnight courier or registered, express mail to the addresses listed on the enrollment documents (or any updated address provided by Patient in writing to Bank or by Bank in writing to Patient, and shall be deemed to be effective two (2) business days after dispatch).

1.

**Amendment.** Except as set forth herein, this Agreement may only be modified or amended by a writing signed by each party and shall be binding on Patient and Bank and their heirs, personal representatives, successors and permitted assigns.

By signing below, you confirm that you have read and fully understand the terms and conditions of this Agreement, including both Part I: Informed Consent and Part II: Patient Service Agreement Terms and Conditions.

**Patient's Signature** *(Only Last Page)*                    **Patient's Initials & Date**

Signed 04/19/2018

Congratulations your sample has been received!

# U.S.STEMCELL
## Stem Cell Banking

**This Certificate is for:**

*Manuel Camacho*

Patient ID:

**Please contact banking@us-stemcell.com
to receive any information about your cells**

**Thank you for choosing U.S. Stem Cell, Inc.**

April 19th, 2018

JULIETA RADICHE
OPERATIONS AND LAB MANAGER

KRISTIN COMELLA
CHIEF SCIENCE OFFICER

13794 NW 4th Street, Suite 212 ● Sunrise, Florida 33325
Phone: 954.825.1500 ● Fax: 954.845.0076

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

Case No.: 0 18-cv-61047 (UU)

UNITED STATES OF AMERICA,

       Plaintiff,

v.

US STEM CELL CLINIC, LLC, a Florida
Profit corporation, and KRISTIN C.
COMELLA and THEODORE GRADEL,
individuals,

       Defendants.

_____/

## DECLARATION OF AMANDA A. CAMACHO

    I, Amanda A. Camacho, hereby make this declaration pursuant to and in accordance with

28 U.S.C. § 1746:

1) I am a resident of Weston, Florida and am over eighteen years of age. I have personal knowledge of the matters set forth herein.

2) I have banked my stem cells (the "Stem Cells") for a storage at a tissue bank operated by US Stem Cell, Inc., pursuant to a Stem Cell Processing and Storage Agreement (the "Storage Agreement"). A copy of my Storage Agreement, together with a Certificate that I obtained from US Stem Cells in connection with the banking of my cells are attached as Exhibit A to this Declaration.

3) The Storage Agreement expressly provides that the Stem Cells stored pursuant to the Storage Agreement are and shall remain my property.

4) I received no notice that my stem cells were in jeopardy or were the subject of an order calling for their destruction, until June 28, 2019 when I was notified by US Stem Cells directly.

5) Prior to the notification I received from US Stem Cell on June 28, 2019, I did not see any press coverage of this action or otherwise knew of the pendency of the action.

I declare under a penalty of perjury that the foregoing is true and correct.

Executed this 16th day of July, 2019

_____
Amanda A. Camacho

This Stem Cell Processing and Storage Agreement (this "**Agreement**") is between ("**you**" or the "**Patient**") and U.S. Stem Cell, Inc., a Florida corporation ("**Bank**") and is entered into this day of , 2017 (the "**Enrollment Date**") for the testing, processing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of your adipose (fat), muscle and/or bone marrow tissue that is collected by your physician (the "**Tissue**"), for the purpose of extracting and storing the stem cells contained in the Tissue, on the terms set forth in this Agreement. This Agreement legally binds Bank and the Patient.

# Part I

## INFORMED CONSENT

By signing below, you acknowledge that you have the legal and mental capacity to sign this document and that you have given your informed consent to your physician to undergo liposuction or another surgical procedure, and that you also have given your consent to the collection of your Tissue by your physician during such procedure. You further acknowledge that your consent includes, but is not limited to: the performance of such procedures as may be necessary or appropriate to transport, test, process and expand the Tissue after removal by your physician, as well as the extraction of the stem cells, if any, that may be present in the Tissue, followed by the cryopreservation of the stem cells. You also acknowledge that you consent to the terms and conditions relating to the transportation, testing, processing, expansion, cryopreservation, storage, withdrawal, transfer, donation, shipping and/or other use of the Tissue, by or on behalf of Bank, that are set forth in this Agreement.

**1. Risks Involved in Storage and Use.** You understand that the cryopreservation of stem cells from the Tissue is a relatively new procedure, and that there are laboratory tests and other studies that have indicated that it is a successful method of preserving stem cells. You understand that the transplantation of stem cells is a relatively new procedure that may offer possible future benefits to you in treating diseases. You also understand that there are no assurances, warranties or guarantees that any such benefits will be obtained.

**2. Collection Risks and Consent**. You have been fully informed about the procedure for collecting the Tissue and hereby authorize and direct your physician, his/her employees and/or contracted health care provider(s) to collect your Tissue during your scheduled procedure, for packaging, transport and delivery to Bank, using a banking kit ("**Banking Kit**") provided to your physician by Bank. You understand that although the collection of the Tissue is a relatively simple procedure, complications may occur during the procedure that could preclude the collection of the Tissue. You acknowledge that you have been fully informed of, accept and agree to the conditions, risks, limitations and costs of collecting, processing, testing and storing of your Tissue, which include, without limitation, the following:

- a risk of contamination when collecting the Tissue;

- there is no guarantee or assurance of the success of the collection procedure;

- the Tissue collected may be insufficient for stem cell extraction or any other purpose;

    - there may be complications that will make it impossible or problematic to collect the Tissue, and your physician may properly refuse to collect the Tissue; and

    - the Tissue that is collected may not be acceptable for any medical use as determined by your physician at the time of collection, or by Bank upon receipt of the Tissue.

Therefore, you agree that your physician may determine in the exercise of his/her professional medical judgment, whether or not to proceed with collecting the Tissue during the procedure, and that the determination of your physician shall be final and binding on you. Nonetheless, being cognizant of the foregoing conditions, risks and limitations, you hereby consent to allow your physician to collect the Tissue and to furnish it to Bank for testing, processing, cryopreserving, storing, and servicing.

**3. Disclosure of Health Information**: Bank will use reasonable procedures to safeguard the confidentiality of health information that you provide to Bank concerning your health. You hereby consent to the use of your confidential health information, including the Tissue testing results, by

**4. Release from Liability.** You hereby for yourself, your agents, attorneys, successors-in- interest, affiliates, representatives, heirs and assigns, irrevocably and unconditionally release and discharge Bank and its shareholders, directors, officers, employees, agents, representatives, affiliates, and/or their respective legal representatives, estates, successors and assigns, from and against any and all claims, causes of action, liabilities, damages, costs, and expenses, known and unknown, that you, or your heirs, assigns, or representatives may incur, resulting from or relating to the processing (after collection by your physician) testing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of the Tissue pursuant to this Agreement. Without limiting the foregoing, you further acknowledge that Bank is not responsible in any way for the actions of others including your physician, medical facility, staff of the medical facility, laboratory staff, and transporters of the Tissue. You understand that by agreeing to this Release from Liability you are giving up rights that you might otherwise have now or in the future to seek money damages or other remedies or relief from Bank, its affiliates, its agents or managers, and other persons and entities referenced in this Release from Liability.

# Part II

## PATIENT SERVICE AGREEMENT TERMS AND CONDITIONS

### 1. Testing, Processing, Expanding, Freezing and Storing the Tissue

Upon receipt of the Tissue, Bank will test and process the Tissue, and will extract, expand, cryopreserve and store the stem cells contained in the Tissue. Bank will perform a visual inspection and conduct a viability test to determine the suitability of the Tissue for stem cell extraction, expansion, cryopreservation and storage. Stem cell extraction, expansion, cryopreservation and storage are collectively referred to as the "**Tissue Banking Services**". If the Tissue is deemed acceptable by Bank, Bank will process the Tissue, extract the stem cells, expand the stem cells, and/or store the stem cells in a cryogenic cellular storage unit until the termination of this Agreement in accordance with the terms set forth herein. Bank's obligations are expressly limited to the services described in this Agreement.

### 2. Patient Representations and Warranties. You represent and warrant that:

(a) You are of legal age;

(b) You have carefully read and understand all of the terms of this Agreement;

(c) Your decision to have the Tissue collected, processed, expanded and stored is a completely voluntary act;

(d) You have had the opportunity to discuss this Agreement with a competent medical professional, who is not an employee of Bank; and

(e) You understand the risks related to collection, expansion, storage and the possible future use of the Tissue.

### 3. Use and Ownership of Tissue.

(a) Patient acknowledges and agrees that the Tissue and the stem cells derived therefrom are for "**Autologous Use**." Autologous Use means that the stem cells derived from the Tissue may only be implanted, transplanted, infused or transferred back into the individual from whom the Tissue was collected. Accordingly, the Tissue and the stem cells derived therefrom shall only be used for implantation, transplantation, infusion or transfer back into Patient, exclusively.

(b) Bank will receive and retain possession of the Tissue and the stem cells derived therefrom in accordance with the terms of this Agreement, until this Agreement is terminated in accordance with **Section 6** hereof.

(c) Upon termination of this Agreement, Bank will dispose of the Tissue and/or the stem cells derived therefrom, in the manner set forth in **Section 7** hereof.

(d) Notwithstanding Bank's possession of the Tissue and the stem cells derived therefrom, Patient is and shall remain the owner of the Tissue and the stem cells derived therefrom, until the release or disposition of same by Bank.

recipient to whom the stem cells are to be delivered and the date delivery is requested. The transfer or disposal of the stem cells will be performed in accordance with Bank's standard operating procedures in effect at the time of the request. Patient is required to pay all administrative, handling, transportation and delivery charges for the release and transfer of the stem cells prior to shipment thereof, and Bank shall not be required to release, prepare, ship or dispose of the stem cells unless and until any and all payments required to be made under this Agreement have been paid in full.

**5. Fees.** Patient agrees to pay the fees (the "**Fees**") set forth below for the services selected by Patient. Fees must be paid by the due dates. Any taxes that may be due on the Fees are the responsibility of Patient, and the Fees are expressed exclusive of taxes. Bank reserves the right, in its discretion, to make adjustments from time to time to the Initial Fee, Annual Fee, and the Retrieval Fee (as defined below). Bank will notify Patient in writing of any such change in the Fees. If Patient fails to pay the Fees when due, Patient's account may be forwarded to a collection agency for further action. Patient consents to receive autodialed and/or pre-recorded calls from or on behalf of Bank for account collection purposes at the landline and/or mobile telephone numbers provided to Bank. If Patient fails to pay any Fee when due or otherwise fails to comply with the terms and conditions of this Agreement, Bank shall not be obligated to provide, or continue to provide, the Tissue Banking Services or any other services hereunder. The Fees for the Tissue Banking Services and other services provided by Bank are as follows:

(a) An initial fee for the Tissue Banking Services including one year of storage of the stem cells ("**Initial Fee**"), payable in full in advance of the receipt of the Tissue by Bank;

(b) An annual fee for the storage of the stem cells during each year, or portion of a year, after the end of the first year of the term of this Agreement ("**Annual Fee**"), in the amount of $250.00 per year, payable in full before each anniversary of the Enrollment Date; and

(c) A fee for the retrieval and transfer of a single dose of stem cells ("**Retrieval Fee**"), in the amount of $500.00 for each transfer of a single dose of stem cells.

**6. Term and Termination.** The term of this Agreement shall commence on the Enrollment Date, and shall continue until terminated as follows:

(a) Termination by Bank. This Agreement may be terminated by Bank at any time by giving Patient sixty (60) days' advance written notice. In the event this Agreement is terminated by Bank pursuant to this **Section 6(a)** prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Bank shall refund to Patient the pro-rata portion of the Annual Fee for the unused portion of the year after the date of termination, and Patient shall be entitled to retrieve the stem cells by submitting a Retrieval Request Form to Bank prior to the expiration of the sixty (60) day notice period.

(b) Termination by Patient. This Agreement may be terminated by Patient at any time by delivering a written notice of termination to Bank. In the event this Agreement is terminated by Patient pursuant to this **Section 6(b)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(c) Termination upon Death of Patient. This Agreement will terminate immediately upon the death of Patient. If such termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient's estate or heirs shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

(d) Termination due to a Force Majeure Event. This Agreement may be terminated by Bank upon the loss, deterioration or destruction of all or any part of the Tissue and/or the stem cells derived from the Tissue of Patient, from causes or circumstances beyond Bank's reasonable control, including, without limitation, fires, explosions or power outages, natural disasters, disruption of utilities or public services, strikes or labor shortages, terrorist acts or acts of war, acts of governments, or any law, proclamation, ordinance, demand, or requirement of any government agency. In the event this Agreement is terminated by Bank pursuant to this **Section 6(d)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(e) Termination for Non-Payment of Fees. Bank may terminate this Agreement in the event Patient fails to pay when due any Fee payable hereunder. If this Agreement is terminated for non-payment, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

such changes or clarifications, then this Agreement may be modified or amended to bring the affected provisions or terms into compliance with such change. If it is not possible to comply with such changes by amending or modifying this Agreement, then Bank shall have the right to terminate this Agreement, and the Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(g) Automatic Termination. If not otherwise terminated pursuant to **Section 6(a)** through **Section 6(f)** above, this Agreement will automatically terminate at such time as no Tissue and/or stem cells derived from Tissue collected from Patient, remains in the possession of Bank, whether due to the prior retrieval, transfer, or permitted disposal of the Tissue and/or the stem cells derived from the Tissue of Patient. If the automatic termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

**7. Disposal of Tissue and/or Stem Cells.** Bank will be entitled to dispose of the Tissue and/or the stem cells derived from the Tissue in accordance with standard clinical practices and without further notice to the Patient, as follows: (a) upon termination of this Agreement for any reason; and (b) whenever there is excess material remaining following the completion of processing of the Tissue. Such disposal may consist of disposal as medical waste, donation for academic or research purposes, or any other proper purpose as determined by Bank, in its sole discretion.

**8. Communications.** From time to time, Bank may send notices and updates to Patient via U.S. mail or e-mail, which may include marketing communications. Patient consents to electronic mail correspondence and other communications, including for marketing purposes.

**9. Indemnification.** Patient agrees to indemnify, defend and hold harmless Bank and its affiliates, including without limitation their respective shareholders, directors, officers, employees, agents (including marketing agents) and/or other representatives, from and against any and all claims, liabilities, losses, costs and expenses (including attorney's fees and costs of defense), damages, settlements, and judgments arising out of or related to: (a) the provision of, or failure to provide, services by Bank pursuant to this Agreement; and (b) claims concerning rights in and to the Tissue or the stem cells extracted therefrom, the transportation thereof, and the disposition of same.

**10. No Warranty.** Patient acknowledges that neither Bank nor any of its officers, directors, shareholders, executives, employees, agents (including without limitation marketing agents), representatives, consultants, and/or affiliates has made, nor makes herein, any representations or warranties to Patient, express or implied, of any kind or nature, including, without limiting the generality of the foregoing, any representations or warranties with respect to: (i) suitability of stem cells for future treatment of diseases; (ii) successful treatment of diseases through stem cell transplantation; (iii) advantages of stem cell transplantation over other types of treatment; or (iv) successful preservation of stem cells through cryopreservation. Patient acknowledges and agrees that neither Bank nor any of its shareholders, directors, officers, agents, employees or affiliates have made any representation, guaranty or warranty, express or implied, to Patient.

**11. Limitation of Liability.** PATIENT HEREBY ACKNOWLEDGES AND AGREES THAT BANK HAS NO LIABILITY OF ANY KIND IN RESPECT OF BANK'S PERFORMANCE OR FAILURE TO PERFORM UNDER THIS AGREEMENT EXCEPT TO THE EXTENT ATTRIBUTABLE TO BANK'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. IN NO EVENT SHALL BANK'S LIABILITY EXCEED THE TOTAL AMOUNT PAID BY PATIENT TO BANK UNDER THIS AGREEMENT. BANK SHALL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES (INCLUDING, WITHOUT LIMITATION, DAMAGES IN RESPECT OF BREACH OF CONTRACT, WARRANTY, STRICT LIABILITY OR TORT), WHETHER OR NOT BANK HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE LIMITATIONS SET FORTH IN THIS SECTION SHALL APPLY NOTWITHSTANDING THE FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

**12. Assignment and Delegation.** Bank may assign its rights and delegate its obligations under this Agreement at any time and in its sole discretion, without further consent of Patient. Bank may perform services to be provided by it hereunder through subcontractors, agents or managers pursuant to management services agreements. This Agreement is not assignable by Patient without the prior written consent of Bank

against either Bank or Patient under this Agreement will be brought in a court in Miami-Dade County, Florida. Bank and Patient consent to the exclusive jurisdiction of the aforesaid courts and waive any objection to venue therein and irrevocably agree to be bound by any judgment rendered thereby. The prevailing party in any such proceedings will be entitled to an award of its reasonable attorney's fees, paralegal fees, costs and expenses incurred in such proceedings.

**14. Entire Agreement.** This Agreement constitutes the entire Agreement between the parties and supersedes all previous agreements or representations by Bank or Patient, oral or written, relating to the subject matter of this Agreement.

**15. Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

**16. Survival.** All provisions which by their terms require performance after the termination of this Agreement will survive the termination of this Agreement.

**17. Headings.** The headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**18. Notices.** Any notice to be given hereunder by either party to the other shall be in English and in writing, and shall be hand delivered or sent by overnight courier or registered, express mail to the addresses listed on the enrollment documents (or any updated address provided by Patient in writing to Bank or by Bank in writing to Patient, and shall be deemed to be effective two (2) business days after dispatch).

1.

**Amendment.** Except as set forth herein, this Agreement may only be modified or amended by a writing signed by each party and shall be binding on Patient and Bank and their heirs, personal representatives, successors and permitted assigns.

By signing below, you confirm that you have read and fully understand the terms and conditions of this Agreement, including both Part I: Informed Consent and Part II: Patient Service Agreement Terms and Conditions.

**Patient's Signature *(Only Last Page)***                                     **Patient's Initials & Date**



Signed 05/11/2018

Congratulations your sample has been received!

# U.S.STEMCELL
## Stem Cell Banking

**This Certificate is for:**

*Amanda Camacho*

Patient ID:

**Please contact** banking@us-stemcell.com
**to receive any information about your cells**

**Thank you for choosing U.S. Stem Cell, Inc.**

May 11th, 2018

JULIETA RADICHE
OPERATIONS AND LAB MANAGER

KRISTIN COMELLA
CHIEF SCIENCE OFFICER

13794 NW 4th Street, Suite 212 • Sunrise, Florida 33325
Phone: 954.845.1500 • Fax: 954.845.0076

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

Case No.: 0 18-cv-61047 (UU)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

US STEM CELL CLINIC, LLC, a Florida
Profit corporation, and KRISTIN C.
COMELLA and THEODORE GRADEL,
individuals,

        Defendants.

_____/

## DECLARATION OF JAYNE FEDERMEYER

I, Jayne Federmeyer, hereby make this declaration pursuant to and in accordance with 28

U.S.C. § 1746:

1) I am a resident of *Brier, WA* and am over eighteen years of age. I have personal knowledge of the matters set forth herein.

2) I have banked my stem cells (the "Stem Cells") for a storage at a tissue bank operated by US Stem Cell, Inc., pursuant to a Stem Cell Processing and Storage Agreement (the "Storage Agreement"). A copy of my Storage Agreement, together with a Certificate that I obtained from US Stem Cells in connection with the banking of my cells are attached as Exhibit A to this Declaration.

3) The Storage Agreement expressly provides that the Stem Cells stored pursuant to the Storage Agreement are and shall remain my property.

4) I received no notice that my stem cells were in jeopardy or were the subject of an order calling for their destruction, until June 28, 2019 when I was notified by US Stem Cells directly.

5) Prior to the notification I received from US Stem Cell on June 28, 2019, I did not see any press coverage of this action or otherwise knew of the pendency of the action.

I declare under a penalty of perjury that the foregoing is true and correct.

Executed this 17th day of July, 2019

*Jayne Federmeyer*

Jayne Federmeyer

Congratulations your sample has been received!



# U.S.STEMCELL
## Stem Cell Banking

**This Certificate is for:**

*Jayne Federmeyer*

Patient ID

**Please contact banking@us-stemcell.com
to receive any information about your cells**

**Thank you for choosing U.S. Stem Cell, Inc.**

August 29th, 2018

JULIETA RADICHE
OPERATIONS AND LAB MANAGER

KRISTIN COMELLA
CHIEF SCIENCE OFFICER

13794 NW 4th Street, Suite 212 ● Sunrise, Florida 33325
Phone: 954.835.1500 ● Fax: 954.845.9076

# STEM CELL PROCESSING AND STORAGE AGREEMENT

This Stem Cell Processing and Storage Agreement (this "**Agreement**") is between ("**you**" or the "**Patient**") and U.S. Stem Cell, Inc., a Florida corporation ("**Bank**") and is entered into this day of , 2018 (the "**Enrollment Date**") for the testing, processing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of your adipose (fat), muscle and/or bone marrow tissue that is collected by your physician (the "**Tissue**"), for the purpose of extracting and storing the stem cells contained in the Tissue, on the terms set forth in this Agreement. This Agreement legally binds Bank and the Patient.

# Part I

## INFORMED CONSENT

By signing below, you acknowledge that you have the legal and mental capacity to sign this document and that you have given your informed consent to your physician to undergo liposuction or another surgical procedure, and that you also have given your consent to the collection of your Tissue by your physician during such procedure. You further acknowledge that your consent includes, but is not limited to: the performance of such procedures as may be necessary or appropriate to transport, test, process and expand the Tissue after removal by your physician, as well as the extraction of the stem cells, if any, that may be present in the Tissue, followed by the cryopreservation of the stem cells. You also acknowledge that you consent to the terms and conditions relating to the transportation, testing, processing, expansion, cryopreservation, storage, withdrawal, transfer, donation, shipping and/or other use of the Tissue, by or on behalf of Bank, that are set forth in this Agreement.

    **1. Risks Involved in Storage and Use.** You understand that the cryopreservation of stem cells from the Tissue is a relatively new procedure, and that there are laboratory tests and other studies that have indicated that it is a successful method of preserving stem cells. You understand that the transplantation of stem cells is a relatively new procedure that may offer possible future benefits to you in treating diseases. You also understand that there are no assurances, warranties or guarantees that any such benefits will be obtained.

    **2. Collection Risks and Consent**. You have been fully informed about the procedure for collecting the Tissue and hereby authorize and direct your physician, his/her employees and/or contracted health care provider(s) to collect your Tissue during your scheduled procedure, for packaging, transport and delivery to Bank, using a banking kit ("**Banking Kit**") provided to your physician by Bank. You understand that although the collection of the Tissue is a relatively simple procedure, complications may occur during the procedure that could preclude the collection of the Tissue. You acknowledge that you have been fully informed of, accept and agree to the conditions, risks, limitations and costs of collecting, processing, testing and storing of your Tissue, which include, without limitation, the following:

        • a risk of contamination when collecting the Tissue;

        • there is no guarantee or assurance of the success of the collection procedure;

        • the Tissue collected may be insufficient for stem cell extraction or any other purpose;

        • there may be complications that will make it impossible or problematic to collect the Tissue, and your physician may properly refuse to collect the Tissue; and

        • the Tissue that is collected may not be acceptable for any medical use as determined by your physician at the time of collection, or by Bank upon receipt of the Tissue.

Therefore, you agree that your physician may determine in the exercise of his/her professional medical judgment, whether or not to proceed with collecting the Tissue during the procedure, and that the determination of your physician shall be final and binding on you. Nonetheless, being cognizant of the foregoing conditions, risks and limitations, you hereby consent to allow your physician to collect the Tissue and to furnish it to Bank for testing, processing, cryopreserving, storing, and servicing.

    **3. Disclosure of Health Information**: Bank will use reasonable procedures to safeguard the confidentiality of health information that you provide to Bank concerning your health. You hereby consent to the use of your confidential health information, including the Tissue testing results, by

of its obligations under this Agreement or as otherwise may be permitted or required by applicable laws or regulations.

**4. Release from Liability.** You hereby for yourself, your agents, attorneys, successors-in- interest, affiliates, representatives, heirs and assigns, irrevocably and unconditionally release and discharge Bank and its shareholders, directors, officers, employees, agents, representatives, affiliates, and/or their respective legal representatives, estates, successors and assigns, from and against any and all claims, causes of action, liabilities, damages, costs, and expenses, known and unknown, that you, or your heirs, assigns, or representatives may incur, resulting from or relating to the processing (after collection by your physician), testing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of the Tissue pursuant to this Agreement. Without limiting the foregoing, you further acknowledge that Bank is not responsible in any way for the actions of others including your physician, medical facility, staff of the medical facility, laboratory staff, and transporters of the Tissue. You understand that by agreeing to this Release from Liability you are giving up rights that you might otherwise have now or in the future to seek money damages or other remedies or relief from Bank, its affiliates, its agents or managers, and other persons and entities referenced in this Release from Liability.

# Part II

## PATIENT SERVICE AGREEMENT TERMS AND CONDITIONS

### 1. Testing, Processing, Expanding, Freezing and Storing the Tissue

Upon receipt of the Tissue, Bank will test and process the Tissue, and will extract, expand, cryopreserve and store the stem cells contained in the Tissue. Bank will perform a visual inspection and conduct a viability test to determine the suitability of the Tissue for stem cell extraction, expansion, cryopreservation and storage. Stem cell extraction, expansion, cryopreservation and storage are collectively referred to as the "**Tissue Banking Services**". If the Tissue is deemed acceptable by Bank, Bank will process the Tissue, extract the stem cells, expand the stem cells, and/or store the stem cells in a cryogenic cellular storage unit until the termination of this Agreement in accordance with the terms set forth herein. Bank's obligations are expressly limited to the services described in this Agreement.

### 2. Patient Representations and Warranties. You represent and warrant that:

(a) You are of legal age;

(b) You have carefully read and understand all of the terms of this Agreement;

(c) Your decision to have the Tissue collected, processed, expanded and stored is a completely voluntary act;

(d) You have had the opportunity to discuss this Agreement with a competent medical professional, who is not an employee of Bank; and

(e) You understand the risks related to collection, expansion, storage and the possible future use of the Tissue.

### 3. Use and Ownership of Tissue.

(a) Patient acknowledges and agrees that the Tissue and the stem cells derived therefrom are for "**Autologous Use.**" Autologous Use means that the stem cells derived from the Tissue may only be implanted, transplanted, infused or transferred back into the individual from whom the Tissue was collected. Accordingly, the Tissue and the stem cells derived therefrom shall only be used for implantation, transplantation, infusion or transfer back into Patient, exclusively.

(b) Bank will receive and retain possession of the Tissue and the stem cells derived therefrom in accordance with the terms of this Agreement, until this Agreement is terminated in accordance with **Section 6** hereof.

(c) Upon termination of this Agreement, Bank will dispose of the Tissue and/or the stem cells derived therefrom, in the manner set forth in **Section 7** hereof.

(d) Notwithstanding Bank's possession of the Tissue and the stem cells derived therefrom, Patient is and shall remain the owner of the Tissue and the stem cells derived therefrom, until the release or disposition of

two (2) weeks' advance written notice to Bank. The request must be made on a request form provided by Bank (a "Retrieval Request Form"), must be signed by the Patient, must include the name and address of the recipient to whom the stem cells are to be delivered and the date delivery is requested. The transfer or disposal of the stem cells will be performed in accordance with Bank's standard operating procedures in effect at the time of the request. Patient is required to pay all administrative, handling, transportation and delivery charges for the release and transfer of the stem cells prior to shipment thereof, and Bank shall not be required to release, prepare, ship or dispose of the stem cells unless and until any and all payments required to be made under this Agreement have been paid in full.

**5. Fees**. Patient agrees to pay the fees (the "**Fees**") set forth below for the services selected by Patient. Fees must be paid by the due dates. Any taxes that may be due on the Fees are the responsibility of Patient, and the Fees are expressed exclusive of taxes. Bank reserves the right, in its discretion, to make adjustments from time to time to the Initial Fee, Annual Fee, and the Retrieval Fee (as defined below). Bank will notify Patient in writing of any such change in the Fees. If Patient fails to pay the Fees when due, Patient's account may be forwarded to a collection agency for further action. Patient consents to receive autodialed and/or pre-recorded calls from or on behalf of Bank for account collection purposes at the landline and/or mobile telephone numbers provided to Bank. If Patient fails to pay any Fee when due or otherwise fails to comply with the terms and conditions of this Agreement, Bank shall not be obligated to provide, or continue to provide, the Tissue Banking Services or any other services hereunder. The Fees for the Tissue Banking Services and other services provided by Bank are as follows:

(a) An initial fee for the Tissue Banking Services including one year of storage of the stem cells ("**Initial Fee**"), payable in full in advance of the receipt of the Tissue by Bank;

(b) An annual fee for the storage of the stem cells during each year, or portion of a year, after the end of the first year of the term of this Agreement ("**Annual Fee**"), in the amount of $250.00 per year, payable in full before each anniversary of the Enrollment Date; and

(c) A fee for the retrieval and transfer of a single dose of stem cells ("**Retrieval Fee**"), in the amount of $500.00 for each transfer of a single dose of stem cells.

**6. Term and Termination.** The term of this Agreement shall commence on the Enrollment Date, and shall continue until terminated as follows:

(a) Termination by Bank. This Agreement may be terminated by Bank at any time by giving Patient sixty (60) days' advance written notice. In the event this Agreement is terminated by Bank pursuant to this **Section 6(a)** prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Bank shall refund to Patient the pro-rata portion of the Annual Fee for the unused portion of the year after the date of termination, and Bank shall be entitled to retrieve the stem cells by submitting a Retrieval Request Form to Bank prior to the expiration of the sixty (60) day notice period.

(b) Termination by Patient. This Agreement may be terminated by Patient at any time by delivering a written notice of termination to Bank. In the event this Agreement is terminated by Patient pursuant to this **Section 6(b)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(c) Termination upon Death of Patient. This Agreement will terminate immediately upon the death of Patient. If such termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient's estate or heirs shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

(d) Termination due to a Force Majeure Event. This Agreement may be terminated by Bank upon the loss, deterioration or destruction of all or any part of the Tissue and/or the stem cells derived from the Tissue of Patient, from causes or circumstances beyond Bank's reasonable control, including, without limitation, fires, explosions or power outages, natural disasters, disruption of utilities or public services, strikes or labor shortages, terrorist acts or acts of war, acts of governments, or any law, proclamation, ordinance, demand, or requirement of any government agency. In the event this Agreement is terminated by Bank pursuant to this **Section 6(d)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(e) Termination for Non-Payment of Fees. Bank may terminate this Agreement in the event Patient fails to pay when due any Fee payable hereunder. If this Agreement is terminated for non-payment, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

or provisions of this Agreement could be deemed to be in violation or contravention of applicable law or regulations, or Bank's ability to be compensated for its services will be materially and adversely affected by such changes or clarifications, then this Agreement may be modified or amended to bring the affected provisions or terms into compliance with such change. If it is not possible to comply with such changes by amending or modifying this Agreement, then Bank shall have the right to terminate this Agreement, and the Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(g) Automatic Termination. If not otherwise terminated pursuant to **Section 6(a)** through **Section 6(f)** above, this Agreement will automatically terminate at such time as no Tissue and/or stem cells derived from Tissue collected from Patient, remains in the possession of Bank, whether due to the prior retrieval, transfer, or permitted disposal of the Tissue and/or the stem cells derived from the Tissue of Patient. If the automatic termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

**7. Disposal of Tissue and/or Stem Cells.** Bank will be entitled to dispose of the Tissue and/or the stem cells derived from the Tissue in accordance with standard clinical practices and without further notice to the Patient, as follows: (a) upon termination of this Agreement for any reason; and (b) whenever there is excess material remaining following the completion of processing of the Tissue. Such disposal may consist of disposal as medical waste, donation for academic or research purposes, or any other proper purpose as determined by Bank, in its sole discretion.

**8. Communications.** From time to time, Bank may send notices and updates to Patient via U.S. mail or e-mail, which may include marketing communications. Patient consents to electronic mail correspondence and other communications, including for marketing purposes.

**9. Indemnification.** Patient agrees to indemnify, defend and hold harmless Bank and its affiliates, including without limitation their respective shareholders, directors, officers, employees, agents (including marketing agents) and/or other representatives, from and against any and all claims, liabilities, losses, costs and expenses (including attorney's fees and costs of defense), damages, settlements, and judgments arising out of or related to: (a) the provision of, or failure to provide, services by Bank pursuant to this Agreement; and (b) claims concerning rights in and to the Tissue or the stem cells extracted therefrom, the transportation thereof, and the disposition of same.

**10. No Warranty.** Patient acknowledges that neither Bank nor any of its officers, directors, shareholders, executives, employees, agents (including without limitation marketing agents), representatives, consultants, and/or affiliates has made, nor makes herein, any representations or warranties to Patient, express or implied, of any kind or nature, including, without limiting the generality of the foregoing, any representations or warranties with respect to: (i) suitability of stem cells for future treatment of diseases; (ii) successful treatment of diseases through stem cell transplantation; (iii) advantages of stem cell transplantation over other types of treatment; or (iv) successful preservation of stem cells through cryopreservation. Patient acknowledges and agrees that neither Bank nor any of its shareholders, directors, officers, agents, employees or affiliates have made any representation, guaranty or warranty, express or implied, to Patient.

**11. Limitation of Liability.** PATIENT HEREBY ACKNOWLEDGES AND AGREES THAT BANK HAS NO LIABILITY OF ANY KIND IN RESPECT OF BANK'S PERFORMANCE OR FAILURE TO PERFORM UNDER THIS AGREEMENT EXCEPT TO THE EXTENT ATTRIBUTABLE TO BANK'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. IN NO EVENT SHALL BANK'S LIABILITY EXCEED THE TOTAL AMOUNT PAID BY PATIENT TO BANK UNDER THIS AGREEMENT. BANK SHALL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES (INCLUDING, WITHOUT LIMITATION, DAMAGES IN RESPECT OF BREACH OF CONTRACT, WARRANTY, STRICT LIABILITY OR TORT), WHETHER OR NOT BANK HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE LIMITATIONS SET FORTH IN THIS SECTION SHALL APPLY NOTWITHSTANDING THE FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

**12. Assignment and Delegation.** Bank may assign its rights and delegate its obligations under this Agreement at any time and in its sole discretion, without further consent of Patient. Bank may perform services to be provided by it hereunder through subcontractors, agents or managers pursuant to management services agreements. This Agreement is not assignable by Patient without the prior written consent of Bank.

**13. Governing Law, Jurisdiction and Venue; Attorney's Fees.** This Agreement is governed by the laws of the State of Florida without regard to its conflict of laws principles. Any judicial proceedings brought against either Bank or Patient under this Agreement will be brought in a court in Miami-Dade County, Florida. Bank and Patient consent to the exclusive jurisdiction of the aforesaid courts and waive any objection to venue therein and irrevocably agree to be bound by any judgment rendered thereby. The prevailing party in any such proceedings will be entitled to an award of its reasonable attorney's fees, paralegal fees, costs and expenses incurred in such proceedings.

**14. Entire Agreement.** This Agreement constitutes the entire Agreement between the parties and supersedes all previous agreements or representations by Bank or Patient, oral or written, relating to the subject matter of this Agreement.

**15. Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

**16. Survival.** All provisions which by their terms require performance after the termination of this Agreement will survive the termination of this Agreement.

**17. Headings.** The headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**18. Notices.** Any notice to be given hereunder by either party to the other shall be in English and in writing, and shall be hand delivered or sent by overnight courier or registered, express mail to the addresses listed on the enrollment documents (or any updated address provided by Patient in writing to Bank or by Bank in writing to Patient, and shall be deemed to be effective two (2) business days after dispatch).

1.

**Amendment.** Except as set forth herein, this Agreement may only be modified or amended by a writing signed by each party and shall be binding on Patient and Bank and their heirs, personal representatives, successors and permitted assigns.

By signing below, you confirm that you have read and fully understand the terms and conditions of this Agreement, including both Part I: Informed Consent and Part II: Patient Service Agreement Terms and Conditions.

**Patient's Signature *(Only Last Page)***         **Patient's Initials & Date**



Signed 08/15/2018

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

Case No.: 0 18-cv-61047 (UU)

UNITED STATES OF AMERICA,

       Plaintiff,

v.

US STEM CELL CLINIC, LLC, a Florida
Profit corporation, and KRISTIN C.
COMELLA and THEODORE GRADEL,
individuals,

       Defendants.

_____/

### DECLARATION OF JEAN MARIE HEWITT

    I, Jean Marie Hewitt, hereby make this declaration pursuant to and in accordance with 28

U.S.C. § 1746:

1) I am a resident of _Salt Lake, UT_ and am over eighteen years of age. I have personal
   knowledge of the matters set forth herein.

2) I have banked my stem cells (the "Stem Cells") for a storage at a tissue bank operated
   by US Stem Cell, Inc., pursuant to a Stem Cell Processing and Storage Agreement (the
   "Storage Agreement"). A copy of my Storage Agreement, together with a Certificate
   that I obtained from US Stem Cells in connection with the banking of my cells are
   attached as Exhibit A to this Declaration.

3) The Storage Agreement expressly provides that the Stem Cells stored pursuant to the
   Storage  Agreement are and shall remain my property.

4) I received no notice that my stem cells were in jeopardy or were the subject of an order
   calling for their destruction, until June 28, 2019 when I was notified by US Stem Cells
   directly.

5) Prior to the notification I received from US Stem Cell on June 28, 2019, I did not see any press coverage of this action or otherwise knew of the pendency of the action.

I declare under a penalty of perjury that the foregoing is true and correct.

Executed this 17th day of July, 2019

_Jean Marie Hewitt_

Jean Marie Hewitt

**Congratulations your sample has been received!**

# U.S.STEMCELL

## Stem Cell Banking

**This Certificate is for:**

*Jean M. Hewitt*

Patient ID: ████

**Please contact banking@us-stemcell.com
to receive any information about your cells**

**Thank you for choosing U.S. Stem Cell, Inc.**

December 5th, 2018

---
JULIETA RADICHE
OPERATIONS AND LAB MANAGER

---
KRISTIN COMELLA
CHIEF SCIENCE OFFICER

13794 NW 4th Street, Suite 212 ● Sunrise, Florida 33325
Phone: 954.835.1500 ● Fax: 954.845.9976

# STEM CELL PROCESSING AND STORAGE AGREEMENT

This Stem Cell Processing and Storage Agreement (this "**Agreement**") is between ("**you**" or the "**Patient**") and U.S. Stem Cell, Inc., a Florida corporation ("**Bank**") and is entered into this day of , 2018 (the "**Enrollment Date**") for the testing, processing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of your adipose (fat), muscle and/or bone marrow tissue that is collected by your physician (the "**Tissue**"), for the purpose of extracting and storing the stem cells contained in the Tissue, on the terms set forth in this Agreement. This Agreement legally binds Bank and the Patient.

# Part I

## INFORMED CONSENT

By signing below, you acknowledge that you have the legal and mental capacity to sign this document and that you have given your informed consent to your physician to undergo liposuction or another surgical procedure, and that you also have given your consent to the collection of your Tissue by your physician during such procedure. You further acknowledge that your consent includes, but is not limited to: the performance of such procedures as may be necessary or appropriate to transport, test, process and expand the Tissue after removal by your physician, as well as the extraction of the stem cells, if any, that may be present in the Tissue, followed by the cryopreservation of the stem cells. You also acknowledge that you consent to the terms and conditions relating to the transportation, testing, processing, expansion, cryopreservation, storage, withdrawal, transfer, donation, shipping and/or other use of the Tissue, by or on behalf of Bank, that are set forth in this Agreement.

**1. Risks Involved in Storage and Use.** You understand that the cryopreservation of stem cells from the Tissue is a relatively new procedure, and that there are laboratory tests and other studies that have indicated that it is a successful method of preserving stem cells. You understand that the transplantation of stem cells is a relatively new procedure that may offer possible future benefits to you in treating diseases. You also understand that there are no assurances, warranties or guarantees that any such benefits will be obtained.

**2. Collection Risks and Consent.** You have been fully informed about the procedure for collecting the Tissue and hereby authorize and direct your physician, his/her employees and/or contracted health care provider(s) to collect your Tissue during your scheduled procedure, for packaging, transport and delivery to Bank, using a banking kit ("**Banking Kit**") provided to your physician by Bank. You understand that although the collection of the Tissue is a relatively simple procedure, complications may occur during the procedure that could preclude the collection of the Tissue. You acknowledge that you have been fully informed of, accept and agree to the conditions, risks, limitations and costs of collecting, processing, testing and storing of your Tissue, which include, without limitation, the following:

- a risk of contamination when collecting the Tissue;

- there is no guarantee or assurance of the success of the collection procedure;

- the Tissue collected may be insufficient for stem cell extraction or any other purpose;

    - there may be complications that will make it impossible or problematic to collect the Tissue, and your physician may properly refuse to collect the Tissue; and

    - the Tissue that is collected may not be acceptable for any medical use as determined by your physician at the time of collection, or by Bank upon receipt of the Tissue.

Therefore, you agree that your physician may determine in the exercise of his/her professional medical judgment, whether or not to proceed with collecting the Tissue during the procedure, and that the determination of your physician shall be final and binding on you. Nonetheless, being cognizant of the foregoing conditions, risks and limitations, you hereby consent to allow your physician to collect the Tissue and to furnish it to Bank for testing, processing, cryopreserving, storing, and servicing.

**3. Disclosure of Health Information**: Bank will use reasonable procedures to safeguard the confidentiality of health information that you provide to Bank concerning your health. You hereby consent to the use of your confidential health information, including the Tissue testing results, by

of its obligations under this Agreement or as otherwise may be permitted or required by applicable laws or regulations.

**4. Release from Liability.** You hereby for yourself, your agents, attorneys, successors-in- interest, affiliates, representatives, heirs and assigns, irrevocably and unconditionally release and discharge Bank and its shareholders, directors, officers, employees, agents, representatives, affiliates, and/or their respective legal representatives, estates, successors and assigns, from and against any and all claims, causes of action, liabilities, damages, costs, and expenses, known and unknown, that you, or your heirs, assigns, or representatives may incur, resulting from or relating to the processing (after collection by your physician), testing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of the Tissue pursuant to this Agreement. Without limiting the foregoing, you further acknowledge that Bank is not responsible in any way for the actions of others including your physician, medical facility, staff of the medical facility, laboratory staff, and transporters of the Tissue. You understand that by agreeing to this Release from Liability you are giving up rights that you might otherwise have now or in the future to seek money damages or other remedies or relief from Bank, its affiliates, its agents or managers, and other persons and entities referenced in this Release from Liability.

# Part II

## PATIENT SERVICE AGREEMENT TERMS AND CONDITIONS

### 1. Testing, Processing, Expanding, Freezing and Storing the Tissue

Upon receipt of the Tissue, Bank will test and process the Tissue, and will extract, expand, cryopreserve and store the stem cells contained in the Tissue. Bank will perform a visual inspection and conduct a viability test to determine the suitability of the Tissue for stem cell extraction, expansion, cryopreservation and storage. Stem cell extraction, expansion, cryopreservation and storage are collectively referred to as the "**Tissue Banking Services**". If the Tissue is deemed acceptable by Bank, Bank will process the Tissue, extract the stem cells, expand the stem cells, and/or store the stem cells in a cryogenic cellular storage unit until the termination of this Agreement in accordance with the terms set forth herein. Bank's obligations are expressly limited to the services described in this Agreement.

### 2. Patient Representations and Warranties. You represent and warrant that:

(a) You are of legal age;

 (b) You have carefully read and understand all of the terms of this Agreement;

(c) Your decision to have the Tissue collected, processed, expanded and stored is a completely voluntary act;

(d) You have had the opportunity to discuss this Agreement with a competent medical professional, who is not an employee of Bank; and

(e) You understand the risks related to collection, expansion, storage and the possible future use of the Tissue.

### 3. Use and Ownership of Tissue.

(a) Patient acknowledges and agrees that the Tissue and the stem cells derived therefrom are for "**Autologous Use**." Autologous Use means that the stem cells derived from the Tissue may only be implanted, transplanted, infused or transferred back into the individual from whom the Tissue was collected. Accordingly, the Tissue and the stem cells derived therefrom shall only be used for implantation, transplantation, infusion or transfer back into Patient, exclusively.

(b) Bank will receive and retain possession of the Tissue and the stem cells derived therefrom in accordance with the terms of this Agreement, until this Agreement is terminated in accordance with **Section 6** hereof.

(c) Upon termination of this Agreement, Bank will dispose of the Tissue and/or the stem cells derived therefrom, in the manner set forth in **Section 7** hereof.

(d) Notwithstanding Bank's possession of the Tissue and the stem cells derived therefrom, Patient is and shall remain the owner of the Tissue and the stem cells derived therefrom, until the release or disposition of

two (2) weeks' advance written notice to Bank. The request must be made on a request form provided by Bank (a "Retrieval Request Form"), must be signed by the Patient, must include the name and address of the recipient to whom the stem cells are to be delivered and the date delivery is requested. The transfer or disposal of the stem cells will be performed in accordance with Bank's standard operating procedures in effect at the time of the request. Patient is required to pay all administrative, handling, transportation and delivery charges for the release and transfer of the stem cells prior to shipment thereof, and Bank shall not be required to release, prepare, ship or dispose of the stem cells unless and until any and all payments required to be made under this Agreement have been paid in full.

**5. Fees.** Patient agrees to pay the fees (the "**Fees**") set forth below for the services selected by Patient. Fees must be paid by the due dates. Any taxes that may be due on the Fees are the responsibility of Patient, and the Fees are expressed exclusive of taxes. Bank reserves the right, in its discretion, to make adjustments from time to time to the Initial Fee, Annual Fee, and the Retrieval Fee (as defined below). Bank will notify Patient in writing of any such change in the Fees. If Patient fails to pay the Fees when due, Patient's account may be forwarded to a collection agency for further action. Patient consents to receive autodialed and/or pre-recorded calls from or on behalf of Bank for account collection purposes at the landline and/or mobile telephone numbers provided to Bank. If Patient fails to pay any Fee when due or otherwise fails to comply with the terms and conditions of this Agreement, Bank shall not be obligated to provide, or continue to provide, the Tissue Banking Services or any other services hereunder. The Fees for the Tissue Banking Services and other services provided by Bank are as follows:

(a) An initial fee for the Tissue Banking Services including one year of storage of the stem cells ("**Initial Fee**"), payable in full in advance of the receipt of the Tissue by Bank;

(b) An annual fee for the storage of the stem cells during each year, or portion of a year, after the end of the first year of the term of this Agreement ("**Annual Fee**"), in the amount of $250.00 per year, payable in full before each anniversary of the Enrollment Date; and

(c) A fee for the retrieval and transfer of a single dose of stem cells ("**Retrieval Fee**"), in the amount of $500.00 for each transfer of a single dose of stem cells.

**6. Term and Termination.** The term of this Agreement shall commence on the Enrollment Date, and shall continue until terminated as follows:

(a) Termination by Bank. This Agreement may be terminated by Bank at any time by giving Patient sixty (60) days' advance written notice. In the event this Agreement is terminated by Bank pursuant to this **Section 6(a)** prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Bank shall refund to Patient the pro-rata portion of the Annual Fee for the unused portion of the year after the date of termination, and Patient shall be entitled to retrieve the stem cells by submitting a Retrieval Request Form to Bank prior to the expiration of the sixty (60) day notice period.

(b) Termination by Patient. This Agreement may be terminated by Patient at any time by delivering a written notice of termination to Bank. In the event this Agreement is terminated by Patient pursuant to this **Section 6(b)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(c) Termination upon Death of Patient. This Agreement will terminate immediately upon the death of Patient. If such termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient's estate or heirs shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

(d) Termination due to a Force Majeure Event. This Agreement may be terminated by Bank upon the loss, deterioration or destruction of all or any part of the Tissue and/or the stem cells derived from the Tissue of Patient, from causes or circumstances beyond Bank's reasonable control, including, without limitation, fires, explosions or power outages, natural disasters, disruption of utilities or public services, strikes or labor shortages, terrorist acts or acts of war, acts of governments, or any law, proclamation, ordinance, demand, or requirement of any government agency. In the event this Agreement is terminated by Bank pursuant to this **Section 6(d)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(e) Termination for Non-Payment of Fees. Bank may terminate this Agreement in the event Patient fails to pay when due any Fee payable hereunder. If this Agreement is terminated for non-payment, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

or provisions of this Agreement could be deemed to be in violation or contravention of applicable law or regulations, or Bank's ability to be compensated for its services will be materially and adversely affected by such changes or clarifications, then this Agreement may be modified or amended to bring the affected provisions or terms into compliance with such change. If it is not possible to comply with such changes by amending or modifying this Agreement, then Bank shall have the right to terminate this Agreement, and the Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(g) Automatic Termination. If not otherwise terminated pursuant to **Section 6(a)** through **Section 6(f)** above, this Agreement will automatically terminate at such time as no Tissue and/or stem cells derived from Tissue collected from Patient, remains in the possession of Bank, whether due to the prior retrieval, transfer, or permitted disposal of the Tissue and/or the stem cells derived from the Tissue of Patient. If the automatic termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

**7. Disposal of Tissue and/or Stem Cells.** Bank will be entitled to dispose of the Tissue and/or the stem cells derived from the Tissue in accordance with standard clinical practices and without further notice to the Patient, as follows: (a) upon termination of this Agreement for any reason; and (b) whenever there is excess material remaining following the completion of processing of the Tissue. Such disposal may consist of disposal as medical waste, donation for academic or research purposes, or any other proper purpose as determined by Bank, in its sole discretion.

**8. Communications.** From time to time, Bank may send notices and updates to Patient via U.S. mail or e-mail, which may include marketing communications. Patient consents to electronic mail correspondence and other communications, including for marketing purposes.

**9. Indemnification.** Patient agrees to indemnify, defend and hold harmless Bank and its affiliates, including without limitation their respective shareholders, directors, officers, employees, agents (including marketing agents) and/or other representatives, from and against any and all claims, liabilities, losses, costs and expenses (including attorney's fees and costs of defense), damages, settlements, and judgments arising out of or related to: (a) the provision of, or failure to provide, services by Bank pursuant to this Agreement; and (b) claims concerning rights in and to the Tissue or the stem cells extracted therefrom, the transportation thereof, and the disposition of same.

**10. No Warranty.** Patient acknowledges that neither Bank nor any of its officers, directors, shareholders, executives, employees, agents (including without limitation marketing agents), representatives, consultants, and/or affiliates has made, nor makes herein, any representations or warranties to Patient, express or implied, of any kind or nature, including, without limiting the generality of the foregoing, any representations or warranties with respect to: (i) suitability of stem cells for future treatment of diseases; (ii) successful treatment of diseases through stem cell transplantation; (iii) advantages of stem cell transplantation over other types of treatment; or (iv) successful preservation of stem cells through cryopreservation. Patient acknowledges and agrees that neither Bank nor any of its shareholders, directors, officers, agents, employees or affiliates have made any representation, guaranty or warranty, express or implied, to Patient.

**11. Limitation of Liability.** PATIENT HEREBY ACKNOWLEDGES AND AGREES THAT BANK HAS NO LIABILITY OF ANY KIND IN RESPECT OF BANK'S PERFORMANCE OR FAILURE TO PERFORM UNDER THIS AGREEMENT EXCEPT TO THE EXTENT ATTRIBUTABLE TO BANK'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. IN NO EVENT SHALL BANK'S LIABILITY EXCEED THE TOTAL AMOUNT PAID BY PATIENT TO BANK UNDER THIS AGREEMENT. BANK SHALL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES (INCLUDING, WITHOUT LIMITATION, DAMAGES IN RESPECT OF BREACH OF CONTRACT, WARRANTY, STRICT LIABILITY OR TORT), WHETHER OR NOT BANK HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE LIMITATIONS SET FORTH IN THIS SECTION SHALL APPLY NOTWITHSTANDING THE FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

**12. Assignment and Delegation.** Bank may assign its rights and delegate its obligations under this Agreement at any time and in its sole discretion, without further consent of Patient. Bank may perform services to be provided by it hereunder through subcontractors, agents or managers pursuant to management

**13. Governing Law, Jurisdiction and Venue; Attorney's Fees.** This Agreement is governed by the laws of the State of Florida without regard to its conflict of laws principles. Any judicial proceedings brought against either Bank or Patient under this Agreement will be brought in a court in Miami-Dade County, Florida. Bank and Patient consent to the exclusive jurisdiction of the aforesaid courts and waive any objection to venue therein and irrevocably agree to be bound by any judgment rendered thereby. The prevailing party in any such proceedings will be entitled to an award of its reasonable attorney's fees, paralegal fees, costs and expenses incurred in such proceedings.

**14. Entire Agreement.** This Agreement constitutes the entire Agreement between the parties and supersedes all previous agreements or representations by Bank or Patient, oral or written, relating to the subject matter of this Agreement.

**15. Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

**16. Survival.** All provisions which by their terms require performance after the termination of this Agreement will survive the termination of this Agreement.

**17. Headings.** The headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**18. Notices.** Any notice to be given hereunder by either party to the other shall be in English and in writing, and shall be hand delivered or sent by overnight courier or registered, express mail to the addresses listed on the enrollment documents (or any updated address provided by Patient in writing to Bank or by Bank in writing to Patient, and shall be deemed to be effective two (2) business days after dispatch).

1.

**Amendment.** Except as set forth herein, this Agreement may only be modified or amended by a writing signed by each party and shall be binding on Patient and Bank and their heirs, personal representatives, successors and permitted assigns.

By signing below, you confirm that you have read and fully understand the terms and conditions of this Agreement, including both Part I: Informed Consent and Part II: Patient Service Agreement Terms and Conditions.

**Patient's Signature *(Only Last Page)***          **Patient's Initials & Date**



Signed 11/07/2018

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FT. LAUDERDALE DIVISION

Case No.: 0 18-cv-61047 (UU)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

US STEM CELL CLINIC, LLC, a Florida
Profit corporation, and KRISTIN C.
COMELLA and THEODORE GRADEL,
individuals,

        Defendants.

_____/

## DECLARATION OF ALLEN J. HEWITT

I, Allen J. Hewitt, hereby make this declaration pursuant to and in accordance with 28

U.S.C. § 1746:

1) I am a resident of *Salt Lake, UT* and am over eighteen years of age. I have personal knowledge of the matters set forth herein.

2) I have banked my stem cells (the "Stem Cells") for a storage at a tissue bank operated by US Stem Cell, Inc., pursuant to a Stem Cell Processing and Storage Agreement (the "Storage Agreement"). A copy of my Storage Agreement, together with a Certificate that I obtained from US Stem Cells in connection with the banking of my cells are attached as Exhibit A to this Declaration.

3) The Storage Agreement expressly provides that the Stem Cells stored pursuant to the Storage Agreement are and shall remain my property.

4) I received no notice that my stem cells were in jeopardy or were the subject of an order calling for their destruction, until June 28, 2019 when I was notified by US Stem Cells directly.

5) Prior to the notification I received from US Stem Cell on June 28, 2019, I did not see any press coverage of this action or otherwise knew of the pendency of the action.

I declare under a penalty of perjury that the foregoing is true and correct.

Executed this 17th day of July, 2019

Allen J. Hewitt

Congratulations your sample has been received!



# U.S.STEMCELL

## Stem Cell Banking

**This Certificate is for:**

*Allen John Hewitt*

Patient ID:

**Please contact banking@us-stemcell.com to receive any information about your cells**

**Thank you for choosing U.S. Stem Cell, Inc.**

December 5th, 2018

_____
JULIETA RADICHE
OPERATIONS AND LAB MANAGER

_____
KRISTIN COMELLA
CHIEF SCIENCE OFFICER

13794 NW 4th Street, Suite 212 • Sunrise, Florida 33325
Phone: 954.835.1500 • Fax: 954.845.9976
www.us-stemcell.com

**STEM CELL PROCESSING AND STORAGE AGREEMENT**

This Stem Cell Processing and Storage Agreement (this "**Agreement**") is between
("**you**" or the "**Patient**") and U.S. Stem Cell, Inc., a Florida corporation ("**Bank**") and is entered into this day of ,
2018 (the "**Enrollment Date**") for the testing, processing, expanding, freezing, storing, withdrawing, transferring,
donating, shipping, transporting and/or other use of your adipose (fat), muscle and/or bone marrow tissue that is
collected by your physician (the "**Tissue**"), for the purpose of extracting and storing the stem cells contained in
the Tissue, on the terms set forth in this Agreement. This Agreement legally binds Bank and the Patient.

# Part I

## INFORMED CONSENT

By signing below, you acknowledge that you have the legal and mental capacity to sign this document and that you
have given your informed consent to your physician to undergo liposuction or another surgical procedure, and that
you also have given your consent to the collection of your Tissue by your physician during such procedure. You
further acknowledge that your consent includes, but is not limited to: the performance of such procedures as may
be necessary or appropriate to transport, test, process and expand the Tissue after removal by your physician, as
well as the extraction of the stem cells, if any, that may be present in the Tissue, followed by the cryopreservation
of the stem cells. You also acknowledge that you consent to the terms and conditions relating to the transportation,
testing, processing, expansion, cryopreservation, storage, withdrawal, transfer, donation, shipping and/or other
use of the Tissue, by or on behalf of Bank, that are set forth in this Agreement.

**1. Risks Involved in Storage and Use.** You understand that the cryopreservation of stem cells from the
Tissue is a relatively new procedure, and that there are laboratory tests and other studies that have
indicated that it is a successful method of preserving stem cells. You understand that the transplantation
of stem cells is a relatively new procedure that may offer possible future benefits to you in treating
diseases. You also understand that there are no assurances, warranties or guarantees that any such
benefits will be obtained.

**2. Collection Risks and Consent.** You have been fully informed about the procedure for collecting the
Tissue and hereby authorize and direct your physician, his/her employees and/or contracted health care
provider(s) to collect your Tissue during your scheduled procedure, for packaging, transport and delivery
to Bank, using a banking kit ("**Banking Kit**") provided to your physician by Bank. You understand that
although the collection of the Tissue is a relatively simple procedure, complications may occur during
the procedure that could preclude the collection of the Tissue. You acknowledge that you have been
fully informed of, accept and agree to the conditions, risks, limitations and costs of collecting,
processing, testing and storing of your Tissue, which include, without limitation, the following:

- a risk of contamination when collecting the Tissue;

- there is no guarantee or assurance of the success of the collection procedure;

- the Tissue collected may be insufficient for stem cell extraction or any other purpose;

  - there may be complications that will make it impossible or problematic to collect the
    Tissue, and your physician may properly refuse to collect the Tissue; and

  - the Tissue that is collected may not be acceptable for any medical use as determined
    by your physician at the time of collection, or by Bank upon receipt of the Tissue.

Therefore, you agree that your physician may determine in the exercise of his/her professional medical
judgment, whether or not to proceed with collecting the Tissue during the procedure, and that the
determination of your physician shall be final and binding on you. Nonetheless, being cognizant of the
foregoing conditions, risks and limitations, you hereby consent to allow your physician to collect the
Tissue and to furnish it to Bank for testing, processing, cryopreserving, storing, and servicing.

**3. Disclosure of Health Information:** Bank will use reasonable procedures to safeguard the
confidentiality of health information that you provide to Bank concerning your health. You hereby
consent to the use of your confidential health information, including the Tissue testing results, by

of its obligations under this Agreement or as otherwise may be permitted or required by applicable laws or regulations.

**4. Release from Liability.** You hereby for yourself, your agents, attorneys, successors-in- interest, affiliates, representatives, heirs and assigns, irrevocably and unconditionally release and discharge Bank and its shareholders, directors, officers, employees, agents, representatives, affiliates, and/or their respective legal representatives, estates, successors and assigns, from and against any and all claims, causes of action, liabilities, damages, costs, and expenses, known and unknown, that you, or your heirs, assigns, or representatives may incur, resulting from or relating to the processing (after collection by your physician), testing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of the Tissue pursuant to this Agreement. Without limiting the foregoing, you further acknowledge that Bank is not responsible in any way for the actions of others including your physician, medical facility, staff of the medical facility, laboratory staff, and transporters of the Tissue. You understand that by agreeing to this Release from Liability you are giving up rights that you might otherwise have now or in the future to seek money damages or other remedies or relief from Bank, its affiliates, its agents or managers, and other persons and entities referenced in this Release from Liability.

# Part II
## PATIENT SERVICE AGREEMENT TERMS AND CONDITIONS
### 1. Testing, Processing, Expanding, Freezing and Storing the Tissue

Upon receipt of the Tissue, Bank will test and process the Tissue, and will extract, expand, cryopreserve and store the stem cells contained in the Tissue. Bank will perform a visual inspection and conduct a viability test to determine the suitability of the Tissue for stem cell extraction, expansion, cryopreservation and storage. Stem cell extraction, expansion, cryopreservation and storage are collectively referred to as the "**Tissue Banking Services**". If the Tissue is deemed acceptable by Bank, Bank will process the Tissue, extract the stem cells, expand the stem cells, and/or store the stem cells in a cryogenic cellular storage unit until the termination of this Agreement in accordance with the terms set forth herein. Bank's obligations are expressly limited to the services described in this Agreement.

### 2. Patient Representations and Warranties. You represent and warrant that:

(a) You are of legal age;

 (b) You have carefully read and understand all of the terms of this Agreement;

(c) Your decision to have the Tissue collected, processed, expanded and stored is a completely voluntary act;

(d) You have had the opportunity to discuss this Agreement with a competent medical professional, who is not an employee of Bank; and

(e) You understand the risks related to collection, expansion, storage and the possible future use of the Tissue.

### 3. Use and Ownership of Tissue.

(a) Patient acknowledges and agrees that the Tissue and the stem cells derived therefrom are for "**Autologous Use.**" Autologous Use means that the stem cells derived from the Tissue may only be implanted, transplanted, infused or transferred back into the individual from whom the Tissue was collected. Accordingly, the Tissue and the stem cells derived therefrom shall only be used for implantation, transplantation, infusion or transfer back into Patient, exclusively.

(b) Bank will receive and retain possession of the Tissue and the stem cells derived therefrom in accordance with the terms of this Agreement, until this Agreement is terminated in accordance with **Section 6** hereof.

(c) Upon termination of this Agreement, Bank will dispose of the Tissue and/or the stem cells derived therefrom, in the manner set forth in **Section 7** hereof.

(d) Notwithstanding Bank's possession of the Tissue and the stem cells derived therefrom, Patient is and shall remain the owner of the Tissue and the stem cells derived therefrom, until the release or disposition of

two (2) weeks' advance written notice to Bank. The request must be made on a request form provided by Bank (a "Retrieval Request Form"), must be signed by the Patient, must include the name and address of the recipient to whom the stem cells are to be delivered and the date delivery is requested. The transfer or disposal of the stem cells will be performed in accordance with Bank's standard operating procedures in effect at the time of the request. Patient is required to pay all administrative, handling, transportation and delivery charges for the release and transfer of the stem cells prior to shipment thereof, and Bank shall not be required to release, prepare, ship or dispose of the stem cells unless and until any and all payments required to be made under this Agreement have been paid in full.

**5. Fees**. Patient agrees to pay the fees (the "**Fees**") set forth below for the services selected by Patient. Fees must be paid by the due dates. Any taxes that may be due on the Fees are the responsibility of Patient, and the Fees are expressed exclusive of taxes. Bank reserves the right, in its discretion, to make adjustments from time to time to the Initial Fee, Annual Fee, and the Retrieval Fee (as defined below). Bank will notify Patient in writing of any such change in the Fees. If Patient fails to pay the Fees when due, Patient's account may be forwarded to a collection agency for further action. Patient consents to receive autodialed and/or pre-recorded calls from or on behalf of Bank for account collection purposes at the landline and/or mobile telephone numbers provided to Bank. If Patient fails to pay any Fee when due or otherwise fails to comply with the terms and conditions of this Agreement, Bank shall not be obligated to provide, or continue to provide, the Tissue Banking Services or any other services hereunder. The Fees for the Tissue Banking Services and other services provided by Bank are as follows:

(a) An initial fee for the Tissue Banking Services including one year of storage of the stem cells ("**Initial Fee**"), payable in full in advance of the receipt of the Tissue by Bank;

(b) An annual fee for the storage of the stem cells during each year, or portion of a year, after the end of the first year of the term of this Agreement ("**Annual Fee**"), in the amount of $250.00 per year, payable in full before each anniversary of the Enrollment Date; and

(c) A fee for the retrieval and transfer of a single dose of stem cells ("**Retrieval Fee**"), in the amount of $500.00 for each transfer of a single dose of stem cells.

**6. Term and Termination.** The term of this Agreement shall commence on the Enrollment Date, and shall continue until terminated as follows:

(a) Termination by Bank. This Agreement may be terminated by Bank at any time by giving Patient sixty (60) days' advance written notice. In the event this Agreement is terminated by Bank pursuant to this **Section 6(a)** prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Bank shall refund to Patient the pro-rata portion of the Annual Fee for the unused portion of the year after the date of termination, and Patient shall be entitled to retrieve the stem cells by submitting a Retrieval Request Form to Bank prior to the expiration of the sixty (60) day notice period.

(b) Termination by Patient. This Agreement may be terminated by Patient at any time by delivering a written notice of termination to Bank. In the event this Agreement is terminated by Patient pursuant to this **Section 6(b)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(c) Termination upon Death of Patient. This Agreement will terminate immediately upon the death of Patient. If such termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient's estate or heirs shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

(d) Termination due to a Force Majeure Event. This Agreement may be terminated by Bank upon the loss, deterioration or destruction of all or any part of the Tissue and/or the stem cells derived from the Tissue of Patient, from causes or circumstances beyond Bank's reasonable control, including, without limitation, fires, explosions or power outages, natural disasters, disruption of utilities or public services, strikes or labor shortages, terrorist acts or acts of war, acts of governments, or any law, proclamation, ordinance, demand, or requirement of any government agency. In the event this Agreement is terminated by Bank pursuant to this **Section 6(d)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(e) Termination for Non-Payment of Fees. Bank may terminate this Agreement in the event Patient fails to pay when due any Fee payable hereunder. If this Agreement is terminated for non-payment, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

or provisions of this Agreement could be deemed to be in violation or contravention of applicable law or regulations, or Bank's ability to be compensated for its services will be materially and adversely affected by such changes or clarifications, then this Agreement may be modified or amended to bring the affected provisions or terms into compliance with such change. If it is not possible to comply with such changes by amending or modifying this Agreement, then Bank shall have the right to terminate this Agreement, and the Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(g) Automatic Termination. If not otherwise terminated pursuant to **Section 6(a)** through **Section 6(f)** above, this Agreement will automatically terminate at such time as no Tissue and/or stem cells derived from Tissue collected from Patient, remains in the possession of Bank, whether due to the prior retrieval, transfer, or permitted disposal of the Tissue and/or the stem cells derived from the Tissue of Patient. If the automatic termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

**7. Disposal of Tissue and/or Stem Cells.** Bank will be entitled to dispose of the Tissue and/or the stem cells derived from the Tissue in accordance with standard clinical practices and without further notice to the Patient, as follows: (a) upon termination of this Agreement for any reason; and (b) whenever there is excess material remaining following the completion of processing of the Tissue. Such disposal may consist of disposal as medical waste, donation for academic or research purposes, or any other proper purpose as determined by Bank, in its sole discretion.

**8. Communications.** From time to time, Bank may send notices and updates to Patient via U.S. mail or e-mail, which may include marketing communications. Patient consents to electronic mail correspondence and other communications, including for marketing purposes.

**9. Indemnification.** Patient agrees to indemnify, defend and hold harmless Bank and its affiliates, including without limitation their respective shareholders, directors, officers, employees, agents (including marketing agents) and/or other representatives, from and against any and all claims, liabilities, losses, costs and expenses (including attorney's fees and costs of defense), damages, settlements, and judgments arising out of or related to: (a) the provision of, or failure to provide, services by Bank pursuant to this Agreement; and (b) claims concerning rights in and to the Tissue or the stem cells extracted therefrom, the transportation thereof, and the disposition of same.

**10. No Warranty.** Patient acknowledges that neither Bank nor any of its officers, directors, shareholders, executives, employees, agents (including without limitation marketing agents), representatives, consultants, and/or affiliates has made, nor makes herein, any representations or warranties to Patient, express or implied, of any kind or nature, including, without limiting the generality of the foregoing, any representations or warranties with respect to: (i) suitability of stem cells for future treatment of diseases; (ii) successful treatment of diseases through stem cell transplantation; (iii) advantages of stem cell transplantation over other types of treatment; or (iv) successful preservation of stem cells through cryopreservation. Patient acknowledges and agrees that neither Bank nor any of its shareholders, directors, officers, agents, employees or affiliates have made any representation, guaranty or warranty, express or implied, to Patient.

**11. Limitation of Liability.** PATIENT HEREBY ACKNOWLEDGES AND AGREES THAT BANK HAS NO LIABILITY OF ANY KIND IN RESPECT OF BANK'S PERFORMANCE OR FAILURE TO PERFORM UNDER THIS AGREEMENT EXCEPT TO THE EXTENT ATTRIBUTABLE TO BANK'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. IN NO EVENT SHALL BANK'S LIABILITY EXCEED THE TOTAL AMOUNT PAID BY PATIENT TO BANK UNDER THIS AGREEMENT. BANK SHALL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES (INCLUDING, WITHOUT LIMITATION, DAMAGES IN RESPECT OF BREACH OF CONTRACT, WARRANTY, STRICT LIABILITY OR TORT), WHETHER OR NOT BANK HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE LIMITATIONS SET FORTH IN THIS SECTION SHALL APPLY NOTWITHSTANDING THE FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

**12. Assignment and Delegation.** Bank may assign its rights and delegate its obligations under this Agreement at any time and in its sole discretion, without further consent of Patient. Bank may perform services to be provided by it hereunder through subcontractors, agents or managers pursuant to management services agreements. This Agreement is not assignable by Patient without the prior written consent of Bank

**13. Governing Law, Jurisdiction and Venue; Attorney's Fees.** This Agreement is governed by the laws of the State of Florida without regard to its conflict of laws principles. Any judicial proceedings brought against either Bank or Patient under this Agreement will be brought in a court in Miami-Dade County, Florida. Bank and Patient consent to the exclusive jurisdiction of the aforesaid courts and waive any objection to venue therein and irrevocably agree to be bound by any judgment rendered thereby. The prevailing party in any such proceedings will be entitled to an award of its reasonable attorney's fees, paralegal fees, costs and expenses incurred in such proceedings.

**14. Entire Agreement.** This Agreement constitutes the entire Agreement between the parties and supersedes all previous agreements or representations by Bank or Patient, oral or written, relating to the subject matter of this Agreement.

**15. Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

**16. Survival.** All provisions which by their terms require performance after the termination of this Agreement will survive the termination of this Agreement.

**17. Headings.** The headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**18. Notices.** Any notice to be given hereunder by either party to the other shall be in English and in writing, and shall be hand delivered or sent by overnight courier or registered, express mail to the addresses listed on the enrollment documents (or any updated address provided by Patient in writing to Bank or by Bank in writing to Patient, and shall be deemed to be effective two (2) business days after dispatch).

1.

**Amendment.** Except as set forth herein, this Agreement may only be modified or amended by a writing signed by each party and shall be binding on Patient and Bank and their heirs, personal representatives, successors and permitted assigns.

By signing below, you confirm that you have read and fully understand the terms and conditions of this Agreement, including both Part I: Informed Consent and Part II: Patient Service Agreement Terms and Conditions.

**Patient's Signature** *(Only Last Page)*                    **Patient's Initials & Date**



Signed 11/08/2018

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FT. LAUDERDALE DIVISION

Case No.: 0 18-cv-61047 (UU)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

US STEM CELL CLINIC, LLC, a Florida
Profit corporation, and KRISTIN C.
COMELLA and THEODORE GRADEL,
individuals,

        Defendants.

_____/

## DECLARATION OF ROSS JOHNSON

I, Ross Johnson, hereby make this declaration pursuant to and in accordance with 28 U.S.C. § 1746:

1) I am a resident of _3654 Ballastone DR. Land Olakey FL 34638_ and am over eighteen years of age. I have personal knowledge of the matters set forth herein.

2) I am the legal guardian of my son Xavier who is currently 20 and suffered a brain injury in 2016.

3) I arranged to have Xavier's stem cells banked (the "Stem Cells") for a storage at a tissue bank operated by US Stem Cell, Inc., pursuant to a Stem Cell Processing and Storage Agreement (the "Storage Agreement"). A copy of my Storage Agreement, together with a Certificate that I obtained from US Stem Cells in connection with the banking of my cells are attached as Exhibit A to this Declaration.

4) The Storage Agreement expressly provides that the Stem Cells stored pursuant to the Storage Agreement are and shall remain my property.

5) I received no notice that my stem cells were in jeopardy or were the subject of an order calling for their destruction, until June 28, 2019 when I was notified by US Stem Cells directly.

6) Prior to the notification I received from US Stem Cell on June 28, 2019, I did not see any press coverage of this action or otherwise knew of the pendency of the action.

I declare under a penalty of perjury that the foregoing is true and correct.

Executed this 16th day of July, 2019

Ross Johnson

## STEM CELL PROCESSING AND STORAGE AGREEMENT

This Stem Cell Processing and Storage Agreement (this "**Agreement**") is between ("**you**" or the "**Patient**") and U.S. Stem Cell, Inc., a Florida corporation ("**Bank**") and is entered into this day of , 2017 (the "**Enrollment Date**") for the testing, processing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of your adipose (fat), muscle and/or bone marrow tissue that is collected by your physician (the "**Tissue**"), for the purpose of extracting and storing the stem cells contained in the Tissue, on the terms set forth in this Agreement. This Agreement legally binds Bank and the Patient.

# Part I

### INFORMED CONSENT

By signing below, you acknowledge that you have the legal and mental capacity to sign this document and that you have given your informed consent to your physician to undergo liposuction or another surgical procedure, and that you also have given your consent to the collection of your Tissue by your physician during such procedure. You further acknowledge that your consent includes, but is not limited to: the performance of such procedures as may be necessary or appropriate to transport, test, process and expand the Tissue after removal by your physician, as well as the extraction of the stem cells, if any, that may be present in the Tissue, followed by the cryopreservation of the stem cells. You also acknowledge that you consent to the terms and conditions relating to the transportation, testing, processing, expansion, cryopreservation, storage, withdrawal, transfer, donation, shipping and/or other use of the Tissue, by or on behalf of Bank, that are set forth in this Agreement.

**1. Risks Involved in Storage and Use.** You understand that the cryopreservation of stem cells from the Tissue is a relatively new procedure, and that there are laboratory tests and other studies that have indicated that it is a successful method of preserving stem cells. You understand that the transplantation of stem cells is a relatively new procedure that may offer possible future benefits to you in treating diseases. You also understand that there are no assurances, warranties or guarantees that any such benefits will be obtained.

**2. Collection Risks and Consent**. You have been fully informed about the procedure for collecting the Tissue and hereby authorize and direct your physician, his/her employees and/or contracted health care provider(s) to collect your Tissue during your scheduled procedure, for packaging, transport and delivery to Bank, using a banking kit ("**Banking Kit**") provided to your physician by Bank. You understand that although the collection of the Tissue is a relatively simple procedure, complications may occur during the procedure that could preclude the collection of the Tissue. You acknowledge that you have been fully informed of, accept and agree to the conditions, risks, limitations and costs of collecting, processing, testing and storing of your Tissue, which include, without limitation, the following:

• a risk of contamination when collecting the Tissue;

• there is no guarantee or assurance of the success of the collection procedure;

• the Tissue collected may be insufficient for stem cell extraction or any other purpose;

• there may be complications that will make it impossible or problematic to collect the Tissue, and your physician may properly refuse to collect the Tissue; and

• the Tissue that is collected may not be acceptable for any medical use as determined by your physician at the time of collection, or by Bank upon receipt of the Tissue.

Therefore, you agree that your physician may determine in the exercise of his/her professional medical judgment, whether or not to proceed with collecting the Tissue during the procedure, and that the determination of your physician shall be final and binding on you. Nonetheless, being cognizant of the foregoing conditions, risks and limitations, you hereby consent to allow your physician to collect the Tissue and to furnish it to Bank for testing, processing, cryopreserving, storing, and servicing.

**3. Disclosure of Health Information**: Bank will use reasonable procedures to safeguard the confidentiality of health information that you provide to Bank concerning your health. You hereby consent to the use of your confidential health information, including the Tissue testing results, by Bank, and acknowledge and agree that Bank may retain and make further use of such confidential

of its obligations under this Agreement or as otherwise may be permitted or required by applicable laws or regulations.

**4. Release from Liability.** You hereby for yourself, your agents, attorneys, successors-in- interest, affiliates, representatives, heirs and assigns, irrevocably and unconditionally release and discharge Bank and its shareholders, directors, officers, employees, agents, representatives, affiliates, and/or their respective legal representatives, estates, successors and assigns, from and against any and all claims, causes of action, liabilities, damages, costs, and expenses, known and unknown, that you, or your heirs, assigns, or representatives may incur, resulting from or relating to the processing (after collection by your physician), testing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of the Tissue pursuant to this Agreement. Without limiting the foregoing, you further acknowledge that Bank is not responsible in any way for the actions of others including your physician, medical facility, staff of the medical facility, laboratory staff, and transporters of the Tissue. You understand that by agreeing to this Release from Liability you are giving up rights that you might otherwise have now or in the future to seek money damages or other remedies or relief from Bank, its affiliates, its agents or managers, and other persons and entities referenced in this Release from Liability.

# Part II

## PATIENT SERVICE AGREEMENT TERMS AND CONDITIONS

**1. Testing, Processing, Expanding, Freezing and Storing the Tissue**

Upon receipt of the Tissue, Bank will test and process the Tissue, and will extract, expand, cryopreserve and store the stem cells contained in the Tissue. Bank will perform a visual inspection and conduct a viability test to determine the suitability of the Tissue for stem cell extraction, expansion, cryopreservation and storage. Stem cell extraction, expansion, cryopreservation and storage are collectively referred to as the "**Tissue Banking Services**". If the Tissue is deemed acceptable by Bank, Bank will process the Tissue, extract the stem cells, expand the stem cells, and/or store the stem cells in a cryogenic cellular storage unit until the termination of this Agreement in accordance with the terms set forth herein. Bank's obligations are expressly limited to the services described in this Agreement.

**2. Patient Representations and Warranties**. You represent and warrant that:

(a) You are of legal age;

 (b) You have carefully read and understand all of the terms of this Agreement;

(c) Your decision to have the Tissue collected, processed, expanded and stored is a completely voluntary act;

(d) You have had the opportunity to discuss this Agreement with a competent medical professional, who is not an employee of Bank; and

(e) You understand the risks related to collection, expansion, storage and the possible future use of the Tissue.

**3. Use and Ownership of Tissue.**

(a) Patient acknowledges and agrees that the Tissue and the stem cells derived therefrom are for "**Autologous Use**." Autologous Use means that the stem cells derived from the Tissue may only be implanted, transplanted, infused or transferred back into the individual from whom the Tissue was collected. Accordingly, the Tissue and the stem cells derived therefrom shall only be used for implantation, transplantation, infusion or transfer back into Patient, exclusively.

(b) Bank will receive and retain possession of the Tissue and the stem cells derived therefrom in accordance with the terms of this Agreement, until this Agreement is terminated in accordance with **Section 6** hereof.

(c) Upon termination of this Agreement, Bank will dispose of the Tissue and/or the stem cells derived therefrom, in the manner set forth in **Section 7** hereof.

(d) Notwithstanding Bank's possession of the Tissue and the stem cells derived therefrom, Patient is and shall remain the owner of the Tissue and the stem cells derived therefrom, until the release or disposition of same by Bank.

**4. Requests for Release of Stem Cells.** Commencing three (3) months after the Enrollment Date, Patient

two (2) weeks' advance written notice to Bank. The request must be made on a request form provided by Bank (a "Retrieval Request Form"), must be signed by the Patient, must include the name and address of the recipient to whom the stem cells are to be delivered and the date delivery is requested. The transfer or disposal of the stem cells will be performed in accordance with Bank's standard operating procedures in effect at the time of the request. Patient is required to pay all administrative, handling, transportation and delivery charges for the release and transfer of the stem cells prior to shipment thereof, and Bank shall not be required to release, prepare, ship or dispose of the stem cells unless and until any and all payments required to be made under this Agreement have been paid in full.

**5. Fees**. Patient agrees to pay the fees (the "**Fees**") set forth below for the services selected by Patient. Fees must be paid by the due dates. Any taxes that may be due on the Fees are the responsibility of Patient, and the Fees are expressed exclusive of taxes. Bank reserves the right, in its discretion, to make adjustments from time to time to the Initial Fee, Annual Fee, and the Retrieval Fee (as defined below). Bank will notify Patient in writing of any such change in the Fees. If Patient fails to pay the Fees when due, Patient's account may be forwarded to a collection agency for further action. Patient consents to receive autodialed and/or pre-recorded calls from or on behalf of Bank for account collection purposes at the landline and/or mobile telephone numbers provided to Bank. If Patient fails to pay any Fee when due or otherwise fails to comply with the terms and conditions of this Agreement, Bank shall not be obligated to provide, or continue to provide, the Tissue Banking Services or any other services hereunder. The Fees for the Tissue Banking Services and other services provided by Bank are as follows:

(a) An initial fee for the Tissue Banking Services including one year of storage of the stem cells ("**Initial Fee**"), payable in full in advance of the receipt of the Tissue by Bank;

(b) An annual fee for the storage of the stem cells during each year, or portion of a year, after the end of the first year of the term of this Agreement ("**Annual Fee**"), in the amount of $250.00 per year, payable in full before each anniversary of the Enrollment Date; and

(c) A fee for the retrieval and transfer of a single dose of stem cells ("**Retrieval Fee**"), in the amount of $500.00 for each transfer of a single dose of stem cells.

**6. Term and Termination.** The term of this Agreement shall commence on the Enrollment Date, and shall continue until terminated as follows:

(a) Termination by Bank. This Agreement may be terminated by Bank at any time by giving Patient sixty (60) days' advance written notice. In the event this Agreement is terminated by Bank pursuant to this **Section 6(a)** prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Bank shall refund to Patient the pro-rata portion of the Annual Fee for the unused portion of the year after the date of termination, and Patient shall be entitled to retrieve the stem cells by submitting a Retrieval Request Form to Bank prior to the expiration of the sixty (60) day notice period.

(b) Termination by Patient. This Agreement may be terminated by Patient at any time by delivering a written notice of termination to Bank. In the event this Agreement is terminated by Patient pursuant to this **Section 6(b)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(c) Termination upon Death of Patient. This Agreement will terminate immediately upon the death of Patient. If such termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient's estate or heirs shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

(d) Termination due to a Force Majeure Event. This Agreement may be terminated by Bank upon the loss, deterioration or destruction of all or any part of the Tissue and/or the stem cells derived from the Tissue of Patient, from causes or circumstances beyond Bank's reasonable control, including, without limitation, fires, explosions or power outages, natural disasters, disruption of utilities or public services, strikes or labor shortages, terrorist acts or acts of war, acts of governments, or any law, proclamation, ordinance, demand, or requirement of any government agency. In the event this Agreement is terminated by Bank pursuant to this **Section 6(d)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(e) Termination for Non-Payment of Fees. Bank may terminate this Agreement in the event Patient fails to pay when due any Fee payable hereunder. If this Agreement is terminated for non-payment, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(f) Termination due to Change in Law. In the event there is a change in the laws, regulations, or the policies

or provisions of this Agreement could be deemed to be in violation or contravention of applicable law or regulations, or Bank's ability to be compensated for its services will be materially and adversely affected by such changes or clarifications, then this Agreement may be modified or amended to bring the affected provisions or terms into compliance with such change. If it is not possible to comply with such changes by amending or modifying this Agreement, then Bank shall have the right to terminate this Agreement, and the Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(g) <u>Automatic Termination</u>. If not otherwise terminated pursuant to **Section 6(a)** through **Section 6(f)** above, this Agreement will automatically terminate at such time as no Tissue and/or stem cells derived from Tissue collected from Patient, remains in the possession of Bank, whether due to the prior retrieval, transfer, or permitted disposal of the Tissue and/or the stem cells derived from the Tissue of Patient. If the automatic termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

**7. Disposal of Tissue and/or Stem Cells.** Bank will be entitled to dispose of the Tissue and/or the stem cells derived from the Tissue in accordance with standard clinical practices and without further notice to the Patient, as follows: (a) upon termination of this Agreement for any reason; and (b) whenever there is excess material remaining following the completion of processing of the Tissue. Such disposal may consist of disposal as medical waste, donation for academic or research purposes, or any other proper purpose as determined by Bank, in its sole discretion.

**8. Communications.** From time to time, Bank may send notices and updates to Patient via U.S. mail or e-mail, which may include marketing communications. Patient consents to electronic mail correspondence and other communications, including for marketing purposes.

**9. Indemnification.** Patient agrees to indemnify, defend and hold harmless Bank and its affiliates, including without limitation their respective shareholders, directors, officers, employees, agents (including marketing agents) and/or other representatives, from and against any and all claims, liabilities, losses, costs and expenses (including attorney's fees and costs of defense), damages, settlements, and judgments arising out of or related to: (a) the provision of, or failure to provide, services by Bank pursuant to this Agreement; and (b) claims concerning rights in and to the Tissue or the stem cells extracted therefrom, the transportation thereof, and the disposition of same.

**10. No Warranty.** Patient acknowledges that neither Bank nor any of its officers, directors, shareholders, executives, employees, agents (including without limitation marketing agents), representatives, consultants, and/or affiliates has made, nor makes herein, any representations or warranties to Patient, express or implied, of any kind or nature, including, without limiting the generality of the foregoing, any representations or warranties with respect to: (i) suitability of stem cells for future treatment of diseases; (ii) successful treatment of diseases through stem cell transplantation; (iii) advantages of stem cell transplantation over other types of treatment; or (iv) successful preservation of stem cells through cryopreservation. Patient acknowledges and agrees that neither Bank nor any of its shareholders, directors, officers, agents, employees or affiliates have made any representation, guaranty or warranty, express or implied, to Patient.

**11. Limitation of Liability.** PATIENT HEREBY ACKNOWLEDGES AND AGREES THAT BANK HAS NO LIABILITY OF ANY KIND IN RESPECT OF BANK'S PERFORMANCE OR FAILURE TO PERFORM UNDER THIS AGREEMENT EXCEPT TO THE EXTENT ATTRIBUTABLE TO BANK'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. IN NO EVENT SHALL BANK'S LIABILITY EXCEED THE TOTAL AMOUNT PAID BY PATIENT TO BANK UNDER THIS AGREEMENT. BANK SHALL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES (INCLUDING, WITHOUT LIMITATION, DAMAGES IN RESPECT OF BREACH OF CONTRACT, WARRANTY, STRICT LIABILITY OR TORT), WHETHER OR NOT BANK HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE LIMITATIONS SET FORTH IN THIS SECTION SHALL APPLY NOTWITHSTANDING THE FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

**12. Assignment and Delegation.** Bank may assign its rights and delegate its obligations under this Agreement at any time and in its sole discretion, without further consent of Patient. Bank may perform services to be provided by it hereunder through subcontractors, agents or managers pursuant to management services agreements. This Agreement is not assignable by Patient without the prior written consent of Bank and any attempted assignment in breach of the foregoing restriction shall be void.

**13. Governing Law, Jurisdiction and Venue; Attorney's Fees.** This Agreement is governed by the laws of the State of Florida without regard to its conflict of laws principles. Any judicial proceedings brought against either Bank or Patient under this Agreement will be brought in a court in Miami-Dade County, Florida. Bank and Patient consent to the exclusive jurisdiction of the aforesaid courts and waive any objection to venue therein and irrevocably agree to be bound by any judgment rendered thereby. The prevailing party in any such proceedings will be entitled to an award of its reasonable attorney's fees, paralegal fees, costs and expenses incurred in such proceedings.

**14. Entire Agreement.** This Agreement constitutes the entire Agreement between the parties and supersedes all previous agreements or representations by Bank or Patient, oral or written, relating to the subject matter of this Agreement.

**15. Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

**16. Survival.** All provisions which by their terms require performance after the termination of this Agreement will survive the termination of this Agreement.

**17. Headings.** The headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**18. Notices.** Any notice to be given hereunder by either party to the other shall be in English and in writing, and shall be hand delivered or sent by overnight courier or registered, express mail to the addresses listed on the enrollment documents (or any updated address provided by Patient in writing to Bank or by Bank in writing to Patient, and shall be deemed to be effective two (2) business days after dispatch).

1.

**Amendment.** Except as set forth herein, this Agreement may only be modified or amended by a writing signed by each party and shall be binding on Patient and Bank and their heirs, personal representatives, successors and permitted assigns.

By signing below, you confirm that you have read and fully understand the terms and conditions of this Agreement, including both Part I: Informed Consent and Part II: Patient Service Agreement Terms and Conditions.

**Patient's Signature *(Only Last Page)*** **Patient's Initials & Date**



Signed 08/15/2017

Signed 08/15/2017

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

Case No.: 0 18-cv-61047 (UU)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

US STEM CELL CLINIC, LLC, a Florida
Profit corporation, and KRISTIN C.
COMELLA and THEODORE GRADEL,
individuals,

        Defendants.

_____/

**DECLARATION OF KURT WIMBERG**

I, Kurt Wimberg, hereby make this declaration pursuant to and in accordance with 28 U.S.C. § 1746:

1) I am a resident of WYOMING and am over eighteen years of age. I have personal knowledge of the matters set forth herein.

2) I have banked my stem cells (the "Stem Cells") for a storage at a tissue bank operated by US Stem Cell, Inc., pursuant to a Stem Cell Processing and Storage Agreement (the "Storage Agreement"). A copy of my Storage Agreement, together with a Certificate that I obtained from US Stem Cells in connection with the banking of my cells are attached as Exhibit A to this Declaration.

3) The Storage Agreement expressly provides that the Stem Cells stored pursuant to the Storage Agreement are and shall remain my property.

4) I received no notice that my stem cells were in jeopardy or were the subject of an order calling for their destruction, until June 28, 2019 when I was notified by US Stem Cells directly.

5) Prior to the notification I received from US Stem Cell on June 28, 2019, I did not see any press coverage of this action or otherwise knew of the pendency of the action.

I declare under a penalty of perjury that the foregoing is true and correct.

Executed this 17th day of July, 2019

Kurt Wimberg

## STEM CELL PROCESSING AND STORAGE AGREEMENT

This Stem Cell Processing and Storage Agreement (this "**Agreement**") is between ("**you**" or the "**Patient**") and U.S. Stem Cell, Inc., a Florida corporation ("**Bank**") and is entered into this day of , 2017 (the "**Enrollment Date**") for the testing, processing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of your adipose (fat), muscle and/or bone marrow tissue that is collected by your physician (the "**Tissue**"), for the purpose of extracting and storing the stem cells contained in the Tissue, on the terms set forth in this Agreement. This Agreement legally binds Bank and the Patient.

# Part I

## INFORMED CONSENT

By signing below, you acknowledge that you have the legal and mental capacity to sign this document and that you have given your informed consent to your physician to undergo liposuction or another surgical procedure, and that you also have given your consent to the collection of your Tissue by your physician during such procedure. You further acknowledge that your consent includes, but is not limited to: the performance of such procedures as may be necessary or appropriate to transport, test, process and expand the Tissue after removal by your physician, as well as the extraction of the stem cells, if any, that may be present in the Tissue, followed by the cryopreservation of the stem cells. You also acknowledge that you consent to the terms and conditions relating to the transportation, testing, processing, expansion, cryopreservation, storage, withdrawal, transfer, donation, shipping and/or other use of the Tissue, by or on behalf of Bank, that are set forth in this Agreement.

**1. Risks Involved in Storage and Use.** You understand that the cryopreservation of stem cells from the Tissue is a relatively new procedure, and that there are laboratory tests and other studies that have indicated that it is a successful method of preserving stem cells. You understand that the transplantation of stem cells is a relatively new procedure that may offer possible future benefits to you in treating diseases. You also understand that there are no assurances, warranties or guarantees that any such benefits will be obtained.

**2. Collection Risks and Consent**. You have been fully informed about the procedure for collecting the Tissue and hereby authorize and direct your physician, his/her employees and/or contracted health care provider(s) to collect your Tissue during your scheduled procedure, for packaging, transport and delivery to Bank, using a banking kit ("**Banking Kit**") provided to your physician by Bank. You understand that although the collection of the Tissue is a relatively simple procedure, complications may occur during the procedure that could preclude the collection of the Tissue. You acknowledge that you have been fully informed of, accept and agree to the conditions, risks, limitations and costs of collecting, processing, testing and storing of your Tissue, which include, without limitation, the following:

- a risk of contamination when collecting the Tissue;

- there is no guarantee or assurance of the success of the collection procedure;

- the Tissue collected may be insufficient for stem cell extraction or any other purpose;

  - there may be complications that will make it impossible or problematic to collect the Tissue, and your physician may properly refuse to collect the Tissue; and

  - the Tissue that is collected may not be acceptable for any medical use as determined by your physician at the time of collection, or by Bank upon receipt of the Tissue.

Therefore, you agree that your physician may determine in the exercise of his/her professional medical judgment, whether or not to proceed with collecting the Tissue during the procedure, and that the determination of your physician shall be final and binding on you. Nonetheless, being cognizant of the foregoing conditions, risks and limitations, you hereby consent to allow your physician to collect the Tissue and to furnish it to Bank for testing, processing, cryopreserving, storing, and servicing.

**3. Disclosure of Health Information**: Bank will use reasonable procedures to safeguard the confidentiality of health information that you provide to Bank concerning your health. You hereby consent to the use of your confidential health information, including the Tissue testing results, by Bank, and acknowledge and agree that Bank may retain and make further use of such confidential

of its obligations under this Agreement or as otherwise may be permitted or required by applicable laws or regulations.

**4. Release from Liability.** You hereby for yourself, your agents, attorneys, successors-in-interest, affiliates, representatives, heirs and assigns, irrevocably and unconditionally release and discharge Bank and its shareholders, directors, officers, employees, agents, representatives, affiliates, and/or their respective legal representatives, estates, successors and assigns, from and against any and all claims, causes of action, liabilities, damages, costs, and expenses, known and unknown, that you, or your heirs, assigns, or representatives may incur, resulting from or relating to the processing (after collection by your physician), testing, expanding, freezing, storing, withdrawing, transferring, donating, shipping, transporting and/or other use of the Tissue pursuant to this Agreement. Without limiting the foregoing, you further acknowledge that Bank is not responsible in any way for the actions of others including your physician, medical facility, staff of the medical facility, laboratory staff, and transporters of the Tissue. You understand that by agreeing to this Release from Liability you are giving up rights that you might otherwise have now or in the future to seek money damages or other remedies or relief from Bank, its affiliates, its agents or managers, and other persons and entities referenced in this Release from Liability.

# Part II

## PATIENT SERVICE AGREEMENT TERMS AND CONDITIONS

### 1. Testing, Processing, Expanding, Freezing and Storing the Tissue

Upon receipt of the Tissue, Bank will test and process the Tissue, and will extract, expand, cryopreserve and store the stem cells contained in the Tissue. Bank will perform a visual inspection and conduct a viability test to determine the suitability of the Tissue for stem cell extraction, expansion, cryopreservation and storage. Stem cell extraction, expansion, cryopreservation and storage are collectively referred to as the "**Tissue Banking Services**". If the Tissue is deemed acceptable by Bank, Bank will process the Tissue, extract the stem cells, expand the stem cells, and/or store the stem cells in a cryogenic cellular storage unit until the termination of this Agreement in accordance with the terms set forth herein. Bank's obligations are expressly limited to the services described in this Agreement.

### 2. Patient Representations and Warranties. You represent and warrant that:

(a) You are of legal age;

(b) You have carefully read and understand all of the terms of this Agreement;

(c) Your decision to have the Tissue collected, processed, expanded and stored is a completely voluntary act;

(d) You have had the opportunity to discuss this Agreement with a competent medical professional, who is not an employee of Bank; and

(e) You understand the risks related to collection, expansion, storage and the possible future use of the Tissue.

### 3. Use and Ownership of Tissue.

(a) Patient acknowledges and agrees that the Tissue and the stem cells derived therefrom are for "**Autologous Use**." Autologous Use means that the stem cells derived from the Tissue may only be implanted, transplanted, infused or transferred back into the individual from whom the Tissue was collected. Accordingly, the Tissue and the stem cells derived therefrom shall only be used for implantation, transplantation, infusion or transfer back into Patient, exclusively.

(b) Bank will receive and retain possession of the Tissue and the stem cells derived therefrom in accordance with the terms of this Agreement, until this Agreement is terminated in accordance with **Section 6** hereof.

(c) Upon termination of this Agreement, Bank will dispose of the Tissue and/or the stem cells derived therefrom, in the manner set forth in **Section 7** hereof.

(d) Notwithstanding Bank's possession of the Tissue and the stem cells derived therefrom, Patient is and shall remain the owner of the Tissue and the stem cells derived therefrom, until the release or disposition of same by Bank.

**4. Requests for Release of Stem Cells.** Commencing three (3) months after the Enrollment Date, Patient

two (2) weeks' advance written notice to Bank. The request must be made on a request form provided by Bank (a "Retrieval Request Form"), must be signed by the Patient, must include the name and address of the recipient to whom the stem cells are to be delivered and the date delivery is requested. The transfer or disposal of the stem cells will be performed in accordance with Bank's standard operating procedures in effect at the time of the request. Patient is required to pay all administrative, handling, transportation and delivery charges for the release and transfer of the stem cells prior to shipment thereof, and Bank shall not be required to release, prepare, ship or dispose of the stem cells unless and until any and all payments required to be made under this Agreement have been paid in full.

**5. Fees.** Patient agrees to pay the fees (the "**Fees**") set forth below for the services selected by Patient. Fees must be paid by the due dates. Any taxes that may be due on the Fees are the responsibility of Patient, and the Fees are expressed exclusive of taxes. Bank reserves the right, in its discretion, to make adjustments from time to time to the Initial Fee, Annual Fee, and the Retrieval Fee (as defined below). Bank will notify Patient in writing of any such change in the Fees. If Patient fails to pay the Fees when due, Patient's account may be forwarded to a collection agency for further action. Patient consents to receive autodialed and/or pre-recorded calls from or on behalf of Bank for account collection purposes at the landline and/or mobile telephone numbers provided to Bank. If Patient fails to pay any Fee when due or otherwise fails to comply with the terms and conditions of this Agreement, Bank shall not be obligated to provide, or continue to provide, the Tissue Banking Services or any other services hereunder. The Fees for the Tissue Banking Services and other services provided by Bank are as follows:

(a) An initial fee for the Tissue Banking Services including one year of storage of the stem cells ("**Initial Fee**"), payable in full in advance of the receipt of the Tissue by Bank;

(b) An annual fee for the storage of the stem cells during each year, or portion of a year, after the end of the first year of the term of this Agreement ("**Annual Fee**"), in the amount of $250.00 per year, payable in full before each anniversary of the Enrollment Date; and

(c) A fee for the retrieval and transfer of a single dose of stem cells ("**Retrieval Fee**"), in the amount of $500.00 for each transfer of a single dose of stem cells.

**6. Term and Termination.** The term of this Agreement shall commence on the Enrollment Date, and shall continue until terminated as follows:

(a) Termination by Bank. This Agreement may be terminated by Bank at any time by giving Patient sixty (60) days' advance written notice. In the event this Agreement is terminated by Bank pursuant to this **Section 6(a)** prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Bank shall refund to Patient the pro-rata portion of the Annual Fee for the unused portion of the year after the date of termination, and Patient shall be entitled to retrieve the stem cells by submitting a Retrieval Request Form to Bank prior to the expiration of the sixty (60) day notice period.

(b) Termination by Patient. This Agreement may be terminated by Patient at any time by delivering a written notice of termination to Bank. In the event this Agreement is terminated by Patient pursuant to this **Section 6(b)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(c) Termination upon Death of Patient. This Agreement will terminate immediately upon the death of Patient. If such termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient's estate or heirs shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

(d) Termination due to a Force Majeure Event. This Agreement may be terminated by Bank upon the loss, deterioration or destruction of all or any part of the Tissue and/or the stem cells derived from the Tissue of Patient, from causes or circumstances beyond Bank's reasonable control, including, without limitation, fires, explosions or power outages, natural disasters, disruption of utilities or public services, strikes or labor shortages, terrorist acts or acts of war, acts of governments, or any law, proclamation, ordinance, demand, or requirement of any government agency. In the event this Agreement is terminated by Bank pursuant to this **Section 6(d)**, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(e) Termination for Non-Payment of Fees. Bank may terminate this Agreement in the event Patient fails to pay when due any Fee payable hereunder. If this Agreement is terminated for
 non-payment, Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(f) Termination due to Change in Law. In the event there is a change in the laws, regulations, or the policies

or provisions of this Agreement could be deemed to be in violation or contravention of applicable law or regulations, or Bank's ability to be compensated for its services will be materially and adversely affected by such changes or clarifications, then this Agreement may be modified or amended to bring the affected provisions or terms into compliance with such change. If it is not possible to comply with such changes by amending or modifying this Agreement, then Bank shall have the right to terminate this Agreement, and the Patient shall not be entitled to receive a refund of any part of any Fees paid by Patient.

(g) <u>Automatic Termination</u>. If not otherwise terminated pursuant to **Section 6(a)** through **Section 6(f)** above, this Agreement will automatically terminate at such time as no Tissue and/or stem cells derived from Tissue collected from Patient, remains in the possession of Bank, whether due to the prior retrieval, transfer, or permitted disposal of the Tissue and/or the stem cells derived from the Tissue of Patient. If the automatic termination occurs prior to the end of a yearly period for which an Annual Fee has been paid by Patient, Patient shall be entitled to receive a refund of the pro-rata portion of the Annual Fee for the unused portion of the year from the date of termination.

**7. Disposal of Tissue and/or Stem Cells.** Bank will be entitled to dispose of the Tissue and/or the stem cells derived from the Tissue in accordance with standard clinical practices and without further notice to the Patient, as follows: (a) upon termination of this Agreement for any reason; and (b) whenever there is excess material remaining following the completion of processing of the Tissue. Such disposal may consist of disposal as medical waste, donation for academic or research purposes, or any other proper purpose as determined by Bank, in its sole discretion.

**8. Communications.** From time to time, Bank may send notices and updates to Patient via U.S. mail or e-mail, which may include marketing communications. Patient consents to electronic mail correspondence and other communications, including for marketing purposes.

**9. Indemnification.** Patient agrees to indemnify, defend and hold harmless Bank and its affiliates, including without limitation their respective shareholders, directors, officers, employees, agents (including marketing agents) and/or other representatives, from and against any and all claims, liabilities, losses, costs and expenses (including attorney's fees and costs of defense), damages, settlements, and judgments arising out of or related to: (a) the provision of, or failure to provide, services by Bank pursuant to this Agreement; and (b) claims concerning rights in and to the Tissue or the stem cells extracted therefrom, the transportation thereof, and the disposition of same.

**10. No Warranty.** Patient acknowledges that neither Bank nor any of its officers, directors, shareholders, executives, employees, agents (including without limitation marketing agents), representatives, consultants, and/or affiliates has made, nor makes herein, any representations or warranties to Patient, express or implied, of any kind or nature, including, without limiting the generality of the foregoing, any representations or warranties with respect to: (i) suitability of stem cells for future treatment of diseases; (ii) successful treatment of diseases through stem cell transplantation; (iii) advantages of stem cell transplantation over other types of treatment; or (iv) successful preservation of stem cells through cryopreservation. Patient acknowledges and agrees that neither Bank nor any of its shareholders, directors, officers, agents, employees or affiliates have made any representation, guaranty or warranty, express or implied, to Patient.

**11. Limitation of Liability.** PATIENT HEREBY ACKNOWLEDGES AND AGREES THAT BANK HAS NO LIABILITY OF ANY KIND IN RESPECT OF BANK'S PERFORMANCE OR FAILURE TO PERFORM UNDER THIS AGREEMENT EXCEPT TO THE EXTENT ATTRIBUTABLE TO BANK'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. IN NO EVENT SHALL BANK'S LIABILITY EXCEED THE TOTAL AMOUNT PAID BY PATIENT TO BANK UNDER THIS AGREEMENT. BANK SHALL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES (INCLUDING, WITHOUT LIMITATION, DAMAGES IN RESPECT OF BREACH OF CONTRACT, WARRANTY, STRICT LIABILITY OR TORT), WHETHER OR NOT BANK HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE LIMITATIONS SET FORTH IN THIS SECTION SHALL APPLY NOTWITHSTANDING THE FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

**12. Assignment and Delegation.** Bank may assign its rights and delegate its obligations under this Agreement at any time and in its sole discretion, without further consent of Patient. Bank may perform services to be provided by it hereunder through subcontractors, agents or managers pursuant to management services agreements. This Agreement is not assignable by Patient without the prior written consent of Bank and any attempted assignment in breach of the foregoing restriction shall be void.

**13. Governing Law, Jurisdiction and Venue; Attorney's Fees**. This Agreement is governed by the laws of the State of Florida without regard to its conflict of laws principles. Any judicial proceedings brought against either Bank or Patient under this Agreement will be brought in a court in Miami-Dade County, Florida. Bank and Patient consent to the exclusive jurisdiction of the aforesaid courts and waive any objection to venue therein and irrevocably agree to be bound by any judgment rendered thereby. The prevailing party in any such proceedings will be entitled to an award of its reasonable attorney's fees, paralegal fees, costs and expenses incurred in such proceedings.

**14. Entire Agreement.** This Agreement constitutes the entire Agreement between the parties and supersedes all previous agreements or representations by Bank or Patient, oral or written, relating to the subject matter of this Agreement.

**15. Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

**16. Survival.** All provisions which by their terms require performance after the termination of this Agreement will survive the termination of this Agreement.

**17. Headings.** The headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**18. Notices.** Any notice to be given hereunder by either party to the other shall be in English and in writing, and shall be hand delivered or sent by overnight courier or registered, express mail to the addresses listed on the enrollment documents (or any updated address provided by Patient in writing to Bank or by Bank in writing to Patient, and shall be deemed to be effective two (2) business days after dispatch).

1.
    **Amendment.** Except as set forth herein, this Agreement may only be modified or amended by a writing signed by each party and shall be binding on Patient and Bank and their heirs, personal representatives, successors and permitted assigns.


By signing below, you confirm that you have read and fully understand the terms and conditions of this Agreement, including both Part I: Informed Consent and Part II: Patient Service Agreement Terms and Conditions.


**Patient's Signature** *(Only Last Page)*            **Patient's Initials & Date**

Signed 03/05/2018

Signed 03/05/2018

Congratulations your sample has been received!



# U.S. STEMCELL

## Stem Cell Banking

**This Certificate is for:**

*Kurt Wimberg*

Patient ID:

**Please contact banking@us-stemcell.com
to receive any information about your cells**

**Thank you for choosing U.S. Stem Cell, Inc.**

March 5th , 2018

JULIETA RADICHE
OPERATIONS AND LAB MANAGER

KRISTIN COMELLA
CHIEF SCIENCE OFFICER

13794 NW 4th Street, Suite 212 • Sunrise, Florida 33325
Phone: 954.835.1500 • Fax: 954.845.9976
www.us-stemcell.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

Case No.: 0:18-cv-61047-(UU)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

US STEM CELL CLINIC, LLC, a Florida
Profit corporation, and KRISTIN C.
COMELLA and THEODORE GRADEL,
individuals,

        Defendants.

_____

## DECLARATION OF DR. LISA BRADY GRANT

I, Dr. Lisa Brady Grant, hereby make this declaration pursuant to and in accordance with

28 U.S.C. § 1746:

1) I am a resident of _____Wyoming_____ and am over eighteen years of age.  I
have personal knowledge of the matters set forth herein.

2) I have banked my stem cells (the "Stem Cells") for a storage at a tissue bank operated
by US Stem Cell, Inc., pursuant to a Stem Cell Processing and Storage Agreement (the
"Storage Agreement").  A copy of my Storage Agreement, together with a Certificate
that I obtained from US Stem Cells in connection with the banking of my cells are
attached as Exhibit A to this Declaration.

3) The Storage Agreement expressly provides that the Stem Cells stored pursuant to the
Storage  Agreement are and shall remain my property.

4) I received no notice that my stem cells were in jeopardy or were the subject of an order
calling for their destruction, until June 28, 2019 when I was notified by US Stem Cells
directly.

5) Prior to the notification I received from US Stem Cell on June 28, 2019, I did not see any press coverage of this action or otherwise knew of the pendency of the action.

I declare under a penalty of perjury that the foregoing is true and correct.

Executed this 17th day of July, 2019

Dr. Lisa Brady Grant

**Congratulations your sample has been received!**



# U.S.STEMCELL

## Stem Cell Banking

**This Certificate is for:**

*Lisa Grant*

Patient ID: ▮

**Please contact banking@us-stemcell.com
to receive any information about your cells**

**Thank you for choosing U.S. Stem Cell, Inc.**

July 24th, 2018

JULIETA RADICHE
OPERATIONS AND LAB MANAGER

KRISTIN COMELLA
CHIEF SCIENCE OFFICER

13794 NW 4th Street, Suite 212 • Sunrise, Florida 33325
Phone: 954-835-1500 • Fax: 954-845-9976
www.us-stemcell.com

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FT. LAUDERDALE DIVISION

Case No.: 0 18-cv-61047 (UU)

UNITED STATES OF AMERICA,

      Plaintiff,

v.

US STEM CELL CLINIC, LLC, a Florida
Profit corporation, and KRISTIN C.
COMELLA and THEODORE GRADEL,
individuals,

      Defendants.

_____/

## DECLARATION OF KATHERINE LEEMON

    I, Katherine Leemon, hereby make this declaration pursuant to and in accordance with 28

U.S.C. § 1746:

1) I am a resident of _Florida_ and am over eighteen years of age. I have personal knowledge of the matters set forth herein.

2) I have banked my stem cells (the "Stem Cells") for a storage at a tissue bank operated by US Stem Cell, Inc., pursuant to a Stem Cell Processing and Storage Agreement (the "Storage Agreement"). A copy of my Storage Agreement, together with a Certificate that I obtained from US Stem Cells in connection with the banking of my cells are attached as Exhibit A to this Declaration.

3) The Storage Agreement expressly provides that the Stem Cells stored pursuant to the Storage Agreement are and shall remain my property.

4) Prior to June 28, 2019, when US Stem Cells notified me directly, I never knew that my stem cells were in jeopardy or were the subject of an order calling for their destruction.



I declare under a penalty of perjury that the foregoing is true and correct.

Executed this 16th day of July, 2019

Katherine Leemon

Congratulations your sample has been received!

# U.S.STEMCELL

## Stem Cell Banking

**This Certificate is for:**

*Katherine Leemon*

Patient ID: 

**Please contact banking@us-stemcell.com
to receive any information about your cells**

**Thank you for choosing U.S. Stem Cell, Inc.**

September 27th, 2017

JULIETA RADICHE
OPERATIONS AND LAB MANAGER

KRISTIN COMELLA
CHIEF SCIENCE OFFICER

13794 NW 4th Street, Suite 212 • Sunrise, Florida 33325
Phone: 954-835-1500 • Fax: 954-845-9976
www.us-stemcell.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FT. LAUDERDALE DIVISION

Case No.: 0 18-cv-61047 (UU)

UNITED STATES OF AMERICA,

      Plaintiff,

v.

US STEM CELL CLINIC, LLC, a Florida
Profit corporation, and KRISTIN C.
COMELLA and THEODORE GRADEL,
individuals,

      Defendants.

_____/

## DECLARATION OF IRA LEEMON

I, Ira Leemon, hereby make this declaration pursuant to and in accordance with 28 U.S.C.

§ 1746:

1) I am a resident of ___Florida___ and am over eighteen years of age.  I have personal knowledge of the matters set forth herein.

2) I have banked my stem cells (the "Stem Cells") for a storage at a tissue bank operated by US Stem Cell, Inc., pursuant to a Stem Cell Processing and Storage Agreement (the "Storage Agreement").  A copy of my Storage Agreement, together with a Certificate that I obtained from US Stem Cells in connection with the banking of my cells are attached as Exhibit A to this Declaration.

3) The Storage Agreement expressly provides that the Stem Cells stored pursuant to the Storage  Agreement are and shall remain my property.

4) Prior to June 28, 2019, when US Stem Cells notified me directly, I never knew that my stem cells were in jeopardy or were the subject of an order calling for their destruction.



I declare under a penalty of perjury that the foregoing is true and correct.

Executed this 18th day of July, 2019

Ira Leemon

**Congratulations your sample has been received!**



# U.S.STEMCELL

## Stem Cell Banking

**This Certificate is for:**

*Ira Leemon*

Patient ID: ▬▬

Please contact banking@us-stemcell.com
to receive any information about your cells

**Thank you for choosing U.S. Stem Cell, Inc.**

September 27th, 2017

JULIETTA RADICHE
OPERATIONS AND LAB MANAGER

KRISTIN COMELLA
CHIEF SCIENCE OFFICER

13794 NW 4th Street, Suite 212 • Sunrise, Florida 33325
Phone: 954-835-1500 • Fax: 954-845-9976
www.us-stemcell.com